UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEFINA DOE; ISABELA DOE; COMMOR JEROME WELCH; FELIPE NIOMAR MARTINEZ ORTIZ; and JOSE DOE; on behalf of themselves and all others similarly situated, and THE AMERICAN FRIENDS SERVICE COMMITTEE, IMMIGRANT RIGHTS PROGRAM, | Civil Action No. 2:24-cv-9105 |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF INDIVIDUAL PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL** |
| v. U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; **(CONTINUED ON NEXT PAGE)** | ORAL ARGUMENT REQUESTED |

Gavin J. Rooney, Esq.
Alexander Shalom, Esq.
Natalie J. Kraner, Esq.
Naomi D. Barrowclough, Esq.
Anish Patel, Esq.*
Ruth Zimmerman, Esq.
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500

Shira Wisotsky, Esq.
Raquiba Huq, Esq.
Zoe Burke, Esq.
Emily Thornton, Esq.*
**LEGAL SERVICES OF NEW JERSEY**
100 Metroplex Drive, Suite 402
Edison, New Jersey 08817
(908) 882-2665

Tiffany J. Lieu, Esq.*
Philip L. Torrey, Esq.*
**CRIMMIGRATION CLINIC
HARVARD IMMIGRATION &
REFUGEE CLINICAL
PROGRAM**
6 Everett Street, Suite 3106
Cambridge, Massachusetts 02138
(617) 496-5497
*Pro Bono Counsel for Plaintiffs*

**pro hac vice* motion forthcoming

ALEJANDRO MAYORKAS,
Secretary of the Department of
Homeland Security, in his official
capacity;

PATRICK J. LECHLEITNER,
Acting Director of Immigration and
Customs Enforcement ("ICE"), in
his official capacity;

DANIEL A. BIBLE,
Executive Associate Director of ICE's
Enforcement and Removal Operations,
in his official capacity;

CAMMILLA WAMSLEY,
Field Office Director for the ICE
Philadelphia Field Office, in her
official capacity;

FRANCIS KEMP,
Assistant Field Office Director for the
ICE Philadelphia Field Office, in his
official capacity,

                    Defendants.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ................................................................................3

LEGAL STANDARD........................................................................................14

LEGAL ARGUMENT.......................................................................................16

I.   PLAINTIFFS HAVE STANDING TO CHALLENGE THE
     REFUSAL POLICY AND PRACTICE. ......................................................16

     A.   The Plaintiffs Have Standing Because the Refusal Policy and
          Practice Prevents Them from Appearing in New Jersey Courts..............16

II.  THE CLASS SHOULD BE CERTIFIED. ....................................................20

     A.   The Class Meets the Requirements of Rule 23(a)....................................20

     B.   The Class Meets the Requirements of Rule 23(b)(2) Because a
          Single Injunction Would Remedy the Harm Caused by the Refusal
          Policy and Practice. ................................................................................33

III. LOWENSTEIN SANDLER, LEGAL SERVICES OF NEW JERSEY,
     AND THE HARVARD IMMIGRATION & REFUGEE CLINICAL
     PROGRAM SHOULD BE APPOINTED CLASS COUNSEL. ...................37

CONCLUSION ..................................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acevedo v. Forcinito*,
    820 F. Supp. 886 (D.N.J. 1993) ....................................................................19, 20

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................30

*Baby Neal for & by Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ...........................................................................passim

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
    867 F.3d 434 (3d Cir. 2017) ............................................................................34

*In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*,
    795 F.3d 380 (3d Cir. 2015) ............................................................................29

*Colon v. Passaic County*,
    No. 08-CV-4439, 2009 WL 1560156 (D.N.J. May 27, 2009) ..........................36

*Cottrell v. Alcon Labs.*,
    874 F.3d 154 (3d Cir. 2017) ............................................................................19

*Dittimus-Bey v. Taylor*,
    244 F.R.D. 284 (D.N.J. 2007)...........................................................................36

*Doyle v. Fla. Health Sol., Inc.*,
    No. 17-12231, 2018 WL 1128776 (D.N.J. Mar. 1, 2018)..................................31

*E. D. v. Sharkey*,
    928 F.3d 299 (3d Cir. 2019) .............................................................................19

*Foreman v. Lowe*,
    261 F. App'x 401 (3d Cir. 2008) ......................................................................19

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) .............................................................................33

*Gayle v. Warden, Monmouth Cnty. Corr. Inst.*,
    No. 12-CV-02806, 2017 WL 5479701 (D.N.J. Nov. 15, 2017).........................35

*Gutierrez v. Johnson & Johnson*,
   269 F.R.D. 430, 435 (D.N.J. 2010) ...................................................................15

*Hagan v. Rogers*,
   570 F.3d 146 (3d Cir. 2009) ..............................................................................25

*Hassine v. Jeffes*,
   846 F.2d 169 (3d Cir. 1988) .........................................................................25, 30

*Hawker v. Consovoy*,
   198 F.R.D. 619 (D.N.J. 2001).............................................................................22

*Howard v. Williams*,
   No. 2:20-CV-01389, 2022 WL 16553239 (W.D. Pa. Oct. 31, 2022) ...............26

*In re LifeUSA Holding Inc.*,
   242 F.3d 136 (3d Cir. 2001) .........................................................................20, 33

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)............................................................................................16

*Luxama v. Ironbound Express, Inc.*,
   No. 11-2224 (JMV) (JBC), 2018 WL 6819341 (D.N.J. Dec. 27, 2018)......29, 34

*May v. Sheahan*,
   226 F.3d 876 (7th Cir. 2000) .............................................................................19

*Mielo v. Steak'n Shake Operations, Inc.*,
   897 F.3d 467 (3d Cir. 2018) ..............................................................................16

*In re Modafinil Antitrust Litig.*,
   837 F.3d 238 (3d Cir. 2016) ..............................................................................20

*N.S. v. Hughes*,
   335 F.R.D. 337 (D.D.C. 2020) ...........................................................................23

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353 (3d Cir. 2015) .........................................................................16, 34

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154, 183 (3d Cir. 2001) ..................................................................28, 29

*In re NFL Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ..........................................................................25, 28

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ...................................................................26

*In re Pet Food Prod. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010) ....................................................................30

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ....................................................................29

*R.F.M. v. Nielsen*,
365 F. Supp. 3d 350 (S.D.N.Y. 2019) ..............................................27

*Reyes v. Netdeposit, LLC*,
802 F.3d 469 (3d Cir. 2015) ....................................................................26

*In re Sch. Asbestos Litig.*,
789 F.2d 996 (3d Cir. 1986) ....................................................................24

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ....................................................................24

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010).....................................................................................14

*Shamberg v. Ashlstrom*,
111 F.R.D. 689 (D.N.J. 1986)..................................................................23

*Sheinberg v. Sorensen*,
606 F.3d 130 (3d Cir. 2010) ............................................................31, 37

*Shelton v. Bledsoe*,
775 F.3d 554 (3d Cir. 2015) .................................................15, 25, 34

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).....................................................................................16

*State v. Lopez-Carrera*,
245 N.J. 596 (2021) .......................................................................................5

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ......................................................................21, 22

*Szczubelek v. Cendant Mortg. Corp.*,
    215 F.R.D. 107 (D.N.J. 2003).............................................................................21

*Thakker v. Doll*,
    336 F.R.D. 408 (M.D. Pa. 2020) ........................................................................23

*Troncone v. Velahos*,
    No. 10-2961, 2013 WL 1222630 (D.N.J. Mar. 25, 2013) ..................................26

*W.A.O. v. Cuccinelli*,
    No. 2:19-CV-11696MCAMAH, 2019 WL 4509333 (D.N.J. Sept. 17, 2019)...35

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...................................................................................passim

*Ward v. Aviles*,
    No. 11-CV-6252 (WJM), 2012 WL 2341499 (D.N.J. Jun. 18, 2012)...............19

*Williams v. Jani-King of Phila. Inc.*,
    837 F.3d 314 (3d Cir. 2016) ...............................................................................15

*Wilson v. Cnty. of Gloucester*,
    256 F.R.D. 479 (D.N.J. 2009).............................................................................26

**STATUTES**

N.J.S.A. 2A:162-16 to -19 .............................................................................................4

**RULES**

Advisory Committee Notes to 1966 Amendments to Rule 23,
    39 F.R.D. 102 (1966)..........................................................................................33

Fed. R. Civ. P. 23(a)............................................................................................passim

Fed. R. Civ. P. 23(b) ...........................................................................................passim

Fed. R. Civ. P. 23(c)......................................................................................15, 37

Fed. R. Civ. P. 23(g) ...........................................................................................3, 31

## OTHER AUTHORITIES

Borough of Paramus, New Jersey, Court,
   https://www.paramusborough.org/190/Court .......................................................5

7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
   and Procedure Civil § 1763 (2d ed. 1986).........................................................25

City of New Brunswick, New Jersey, Municipal Court,
   https://www.cityofnewbrunswick.org/residents/services/municipal_court.php...6

City of Newark, New Jersey, Municipal Court,
   https://www.newarknj.gov/departments/municipalcourt ....................................5

City of Perth Amboy, New Jersey, Municipal Court,
   https://www.perthamboynj.org/government/departments/municipal_court ........8

City of Clifton, New Jersey, Virtual Court (ZOOM) Procedures and Decorum,
   https://www.cliftonnj.org/442/Virtual-Court-ZOOM-Procedures-and-
   Decoru...............................................................................................................12

Hon. Glenn A. Grant, Notice To The Bar & Public, Municipal Court-Virtual
   Format For All Initial Appearances (Mar. 13, 2023) https://www.
   njcourts.gov/sites/default/files/notices/2023/03/n230315c.pdf?cb=0996287....17

Supreme Court of New Jersey, Notice to the Bar and Public: Future of Court
   Operations Continuation Of Both In-Person And Virtual Court Events
   (Nov. 18, 2021) ...................................................................................................6

Township of Montclair, New Jersey, Municipal Court,
   https://www.montclairnjusa.org/Government/Departments/Municipal-Court 5, 6

Plaintiffs Josefina Doe, Isabela Doe, Commor Jerome Welch, Felipe Niomar Martinez Ortiz, and Jose Doe ("Plaintiffs"),[1] on behalf of themselves and all others similarly situated, respectfully submit this brief in support of their motion for class certification pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. The Plaintiffs also move to be appointed representatives of the class, and for the appointment of Lowenstein Sandler LLP, the Legal Services of New Jersey ("LSNJ"), and the Harvard Immigration & Refugee Clinical Program ("HIRCP") at Harvard Law School as Co-Class Counsel.

## PRELIMINARY STATEMENT

Plaintiffs seeks to represent noncitizens who, like themselves, are detained by Defendants at the Moshannon Valley Processing Center in Philipsburg, Pennsylvania ("Moshannon") and have unresolved criminal matters pending in the superior or municipal courts of New Jersey ("the Class"). Plaintiffs bring this action to challenge Defendants' arbitrary, capricious, and unconstitutional policy and practice of denying them and the Class virtual access to those New Jersey court proceedings so that they may appear, participate, and defend themselves in those proceedings (the "Refusal Policy and Practice").

---

[1] "Plaintiffs," as used herein, refers to the individuals appearing as Plaintiffs and does not include the Organizational Plaintiff, the Immigrant Rights Program of the American Friends Service Committee. Plaintiffs Josefina Doe, Isabela Doe, and Jose Doe are proceeding with pseudonyms. A motion to proceed under pseudonym accompanies this Motion.

Defendant United States Department of Homeland Security ("DHS") and its agency, Defendant Immigration and Customs Enforcement ("ICE"), apprehended Plaintiffs in New Jersey and subsequently transferred them to Moshannon, a detention facility operated by a private company, The GEO Group, under contracts with Clearfield County, Pennsylvania and ICE. Although Moshannon makes video-conferencing facilities available to allow individuals in detention to virtually participate in immigration court and certain family court proceedings, Defendants deny Plaintiffs and the Class access to the same technology to allow them to participate in unresolved criminal matters before New Jersey municipal and state courts. As a result, they cannot participate in those proceedings. The Refusal Policy and Practice imposes a multitude of harms on Plaintiffs and the Class, including difficulty in seeking appointment of a public defender, an inability to present a defense, and the risk that bench warrants or contempt judgments will issue due to their failure to appear in criminal court. This, in turn, also significantly reduces (or even precludes) Plaintiffs' and the Class's chances of securing release from immigration detention.

As detailed in Plaintiffs' Class Action Complaint filed herewith, Plaintiffs seek a declaration and permanent injunction compelling Defendants to provide access to video-conferencing technology like Zoom, or, when appropriate, the

telephone, to appear and participate in unresolved criminal proceedings in New Jersey.

Rule 23(b)(2) certification is appropriate to allow the Class to join the Plaintiffs in challenging the Refusal Policy and Practice. Because the Plaintiffs have suffered a cognizable injury, and because the Class meets the requirements of Rule 23(a) and (b)(2), the Plaintiffs' Motion for Class Certification should be granted. Further, Plaintiffs respectfully request that Lowenstein Sandler LLP, LSNJ, and HIRCP be appointed Co-Class Counsel, in accordance with Rule 23(g).

## STATEMENT OF FACTS

The right to attend, participate, and be heard in one's defense of a criminal charge is a bedrock principle under the Constitution and American jurisprudence. But Defendants are depriving Plaintiffs and the Class of that very right.

At Moshannon, Defendants detain noncitizens who have been apprehended pending further action (*e.g.*, removal proceedings, the enforcement of a prior order of removal, or the processing of their asylum application) and who have not yet been released on bond or otherwise. (Declaration of Ian G. Peacock, Ph.D ("Peacock Decl.") Ex. B (Sept. 9, 2024)). A substantial number of people Defendants detain at Moshannon were apprehended in New Jersey. (*See id.*). Many of these individuals are the subject of criminal charges, including indictable and disorderly persons offenses, pending in New Jersey's superior or municipal courts. (*See id.*). Pursuant

to the New Jersey Criminal Justice Reform Act ("CJRA"), most such individuals are released pending trial shortly after arrest upon a finding that they do not pose a threat to public safety. N.J.S.A. 2A:162-16 to -19 (establishing presumptive pretrial release for individuals charged with nonviolent, less serious crimes). However, ICE routinely apprehends these individuals upon their release, moving them to Moshannon before they can return to their homes and families in New Jersey, and before they can contest the charges brought against them. (*See, e.g.*, Declaration of Josefina Doe ("Josefina Decl.") ¶ 12 (Aug. 8, 2024); Declaration of Commor Jerome Welch ("Commor Decl.") ¶¶ 6-8 (Aug. 5, 2024); Declaration of Felipe Niomar Martinez Ortiz ("Felipe Decl.") ¶¶ 6-8 (Sept. 3, 2024); Declaration of Isabela Doe ("Isabela Decl.") ¶¶ 8-9 (Sept. 4, 2024)).

Per the Refusal Policy and Practice, Defendant ICE does not permit people detained at Moshannon to participate in ongoing New Jersey superior or municipal court proceedings by virtual means. (*See* Declaration of Shira Wisotsky ("Wisotsky Decl."), ¶¶ 20-38, Exs. A through S) (Sept. 9, 2024). Instead, Defendants insist that the New Jersey court issue a writ requiring the individual to attend court in-person. (*See, e.g.*, *id.* Exs. B- F, I, L-R). A writ requires New Jersey authorities to dispatch law enforcement personnel to collect the individual from Moshannon, deliver the individual to the New Jersey court, and then return the individual to Moshannon after the conclusion of the criminal hearing or proceeding. (*See id.* Exs. B, D, E, F, M, N,

Q, R). The existence of the Refusal Policy and Practice is proven by numerous separate items of correspondence wherein Defendants have consistently refused to make available facilities to allow virtual attendance at New Jersey court proceedings, and have informed Judiciary staff, Plaintiffs, other people in detention, and their counsel that only a writ requiring in-person attendance will do. (*See id.* Exs. B, C, D, E, F, I, M, N, N, O, P, Q, R; *see also* Josefina Decl. ¶¶ 19-21, 25-26; Felipe Decl. ¶ 12; Isabela Decl. ¶¶ 11-13, 16; Commor Decl. ¶¶ 10-12, 14).

For practical reasons, New Jersey courts rarely, if ever, issue such a writ. In some situations, the law does not permit New Jersey courts to issue such a writ. *See State v. Lopez-Carrera*, 245 N.J. 596, 616-17 (2021) (holding that the CJRA does not authorize pretrial detention of a noncitizen defendant due to actions by immigration authorities). In other situations, a writ is neither practical nor feasible. For nearly every New Jersey court, Moshannon (which is located in central Pennsylvania) is at least an eight-hour round-trip drive; consequently, few if any New Jersey courts issue such writs due to the limited resources available to them. Moreover, many municipal courts conduct all proceedings remotely;[2] therefore, the

---

[2]    *See, e.g.*, Borough of Paramus, New Jersey, Court, https://www.paramusborough.org/190/Court (providing that municipal court appearances are virtual) (last accessed Sept. 9, 2024); City of Newark, New Jersey, Municipal Court, https://www.newarknj.gov/departments/municipalcourt ("The City of Newark Municipal Court will be providing virtual court sessions via Zoom.") (last accessed Sept. 9, 2024); Township of Montclair, New Jersey, Municipal Court,

issuance of an in-person writ is therefore a *non sequitur* when everyone else (prosecutor, judge, and defense counsel) is remote. Finally, securing a writ is a virtual impossibility for indigent people in detention who have not yet been appointed with public defense counsel because they have been unable to attend a first or subsequent criminal court proceeding.

The Refusal Policy and Practice is irrational. In this day and age, particularly post-COVID, business is commonly conducted by remote video means (using platforms such as Zoom or Microsoft Teams) or by telephone. New Jersey superior and municipal courts regularly allow remote attendance.[3] Moreover, Defendant ICE routinely allows these same detained individuals to participate remotely in immigration and certain family-court proceedings. (*See* Wisotsky Decl. Exs. D, K, S). The facility has 30 virtual consultation booths, numerous tablets, and telephones that are used for that very purpose. (*Id.* Ex. U). However, ICE will not extend the

---

https://www.montclairnjusa.org/ Government/Departments/Municipal-Court ("Montclair Municipal Court is conducting court in a virtual setting.") (last accessed Sept. 9, 2024); City of New Brunswick, New Jersey, Municipal Court, https://www.cityofnewbrunswick.org/ residents/services/municipal_court.php ("In lieu of in-person sessions, New Brunswick Municipal Court is functioning primarily with scheduled, virtual hearings using the Zoom app technology.") (last accessed Sept. 9, 2024).

[3] *See*, *supra*, n.2; New Jersey Supreme Court, Notice to the Bar and Public: Future of Court Operations Continuation Of Both In-Person And Virtual Court Events ¶ 7(b) (Nov. 18, 2021) (ordering that "First Appearances on defendants in custody" and "detention hearings" in the Criminal Division of the New Jersey Superior Court "will proceed in a virtual format, absent an individualized reason to proceed in person based on the facts and circumstances of the case").

same opportunity or provide the same resources when it comes to New Jersey criminal proceedings. This is a textbook definition of arbitrary decision-making: Moshannon allows virtual court attendance for one kind of court appearance, but not for another.

The harm caused by the Refusal Policy and Practice is both palpable and self-evident. Plaintiffs and the Class are hampered, and many times prevented, from defending themselves against criminal charges. Without an appearance, Class members often cannot secure the help of a public defender; cannot confront their accuser; cannot seek dismissal of charges, even when the complainant is willing to dismiss the charges; and risk the issuance of bench warrants for their arrest, or other default, due to their non-appearance. Moreover, the very pendency of the State criminal charges is a factor considered by ICE or Immigration Judges when deciding whether to release the person detained pending resolution of the immigration proceedings.

This is typical of the Plaintiffs' own experiences. Plaintiff Josefina Doe was arrested in New Jersey on May 5, 2024, during an incident involving her abusive partner. (Josefina Decl. ⁋ 11). Because she only speaks Spanish, Josefina was unable to explain the circumstances to law enforcement and thereby avoid arrest. (*Id.*). On May 7, 2024, a state court ordered Josefina released pending further proceedings and informed her that she was required to check in periodically with the court. (*Id.* ⁋ 12).

ICE then seized Josefina when she was released by state authorities, and transferred her to Moshannon, where she remains today. (*Id.* ¶¶ 12, 14).

The charges against Josefina remain pending in the Perth Amboy Municipal Court, which only allows virtual appearances.[4] (*Id.* ¶ 16). Due to the Refusal Policy and Practice, Moshannon has denied Josefina's repeated requests for remote access to the municipal court proceedings. (*Id.* ¶¶ 13, 15-20, 25). Consequently, Josefina has been unable to obtain a public defender because she cannot appear in court to request one. (*Id.* ¶ 31). Josefina is therefore unable to assert any defenses; to put it bluntly, she has been deprived of the opportunity to tell her side of the story and seek dismissal of the charges. (*Id.* ¶ 40).

The unresolved charges also constitute a factor that the Immigration Judge will consider against her when deciding whether Josefina can be released from Moshannon on bond. As a result, she has been unable to return home to work and financially support her daughters currently studying in the Dominican Republic. (*Id.* ¶ 32). The charges also cloud Josefina's asylum application, increasing the chances of her removal despite her fears of persecution by her former abusive husband in the Dominican Republic. (*Id.* ¶ 5).

---

[4]    City of Perth Amboy, New Jersey, Municipal Court, https://www.perthamboynj.org/government/departments/municipal_court ("All court sessions will be held virtually on zoom, unless otherwise instructed by the court.") (last accessed Sept. 9, 2024).

Finally, Josefina's prolonged confinement has taken a toll on both her physical and mental health. (*Id.* ¶¶ 35-39). She cannot access needed healthcare services and medications for her preexisting conditions (*id.* ¶¶ 36-38) and her mental health has deteriorated significantly due to her detention at Moshannon (*id.* ¶ 39). What limited services she has been able to access are not provided in her own language. (*Id.* ¶ 39).

Plaintiff Commor Welch was arrested on August 9, 2023. (Commor Decl. ⁋ 6). A New Jersey court then ordered Commor released, conditioned on regular check-ins with court personnel and a further appearance on September 29, 2023. (*Id.* ⁋⁋ 6-7). ICE seized Commor when he was released by state authorities and transferred him to Moshannon, where he remains today. (*Id.* ⁋⁋ 1, 8). Commor could not, and did not, appear before the court for that September appearance due to his detention at Moshannon. (*Id.* ⁋ 9). Commor repeatedly requested the ability to virtually attend court proceedings in New Jersey; but, due to the Refusal Policy and Practice, ICE denied his requests each time. (*Id.* ⁋⁋ 10-12, 14).

The Refusal Policy and Practice has prejudiced Commor's ability to obtain appointed defense counsel and to be present and participate in his defense. Commor initially hired a private attorney to represent him in his criminal proceedings. In April 2024, the attorney moved to dismiss the charges against Commor for insufficient evidence, but Commor was unable to appear for the hearing on that motion because

-9-

of the Refusal Policy and Practice. (*Id.* ⫿ 15). That motion was denied for reasons

unknown to Commor, and the attorney has since moved to withdraw as counsel,

attesting that:

> [t]he relationship between attorney and client has gone
> beyond repair . . . [because] he believes that I should be
> able to do more to get him to be present in the Court for
> his adjudication of his criminal matter. Commor is held by
> the Department of Homeland Security . . . and [that
> agency] refused to present him for his criminal case.

(Wisotsky Decl. Ex. T at Certification of Keith R. Campbell, ¶ 10). Commor

desperately wants to have a public defender appointed to his case and to be able to

participate in the proceedings brought against him, but he cannot appear in court due

to the Refusal Policy and Practice. (Commor Decl. ⫿ 17).

The continued pendency of these unresolved State criminal charges continues

to harm Commor. He previously married a United States citizen, with whom he has

a child. (*Id.* ⫿⫿ 3-4). Commor's spouse filed a petition to establish her *bona fide*

relationship with Commor and allow Commor to apply to adjust his status to lawful

permanent resident. (*Id.* ⫿ 4). Commor's petition was approved and he has since

applied for adjustment of status—*i.e.*, a discretionary form of relief in which the

Immigration Judge may consider unresolved criminal charges. (*Id.*). Additionally, in

October 2023, Commor sought a release from Moshannon on bond so that he could

return to care for and support his family. (*Id.* ⫿ 19). His application was denied. (*Id.*).

Commor learned (because Moshannon permitted him to virtually appear before the

-10-

immigration court) that the immigration court did so, and would continue to do so, until and unless the New Jersey criminal charges are resolved. (*Id.*).

Commor's situation starkly demonstrates the cruel and illogical circle created by the Moshannon bureaucracy: he cannot secure a bond for his release from Moshannon until his State criminal charges are resolved, but he cannot resolve those State criminal charges because Moshannon will not permit him to appear virtually in those State court proceedings.

Plaintiff Felipe Niomar Martinez Ortiz was arrested on June 19, 2024. (Felipe Decl. ⁋ 6). While in a county jail, Felipe was conditionally released pending trial, required to periodically check in with court staff, and given his next court date in the New Jersey Superior Court. (*Id.* ⁋⁋ 6-7). Before the jail released him, ICE detained him and eventually moved him to Moshannon. (*Id.* ⁋ 8). Despite attempts to do so, Felipe was unable to attend his court date because of the Refusal Policy and Practice. (*Id.* ⁋⁋ 9-11). Because he was unable to appear, Felipe was unable to personally request a public defender to be appointed for him. (*Id.* ¶ 13). Nor was he able to check in with court staff as required by the court. (*Id.* ⁋⁋ 9-10).

Through the assistance of counsel, Felipe was appointed a public defender in the Superior Court. (*Id.* ⁋ 14). As a result, the charges were quickly downgraded and remanded to municipal court in Paramus, New Jersey. He must, again, navigate requesting a new public defender. (*Id.* ⁋ 15). He has been unable to do so and cannot

attend the virtual hearings in municipal court due to the Refusal Policy and Practice. (*Id.*).

The police arrested Plaintiff Isabela Doe on June 17, 2024. (Isabela Decl. ¶ 8.) Despite a long history of abuse from her former partner, Isabela was arrested on charges of domestic violence because she could not explain the circumstances to the responding police officers due to a language barrier. (*Id.* ¶¶ 7-8). A court ordered Isabela released pending trial, but ICE detained her before she was released, eventually transporting her to Moshannon. (*Id.* ¶¶ 8-9). Since Isabela arrived at Moshannon in June 2024, Defendants, through the Refusal Policy and Practice, caused her to miss two court dates with respect to the charges against her, despite her repeated requests to appear virtually. (*Id.* ¶¶ 11-17). The unresolved criminal proceeding is now pending in Clifton municipal court, which only allows virtual appearances.[5] (*Id.* ¶ 19).

Isabela's former partner informed her that he is no longer interested in pressing charges against her. (*Id.* ¶ 15). Ordinarily, of course, that would be the end of the matter. However, due to the Refusal Policy and Practice, Isabela is unable to secure dismissal of the criminal matter because she cannot appear in court. (*Id* ¶¶ 11-

---

[5] City of Clifton, New Jersey, Virtual Court (ZOOM) Procedures and Decorum, https://www.cliftonnj.org/442/Virtual-Court-ZOOM-Procedures-and-Decoru ("[M]ost court sessions are currently being conducted via Zoom.") (last accessed Sept. 9, 2024)

17). Because she cannot appear, she has not been able to obtain a public defender to represent her. (*Id.* ¶ 19). Isabela wishes to obtain bond to return to her youngest child, who is currently in the care of her abusive and drug-addicted former partner, but cannot do so given the pendency of the unresolved State criminal matter. (*Id.* ¶¶ 20-22).

Jose Doe came to the United States as a teenager, fleeing gang persecution in El Salvador. (Declaration of Jose Doe ("Jose Decl.") ¶ 3). While living in New Jersey, Jose was arrested for drug possession and released the same day but was detained by ICE and eventually moved to Moshannon. (*Id.* ¶¶ 5-6). Due to his detention, he missed his first court date. (*Id.*). There are also charges filed against him in the Superior Court, but because he is detained and cannot appear virtually, he missed the post-indictment arraignment in that matter as well. (*Id.*). As a consequence of his non-appearance in both matters, the judges in both cases issued bench warrants for Jose's arrest. (*Id.* ¶ 8). Jose has been detained for a year-and-a-half, almost his entire adulthood. (*Id.* ¶ 1). The unresolved criminal matters have made it impossible for him to secure bond in his immigration case. (*Id.* ¶ 9). And, his Immigration attorney's advocacy to have him virtually produced for court has gone unheeded. (*Id.* ¶ 10; *id.*, Ex. A). As his counsel described in an email to Defendant ICE:

> It seems we're in a bind. Based on the constraints [ICE]
> and the Municipal Court have articulated, Mr. [Doe]

> cannot get released from detention until his case is resolved, and he also can't get his case resolved until he is released from detention. He cannot get a public defender to resolve the criminal cases that are keeping him detained without being produced for court and it looks like he can't get produced for court while detained. While we understand your policy, the cumulative policies here are generating a serious due process violation.

(*Id.*).

As these examples make clear, the Refusal Policy and Practice creates a vicious cycle. Individuals detained at Moshannon cannot appear virtually in New Jersey criminal proceedings; as a result, they cannot resolve criminal charges; and due to the unresolved nature of the charges, Plaintiffs cannot secure release from Moshannon on bond due to the pendency of those charges. The experiences of the named Plaintiffs are hardly unique. Several of them are familiar with others who are in the same situation as Plaintiffs. (*See* Isabela Decl. ⁋ 18; Josefina Decl. ⁋ 22; Commor Decl. ⁋ 18; Jose Decl. ¶ 7). By depriving people in detention of the ability to participate in and resolve state charges via remote means, Defendant ICE is manufacturing the very basis for keeping the individual detained.

## LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs.*, *P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). A class should be certified under Rule 23(b)(2) if it: "(l) meets the

requirements of Rule 23(a); (2) is sufficiently cohesive under Rule 23(b)(2);" and (3) is capable of description by a "readily discernible, clear, and precise statement of the parameters defining the class." *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) (quoting Fed. R. Civ. P. 23(c)(l)(B)).

"Although the court must undertake a rigorous analysis at the certification stage and consider some merits-related issues, the class certification stage is not the place for a decision on the merits." *Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 322 (3d Cir. 2016). Thus, "[i]n determining whether a class should be certified, the question is whether the requirements of Rule 23 have been met—not whether the moving party has stated a cause of action or is likely to succeed on the merits." *Gutierrez v. Johnson & Johnson*, 269 F.R.D. 430, 435 (D.N.J. 2010).

Plaintiffs seek to represent a Class defined as:

> All noncitizens detained by Defendants at the Moshannon Valley Processing Center who have unresolved criminal matters (inclusive of petty disorderly persons, disorderly persons, and indictable offenses) to be charged or charged in a superior or municipal court in New Jersey.

*See* Compl. ⁋ 158. Because Plaintiffs have suffered a cognizable injury, and because the Class meets the requirements of Rule 23(a) and (b)(2), Plaintiffs' Motion for Class Certification should be granted.

## LEGAL ARGUMENT

**I.    PLAINTIFFS HAVE STANDING TO CHALLENGE THE REFUSAL POLICY AND PRACTICE.**

### A.    The Plaintiffs Have Standing Because the Refusal Policy and Practice Prevents Them from Appearing in New Jersey Courts.

Plaintiffs seek relief from the Court because they are being injured by the Refusal Policy and Practice. To have standing to sue, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "In the class action context, [the] standing inquiry focuses solely on the class representative(s) . . . . '[P]utative class members need not establish Article III standing. Instead, the cases or controversies requirement is satisfied so long as a class representative has standing . . . .'" *Mielo v. Steak'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015)).

A plaintiff is injured within the meaning of Article III if "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]he risk of real harm" satisfies the concreteness requirement. *Id.* at 1549. Thus, "class members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will

-16-

suffice." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Moreover, if "an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Id.* at 58.

Plaintiffs have standing to challenge the Refusal Policy and Practice because they are all detained at Moshannon; have unresolved criminal matters in New Jersey courts; and have been denied or will be denied access to technology allowing them to participate in the criminal proceedings against them. For Josefina, Isabela, Felipe, and Jose, virtual appearances are necessary. (*See, e.g.*, Josefina Decl. ¶ 16); *see* The Hon. Glenn A. Grant, Notice To The Bar & Public, Municipal Court-Virtual Format For All Initial Appearances (Mar. 13, 2023), https://www.njcourts.gov/ sites/default/files/notices/2023/03/n230315c.pdf?cb=0996287c (directing that "the initial appearance in all Municipal Court cases, including those involving consequences of magnitude, will be scheduled as <u>virtual</u> initial appearances"). As a result of the Refusal Policy and Practice, they cannot appear to assert defenses to the charge or even explain their absence to the court. (*See, e.g.*, Josefina Decl. ¶¶ 16, 30, 31). The Plaintiffs who have successfully obtained counsel to defend them in the criminal cases have required the assistance of pro bono counsel. (*See, e.g.*, Felipe Decl. ¶¶ 13-15). However, most members of the proposed Class do not have access

to pro bono immigration counsel and the Refusal Policy and Practice limits pro bono immigration providers' capacity to take on new cases. (*See, e.g.*, Compl. ¶ 151–57).

All Plaintiffs were ordered released from pretrial detention under the CJRA. (Commor Decl. ¶¶ 6-7; Felipe Decl. ¶ 6; Josefina Decl. ¶ 12; Isabela Decl. ¶ 8; Jose Decl. ¶ 6). Some, like Commor and Felipe, are subject to conditions such as periodic reporting to the court through virtual or telephonic appearances. (Commor Decl. ¶ 7; Felipe Decl. ¶ 6). Because the Refusal Policy and Practice prevents them from doing so, they face potential criminal consequences from the failure to adhere to pretrial-release conditions. (*See* Commor Decl. ¶¶ 9, 13-15; Jose Decl. ¶¶ 7-8). Furthermore, as noted above, both Commor and Felipe have been unable to participate in their own defenses. (Commor Decl. ¶¶ 14-15; Felipe Decl. ¶¶ 13-15). Both now wish to and are eligible to obtain a public defender but cannot access the court to request one. (Commor Decl. ¶ 17; Felipe Decl. ¶¶ 13-15).

Lastly, as a consequence of the Refusal Policy and Practice, all Plaintiffs are subject to prolonged detention because they are hampered in their ability to obtain bond or other release while they have unresolved criminal matters. (Commor Decl. ¶¶ 4, 19, 23; Josefina Decl. ¶ 32; Felipe Decl. ¶ 16; Isabela Decl. ¶ 22; Jose Decl. ¶ 9). Commor has been denied bond specifically because the criminal charges against him are unresolved and Isabela was advised by an Immigration Judge that she should wait until the charges against her are resolved before seeking bond again.

(Commor Decl. ⸎ 19; Isabela Decl. ⸎ 22). Without the ability to secure bond, these Plaintiffs remain in immigration detention, separated from their families, jobs, and homes, and are subjected to the conditions of detention facilities.

All Plaintiffs therefore have a "legally protected interest" sufficient for Article III standing in their right to access the New Jersey Courts under the First, Fifth, and Sixth Amendments. *Cottrell v. Alcon Labs.*, 874 F.3d 154, 164 (3d Cir. 2017) (noting that "legally protected interests" sufficient to confer standing "may arise from the Constitution"); *see Acevedo v. Forcinito*, 820 F. Supp. 886, 887 (D.N.J. 1993) ("It is well established that prisoners have a fundamental constitutional right of access to the courts." (citation omitted)).

This Court has specifically held that "a pre-trial detainee has a right of access to the courts with respect to . . . participation in one's own defense against pending criminal charges." *Ward v. Aviles*, No. 11-CV-6252 (WJM), 2012 WL 2341499, at *2 (D.N.J. Jun. 18, 2012) (citing *May v. Sheahan*, 226 F.3d 876, 883–84 (7th Cir. 2000)). And individuals detained by federal immigration authorities are entitled to the same rights as pre-trial detainees. *E. D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019) (collecting cases where courts expressly held that "immigration detainees are entitled to the same due process protections" as pretrial detainees); *accord Foreman v. Lowe*, 261 F. App'x 401, 404 (3d Cir. 2008) ("Because [plaintiff] was an immigration detainee at the time of the alleged constitutional violations, he is

-19-

entitled to the same protections as a pre-trial detainee."). The right of a person in detention to access the courts "is the most fundamental right [a person] holds, for all other rights of [people detained] are illusory without it." *Acevedo*, 820 F. Supp. at 887 (citations omitted). As demonstrated by the Plaintiffs' circumstances, Plaintiffs have standing to pursue their constitutional claims.

## II.    THE CLASS SHOULD BE CERTIFIED.

### A.    The Class Meets the Requirements of Rule 23(a).

"In order to be certified, a class must satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re LifeUSA Holding Inc.*, 242 F.3d 136, 143 (3d Cir. 2001). The Class meets each requirement.

#### 1.    Numerosity

The Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(l). The numerosity requirement does not demand that joinder would be "impossible," but rather focuses on whether it would be "difficult[ to] achiev[e] joinder." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016). Relevant considerations include "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages." *Id.* at 253. Although "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, . . . generally if

the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Class counsel need not "demonstrate the precise number of class members when a reasonable estimate can be inferred from facts in the record." *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 116 (D.N.J. 2003).

As we demonstrate through the Declaration of Dr. Ian G. Peacock, the proposed Class satisfies the numerosity requirement of Rule 23(a). The daily census of detained individuals at Moshannon who were apprehended in New Jersey and who have unresolved criminal charges exceeded forty by the end of the first quarter of 2022 and has consistently remained well above that number in all following calendar quarters. According to the most recent information (as of the end of the first quarter of 2024), that daily census exceeds 200 individuals. (Peacock Decl., ¶ 15, Ex. E).  Dr. Peacock bases this analysis on the data provided by ICE pursuant to a Freedom of Information Act request. (*Id.* ¶¶ 6-8). Further, this number no doubt understates the number of individuals detained at Moshannon with active criminal proceedings. This is so for two reasons.  First, the population at Moshannon has been consistently increasing over time, yet the ICE data only provides information through the early spring of this year; accordingly, the number of Class members detained at Moshannon is likely higher today than at the close of the first quarter of 2024. (*Id.* ¶¶ 14-15). Second, the ICE data identifies people detained at Moshannon

with prior convictions but does not disclose which of those individuals also has current unresolved charges against them.[6] (*Id.* ¶ 16). Some proportion of these individuals no doubt also have pending charges and therefore fit the Class definition. (*Id.* ¶ 17). Accordingly, the number of individuals detained at Moshannon who satisfy the Class definition well exceeds 200 today.[7]

The inclusion of these potential members supports a numerosity finding because "[t]he number of class members will increase further" if we include these individuals, *Stewart*, 275 F.3d at 227, and "[t]he joinder of potential future class members who share a common characteristic, but whose identity cannot be determined yet[,] is considered impracticable," *Hawker v. Consovoy*, 198 F.R.D. 619, 625 (D.N.J. 2001).

Especially where, as here, the total population at Moshannon has been steadily increasing over time, (Peacock Decl., ¶ 14, Ex. D), the fact that the precise size of

---

[6] As explained in the Peacock Declaration, the Freedom of Information Act ("FOIA") data from ICE lists an individual as having "Pending Criminal Charges" or being a "Convicted Criminal," but not both. That is, if a person is a convicted criminal who also has unresolved criminal charges pending against them, the latter is not reflected in the data.

[7] On the eve of filing, ICE produced an expanded dataset to counsel for LSNJ which includes census information through August 27, 2024, as well as the specific "Apprehension Site" of the individuals subsequently detained at Moshannon. Dr. Peacock has not yet revised his report based on this more current data but, based on his preliminary analysis of the same, he has confirmed that the results would be consistent with those he produced using the first dataset. If anything, the numbers have increased in intervening months between April and August.

the Class fluctuates over time is no bar to class certification on claims seeking injunctive relief. *See Shamberg v. Ashlstrom*, 111 F.R.D. 689, 698 (D.N.J. 1986) ("Certification is not barred because the precise number of class members has not been determined."); *Thakker v. Doll*, 336 F.R.D. 408, 415 (M.D. Pa. 2020) ("[T]he fact that the membership and size of a class may vary over time as detainees are transferred away from or introduced into [a prison facility] enhances the desirability of using a plaintiff class." (internal quotation marks, alterations, and citation omitted)).

Joinder is also impracticable because Defendants deny Class members access to courts. Moreover, the Class members are detained by Defendants, many are unrepresented by immigration and criminal defense counsel, many have limited English proficiency, and many are indigent and lack sufficient resources, financial or otherwise, to bring their own cases. *See N.S. v. Hughes*, 335 F.R.D. 337, 353 (D.D.C. 2020), *modified on clarification sub nom. N.S. v. Dixon*, No. 1:20-CV-101-RCL, 2020 WL 6701076 (D.D.C. Nov. 13, 2020)) ("[T]he proposed class is limited to indigents, meaning that bringing individual suits would be extremely difficult."); *see also* Newberg on Class Actions § 3:11 (observing that joinder is impracticable if "class members are financially unable to fund litigation themselves"). If they proceed as a class, however, they will have pro bono representation to challenge the

Refusal Policy and Practice. Thus, the Class meets the requirements of Rule 23(a)(1).

### 2.    Commonality

A single issue drives the relief the Class seeks: whether the Refusal Policy and Practice violates the U.S. Constitution and/or the Administrative Procedures Act. Deciding that issue in the Class's favor will provide relief to all class members because it will remove the manufactured obstacle to the Class's ability to access the criminal proceedings against them in New Jersey, as they do their immigration proceedings and certain family court proceedings. Therefore, "there are questions of law . . . common" to the Class. Fed. R. Civ. P. 23(a)(2).

As the Third Circuit has explained, the "threshold of commonality is not high." *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (citation omitted). "[O]nly one question of law or fact in common is necessary to satisfy the commonality requirement, despite the use of the plural 'questions' in the language of Rule 23(a)(2)." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 n.10 (3d Cir. 2009). To meet the commonality standard, plaintiffs must show that their claims "depend upon a common contention" and that determination of the truth or falsity of that common contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

-24-

338, 350 (2011); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 426–27 (3d Cir. 2016).

Although a putative class must be held together by a common thread, class representatives need not have "endured precisely the same injuries that have been sustained by the class members"; Rule 23(a)(2) is satisfied so long as "the harm complained of [is] *common* to the class." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988). Indeed, "class members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice." *Baby Neal*, 43 F.3d at 56; *see also Hagan v. Rogers*, 570 F.3d 146, 158 (3d Cir. 2009) (noting that a common "threat of an injury" can satisfy Rule 23(a)(2)). "Moreover, because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2).'" *Baby Neal*, 43 F.3d at 57 (quoting 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Civil § 1763, at 201 (2d ed. 1986)).

Indeed, courts in this Circuit have consistently certified classes, like this one, that are unified by the common threat of harm from a "defendant[s'] conduct and policies," *Shelton*, 775 F.3d at 565, even if individual class members have been affected in different ways by that policy or have yet to be harmed, so long as the defendant has uniformly applied that policy to the putative class, *see*, *e.g.*, *In re Cnty.*

*Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 399 (3d Cir. 2015) (commonality requirement satisfied where plaintiffs alleged "that the class was subjected to the same kind of illegal conduct by the same entities, and that class members were harmed in the same way, albeit to potentially different extents"); *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 488 (3d Cir. 2015) (finding commonality where "the sham theory" asserted by plaintiffs against defendants "relie[d] on a 'common mode' of behavior and a 'general policy' of fraud"); *Troncone v. Velahos*, No. 10-2961, 2013 WL 1222630, at *4 (D.N.J. Mar. 25, 2013) (commonality established where the plaintiff "allege[d] a general policy by Defendants" that caused the class members' injuries).

Indeed, district courts certify 23(b)(2) classes when the plaintiffs challenge a policy that impacts similarly situated persons. *Howard v. Williams*, No. 2:20-CV-01389, 2022 WL 16553239, at *2 (W.D. Pa. Oct. 31, 2022) (commonality established and 23(b)(2) class certified where "case turn[ed] on the common questions of the existence and constitutionality of broadly and uniformly applicable policies and procedures governing certain inmates' confinement"); *see also Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (commonality present in challenge to the statewide "medical, mental health, and dental care policies and practices" of the Arizona Department of Corrections because every putative class member was subject to the same policies and faced a risk of harm); *Wilson v. County of*

-26-

*Gloucester*, 256 F.R.D. 479, 491 (D.N.J. 2009) (concluding that "the portion of this suit seeking an order enjoining the [d]efendants from following [unlawful] policies and practices [requiring strip-searches of pretrial detainees], is particularly well-suited for certification under (b)(2)").

The Refusal Policy and Practice injures all members of the Class because they all have unresolved criminal proceedings in New Jersey. The Refusal Policy and Practice is the source of all the Class's several injuries and serves as the common thread uniting the Class's claims. These injuries—including Class members' inability to seek appointment of a public defender, to appear for required virtual court hearings, to adhere to the conditions of pretrial release, and to present a defense—all follow from the Refusal Policy and Practice. And because the Class seeks only a declaration and an order enjoining the Refusal Policy and Practice and requiring Defendants to provide them with access to the same technology already offered for immigration and select family court proceedings, the Court can grant the Class relief in "one stroke." *Dukes*, 564 U.S. at 350; *see also, e.g.*, *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 368 (S.D.N.Y. 2019) (concluding that where "[c]ommon questions of law," such as "whether the agency is following a new policy and whether that policy violates the APA [] will be significant" in adjudicating class members' individual cases, "resolution on a class-wide basis will allow for an

important issue in the individual cases to be decided in 'one stroke'" (quoting *Dukes*, 564 U.S. at 350)).

### 3.    Typicality

All members of the Class are prevented from appearing virtually in New Jersey Courts for the same reason: Defendants' Refusal Policy and Practice. This is certainly true for each of the Plaintiffs. Therefore, Plaintiffs' claims are "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).

"The typicality inquiry . . . centers on whether the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (internal quotation marks omitted). The Third Circuit has "set a 'low threshold' for typicality." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 428. "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton*, 259 F.3d at 183-84. "'Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct.'" *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 428 (quoting

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)).

Here, Plaintiffs and the Class's claims all take aim at the same conduct—the Defendants' unlawful Refusal Policy and Practice. It is well established that "a claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice." *Newton*, 259 F.3d at 184 (internal quotation marks omitted); *see also Luxama v. Ironbound Express, Inc.*, No. CV112224JMVJBC, 2018 WL 6819341, at *13 (D.N.J. Dec. 27, 2018) (same). Because Plaintiffs, like all members of the Class, are exposed to the same "risk of an injury," *Baby Neal*, 43 F.3d at 63, from the Refusal Policy and Practice— *i.e.*, that they will not be able to appear virtually in criminal proceedings against them in the New Jersey Courts—typicality is established even though some members of the Class may not have yet been denied the opportunity to appear virtually.

### 4. Adequacy

"The adequacy requirement primarily examines two matters: the interests and incentives of the class representatives, and the experience and performance of class counsel." *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d at 392. Both prongs of Rule 23(a)(4) are met here.

### a.    Plaintiffs Will Protect the Class's Interests

To establish that they are adequate class representatives, the named Plaintiffs must show that they have "the ability and the incentive to represent the claims of the class vigorously, . . . and that there is no conflict between the[ir] individual claims and those asserted on behalf of the class." *Hassine*, 846 F.2d at 179. Here, Plaintiffs will more than adequately represent the Class because they are "part of the class and possess the same interest and [have] suffer[ed] the same injury as the class members." *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997)).

Plaintiffs are motivated to prosecute this action on behalf of all class members because, as a result of the Refusal Policy and Practice, they are at immediate risk of adverse consequences from the failure to appear in the New Jersey courts and the several kinds of harm that follow. Further, there is no conflict between Plaintiffs and other class members. Their interests are aligned because they face or have experienced similar injuries under the Refusal Policy and Practice, and they have asserted identical claims seeking to have the Refusal Policy and Practice overturned so that they can appear virtually in criminal proceedings.

b.    **Lowenstein Sandler, Legal Services of New Jersey, and the Harvard Immigration & Refugee Clinical Program Are Qualified to Represent the Class.**

"Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) . . . , those questions have, since 2003, been governed by Rule 23(g)." *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Rule 23(g)(l) provides a list of nonexclusive factors a court may consider in determining whether class counsel is adequate, including: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(l)(A)(i)-(iv). "No clearly defined standard exists to determine whether class counsel is qualified to represent the putative class, rather, the court is required to confirm that the proposed attorneys can 'handle' the representation." *Doyle v. Fla. Health Sol., Inc.*, No. 17-12231, 2018 WL 1128776, at *4 (D.N.J. Mar. 1, 2018).

Lowenstein Sandler, which undertook this matter on a *pro bono* basis, will effectively represent the interests of the Class. Its attorneys have extensive experience handling both class action litigation and complex immigration cases.

Also, the firm has the financial resources and staff to litigate this matter to completion. (*See* Declaration of Gavin J. Rooney ¶¶ 3-11 (Sept. 10, 2024)).

LSNJ, which also undertook this matter on a *pro bono* basis, will effectively represent the interests of the Class. In addition to investigating the factual and legal claims involved in this matter, including filing and then litigating a FOIA Request for public records to shed light on the widespread harms caused by Defendants' Refusal Policy and Practice, *LSNJ v. ICE*, No. 23-CV-22222 (D.N.J.), its attorneys have significant experience working with impacted members of the class. Moreover, its lead attorneys in this case have extensive experience litigating class action cases and complex immigration cases. Finally, LSNJ has the financial resources and staff to litigate this matter to completion. (*See* Wisotsky Decl. ¶¶ 3-18).

HIRCP, which undertook this matter on a *pro bono* basis, will effectively represent the interests of the Class. The Program's attorneys have extensive experience handling complex immigration cases, including those involving criminal matters, and class action litigation. Moreover, HIRCP has the financial resources and staff to litigate this matter to completion. (*See* Declaration of Tiffany J. Lieu, ¶¶ 3-10 (Sept. 9, 2024)).

All proposed Class Counsel have devoted significant time to investigating potential claims in this action, including researching legal support for Class Members' claims and coordinating with experts in the criminal justice and

immigration fields to develop support for Plaintiffs' case. Proposed Class Counsel do not have any interests that are in conflict with those of the Class.

**B.    The Class Meets the Requirements of Rule 23(b)(2) Because a Single Injunction Would Remedy the Harm Caused by the Refusal Policy and Practice.**

If the "Rule 23(a) requirements are satisfied, the court must also find that the class is maintainable under Rule 23(b)(l), (2), or (3)." *In re LifeUSA Holding Inc.*, 242 F.3d at 143. This lawsuit presents the archetypical 23(b)(2) class because the Refusal Policy and Practice has been "appl[ied] generally to the class" and because "final injunctive relief or corresponding declaratory relief" deeming Defendants' Refusal Policy and Practice unlawful and requiring Defendants to provide Class members remote access to the New Jersey courts "is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Third Circuit has observed that "injunctive actions," like this one, that "seek[] to define the relationship between the defendant and the 'world at large,' will usually satisfy [the (b)(2)] requirement." *Baby Neal*, 43 F.3d at 59. Indeed, "[i]t is the (b)(2) class which serves most frequently as the vehicle for . . . institutional reform cases that receive class action treatment." *Id.* at 58–59. As the Advisory Comments to the Rule make clear, "[t]he writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights." *Id.*

at 64 (citing Advisory Committee Notes to 1966 Amendments to Rule 23, 39 F.R.D. 102 (1966)).

In addition to the challenged policy applying to the class as a whole, a class certified under Rule 23(b)(2) must be "cohesive." *See Gates v. Rohm & Haas Co.*, 655 F.3d 255, 263–64 (3d Cir. 2011). This requirement is not the same as Rule 23(b)(3)'s predominance requirement.[8] Rather, cohesiveness is satisfied where "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (internal quotation marks and citation omitted); *see also Luxama*, 2018 WL 6819341, at *14. In other words, Rule 23(b)(2) is met where "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

The single injunction requirement does not, however, mean that all class members must be identically situated. For a Rule 23(b)(2) class, "certification is appropriate even if the defendant's action or inaction has taken effect or is threatened only as to one or a few members of the class, provided it is based on *grounds* which have general application to the class." *Neale*, 794 F.3d at 367–68 (internal quotations and citation omitted). And because "threatened" conduct precedes actual harm, *id.*,

---

[8] The Third Circuit has also "conclude[d] that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief." *Shelton*, 775 F.3d at 563; *see also City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 n.2 (3d Cir. 2017) (noting that the "ascertainability standard" for (b)(3) classes "is not applicable to Rule 23(b)(2) classes").

class members need not have suffered an existing and manifested injury to obtain class-wide relief.

Accordingly, courts in this District have certified classes of persons who challenge government policies that place the whole class at risk, notwithstanding the variety of injury suffered by individual class members as a result of those policies. For example, in *Gayle v. Warden, Monmouth County Correctional Institution*, No. 12-CV-02806, 2017 WL 5479701, at \*1 (D.N.J. Nov. 15, 2017), Judge Freda L. Wolfson certified a class of immigrants who claimed violations of federal and constitutional law resulting from the allegedly flawed procedures through which they were permitted to challenge their mandatory detention. The court rejected the Government's argument that the different challenges plaintiffs could raise during their hearings precluded the court from collectively adjudicating their claims, noting that plaintiffs were "all subject to the same allegedly unconstitutional governmental policies and practices which they challenge." *Id.* at \*20. "[B]ecause Plaintiffs s[ought] injunctive and declaratory relief to remedy those alleged violations, they would similarly benefit *all* class members." *Id.*

Similarly, in *W.A.O. v. Cuccinelli*, No. 2:19-CV-11696MCAMAH, 2019 WL 4509333, at \*2–3 (D.N.J. Sept. 17, 2019), Judge Madeline Cox Arleo similarly certified a Rule 23(b)(2) class of juvenile immigrants challenging a U.S. Citizenship and Immigration Services policy of discrediting findings from New Jersey Family

Courts submitted in support of plaintiffs' application for Special Immigrant Juvenile ("SIJ") classification. Judge Arleo found that class certification was appropriate because plaintiffs alleged that the governmental policy at issue "defeats SIJ classification for all members of the putative class and because an injunction requiring [the] [d]efendants to suspend that alleged [p]olicy would provide relief to the class as a whole." *Id.* at *3; *accord Colon v. Passaic County*, No. 08-CV-4439, 2009 WL 1560156, at *5 (D.N.J. May 27, 2009) (certifying (b)(2) class where plaintiffs sought "to enjoin the policies and actions" that led to unconstitutional prison conditions and noting that the "case [wa]s a prime candidate for class treatment under Rule 23(b)(2) because it s[ought] injunctive relief against actions, or inactions" that affected the whole class); *Dittimus-Bey v. Taylor*, 244 F.R.D. 284, 293 (D.N.J. 2007) (certifying (b)(2) class where plaintiffs sought to enjoin prison "policies" that "cause[d] injury to all present and future inmates" and noting that "it would be impossible to provide injunctive relief except on a class-wide basis").

Here, the Class's claims are cohesive because Plaintiffs and the Class members are all subject to the same Refusal Policy and Practice, which is uniformly applied to all members of the Class regardless of individual circumstances. An injunction requiring Defendants to provide Plaintiffs with access to the New Jersey courts for purposes of participating in their criminal proceedings would similarly benefit all Class members. Differences in the Class members' backgrounds, the

criminal charges against them, or their respective injuries caused by the Refusal Policy and Practice have no impact on the relief they seek because the Class is only pursuing a right of *access* to New Jersey state and municipal criminal courts, which right is currently denied. *See Baby Neal*, 43 F.3d at 57 (holding that where a "defendant engag[es] in a common course of conduct toward [plaintiffs]," there is "no need for *individualized* determinations of the propriety of injunctive relief" where "defendant's conduct is central to the claims of all class members" (emphasis in original)).

### III.   LOWENSTEIN SANDLER, LEGAL SERVICES OF NEW JERSEY, AND THE HARVARD IMMIGRATION & REFUGEE CLINICAL PROGRAM SHOULD BE APPOINTED CLASS COUNSEL.

"[A] court that certifies a class must appoint class counsel." *Sheinberg*, 606 F.3d at 132 (quoting Fed. R. Civ. P. 23(g)); *see also* Fed. R. Civ. P. 23(c)(l)(B). For the reasons set forth in Section 4(b), *supra*, Plaintiffs respectfully request that Lowenstein Sandler, Legal Services of New Jersey, and the Harvard Immigration & Refugee Clinical Program be appointed as Co-Class Counsel. Individually and collectively, the proposed Co-Class Counsel have specialized experience in the areas of criminal justice and immigration law, and in handling complex cases and class actions, and would provide strong representation for the Class in this matter.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Class Certification and Appointment of Class Counsel, and: (i) certify the Class as defined, or such other class that the Court deems appropriate; (ii) appoint Plaintiffs to serve as representatives of the class; and (iii) appoint Lowenstein Sandler LLP, Legal Services of New Jersey, and the Harvard Immigration & Refugee Clinical Program as Co-Class Counsel.

Dated: September 11, 2024        By: *<u>/s/ Gavin J. Rooney</u>*
                          Gavin J. Rooney, Esq.
                          Alexander Shalom, Esq.
                          Natalie J. Kraner, Esq.
                          Naomi D. Barrowclough, Esq.
                          Anish Patel, Esq.*
                          Ruth Zimmerman, Esq.
                          **LOWENSTEIN SANDLER LLP**
                          One Lowenstein Drive
                          Roseland, New Jersey 07068
                          (973) 597-2500

                          Shira Wisotsky, Esq.
                          Raquiba Huq, Esq.
                          Zoe Burke, Esq.
                          Emily Thorton, Esq.*
                          **LEGAL SERVICES OF NEW JERSEY**
                          P.O. Box 1357
                          Edison, New Jersey 08818
                          (908) 882-2665

Tiffany J. Lieu, Esq.*
Philip L. Torrey, Esq.*
**CRIMMIGATION CLINIC**
**HARVARD IMMIGRATION &**
**REFUGEE CLINICAL PROGRAM**
6 Everett Street, Suite 3106
Cambridge, Massachusetts 02138
(617) 496-5497

*Pro Bono Counsel for Plaintiffs*

*\*pro hac vice* motion forthcoming