BRIAN BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
LAUREN FASCETT
Senior Litigation Counsel
JORDAN HUMMEL
KEVIN HIRST
HANA SHATILA
DANIEL SCHUTRUM-BOWARD
(MD Bar No. 1812120107)
Trial Attorneys
Office of Immigration Litigation
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel 202-919-1670; Fax: (202) 305-7000
Email: Daniel.R.Schutrum-Boward@usdoj.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEFINA DOE, *et al.*,<br><br>         *Plaintiffs*,<br><br>    v.<br><br>U.S. DEPARTMENT OF<br>HOMELAND SECURITY, *et al.*,<br><br>         *Defendants*. | Hon. Michael E. Farbiarz, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J.<br><br>Civil Action No. 2:24-cv-09105<br>(MEF) (LDW) |

## MEMORANDUM OF POINTS AND
## AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION
## <u>TO TRANSFER VENUE AND TO STAY ALL FILING DEADLINES</u>

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................1

ARGUMENT ........................................................................................................5

   I.   The Court Should Transfer This Case to the Western District of
Pennsylvania..........................................................................................................5

      A.   Legal standard for motion to transfer under 28 U.S.C. § 1404(a). ..............5

      B.   The Western District of Pennsylvania is the proper forum for this case. ....7

      *i. Private Interest Factors* ................................................................................8

      *ii. Public Interest Factors* ...............................................................................15

   II.   The Court Should Stay All Deadlines Pending Its Ruling on Defendants'
Motion to Transfer................................................................................................20

      A.   Legal standard for motion to stay............................................................20

      B.   A stay is appropriate given the early stage of the instant litigation. ..........21

CONCLUSION ....................................................................................................22

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Actelion Pharmaceuticals Ltd. v. Apotex Inc.*,
   No. 12-5743, 2013 WL 5524078 (D.N.J. Sept. 6, 2013) ............................... 20, 21
*Allied Old English, Inc. v. Uwajimaya, Inc.*,
   No. 11-CV-1239, 2012 WL 3564172 (D.N.J. Aug. 16, 2012)............................21
*Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*,
   736 F.Supp. 1294 (D.N.J. May 3, 1990) ...............................................................8
*Barron v. United States*,
   No. CIV. 1:CV-09-0816, 2009 WL 1675738 (M.D. Pa. June 15, 2009) .............18
*Bearam v. Wigen*,
   No. 3:CV-12-2289, 2013 WL 1750964 (M.D. Pa. Mar. 20, 2013).....................17
*Bearam v. Wigen*,
   No. 3:CV-12-2289, 2013 WL 1750999 (M.D. Pa. Apr. 23, 2013) .....................17
*Beychok v. Baffert*,
   No. 21-14112, 2024 WL 685551 (D.N.J. Feb. 20, 2024) .....................................5
*Care One, LLC, et al. v. NLRB, et al.*,
   680 F.Supp.3d 540 (D.N.J. June 23, 2023) .................... 5, 6, 8, 10, 12, 13, 14, 17
*Clinton v. Jones*,
   520 U.S. 681 (1997) ..........................................................................................20
*Collins v. Mary Kay, Inc.*,
   No. 15-CV-7129, 2016 WL 3546581 (D.N.J. June 29, 2016) ............................14
*Espinoza v. Lindsay*,
   500 Fed.Appx. 123 (3d Cir. Oct. 4, 2012).........................................................18
*FDA v. Alliance for Hippocratic Medicine*,
   602 U.S. 367 (2024) ..........................................................................................12
*Gentry v. Chubb*,
   No. 21-13744, 2021 WL 11959607 (D.N.J. Dec. 22, 2021) ..............................20
*Gray v. Apple Inc., et al.*,
   No. 13-CV-7798, 2016 WL 4149977 (D.N.J. Aug. 3, 2016)..............................15
*Guzman v. Moshannon Valley Processing Center*,
   No. 24-1054, 2024 WL 1251170 (D.N.J Mar. 22, 2024)...................................17
*Interlink Prods. Int'l, Inc. v. Crowfoot*,
   No. 20-7654, 2020 WL 6707946 (D.N.J. Nov. 16, 2020)....................................5
*Janosko v. United of Omaha Life Ins. Co.*,
   No. 16-CV-1137, 2016 WL 4009818 (D.N.J. July 25, 2016)..............................15
*Jerez v. Warden of Moshannon Valley Processing Center*,
   No. 23-136, 2023 WL 8771700 (W.D. Pa. Nov. 1, 2023) ..................................17

*Johnson v. Arteaga-Martinez*,
  596 U.S. 573 (2022) ............................................................................9
*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ........................................ 6, 8, 17, 18
*Karimi v. Deutsche Bank Aktiengesellschaft*,
  No. 20-8978, 2022 WL 1001566 (D.N.J. Mar. 31, 2022) ....................................13
*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) ..........................................................................20
*LG Electronics v. First Intern Computer, Inc.*,
  138 F.Supp.2d 574 (D.N.J. Apr. 11, 2001) .........................................15
*Nweme v. Oddo*,
  No. 3:23-cv-247, 2023 WL 6795280 (W.D. Pa. Oct. 13, 2023) ..........................17
*Silvis v. Ambit Energy, LP*,
  90 F.Supp.3d 393 (E.D. Pa. Mar. 13, 2015) ........................................15
*Tischio v. Bontex, Inc.*,
  16 F.Supp.2d 511 (D.N.J. June 29, 1998) .............................................8
*U.S. Fire Ins. Co. v. World Trucking, Inc.*,
  No. 07-CV-1153, 2008 WL 413310 (D.N.J. Feb. 13, 2008)................................8
*Wm. H. McGee & Co. v. United Arab Shipping Co.*,
  6 F. Supp. 2d 283 (D.N.J. 1997) ........................................................16

## Statutes

8 U.S.C. § 1252....................................................................................10
8 U.S.C. § 1252(a)(5)..........................................................................10
8 U.S.C. § 1252(b)(9)..........................................................................10
28 U.S.C. § 1391(e)(1).........................................................................8
28 U.S.C. § 1404(a) ...........................................................................1, 5

## Regulations

8 C.F.R. § 1003.19(a)..........................................................................9
8 C.F.R. § 1003.19(d) ..........................................................................9

## INTRODUCTION

Defendants move the Court, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the Western District of Pennsylvania. Plaintiffs are noncitizens detained within the Western District of Pennsylvania at Moshannon Valley Processing Center ("Moshannon") located in Philipsburg, Pennsylvania, and one nonprofit organization that represents noncitizens detained at that facility. Plaintiffs bring this putative class action challenging an alleged policy at Moshannon regarding access to virtual court appearances. Notably, Moshannon—the facility where Defendants allegedly carry out the challenged policy and where Plaintiffs' requested declaratory and injunctive relief would occur—is located in Philipsburg, Pennsylvania. Additionally, all the named Plaintiffs and putative class members and nearly all Defendants are located in Pennsylvania. Clearly, this case belongs in a court within that jurisdiction. Accordingly, pursuant to 28 U.S.C. § 1404(a), Defendants request that the Court transfer this matter to the Western District of Pennsylvania.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are five noncitizens with unresolved state criminal matters who are presently held[1] at Moshannon in Philipsburg, Pennsylvania, and their legal services provider, Immigrant Rights Program of the American Friends Service

---

[1] Named Plaintiff Felipe Niomar Martinez Ortiz was released from detention on October 8, 2024, and is no longer a properly named party.

Committee ("AFSC IRP"), that represents these noncitizens detained at that facility. On September 11, 2024, Plaintiffs filed a Complaint alleging that Moshannon has a "policy and practice of denying the people detained there access to video-conferencing technology . . . to appear and participate in their pending criminal proceedings," which they argue violates the "First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." Compl., ECF No. 1 ¶ 1-3. With the filing of their Complaint, Plaintiffs also moved to certify a class consisting of: "All noncitizens detained by Defendants at the Moshannon Valley Processing Center who have unresolved criminal matters . . . to be charged or charged in a superior or municipal court in New Jersey." ECF No. 2-1 at 15.

In their Complaint, Plaintiffs assert that the "majority of noncitizen New Jerseyans detained by Defendant[s] . . . are apprehended immediately after an arrest or other interaction with the New Jersey criminal legal system, and then immediately or subsequently transferred to Moshannon." ECF No. 1 ¶ 45. Plaintiffs allege that Defendants do not make "telephones, tablets, computers, or other electronic devices available to people in detention for court appearances at Moshannon outside of immigration [court] appearances and limited family court matters" and, therefore, detainees "cannot use routinely and widely available video-conferencing technology, or even the telephone, in order to participate in criminal court appearances in New Jersey state courts." *Id.* ¶ 49-50.

In their Complaint, Plaintiffs demand that Defendants expend their limited resources and redirect their staff and the use of four videoconference rooms—already in use for approximately 1,250 Moshannon detainees' immigration proceedings—to coordinate and facilitate virtual appearances for putative plaintiffs in their numerous New Jersey court proceedings. *See id.* ¶ 39. Plaintiffs acknowledge Defendants' willingness to honor a State-court writ for *in-person* production but dismiss it because in such instance, "the State must dispatch law-enforcement personnel to pick up from, and return the individual to, Moshannon (at least an eight-hour, round-trip drive), regardless of expense; and the State must detain, and pay for the detention of, the individual." *Id.* ¶¶ 6, 52. Plaintiffs assert that "it is not realistic, feasible, or possible that State and municipal entities will expend their limited resources in this fashion, and for all of the people with unresolved criminal charges transferred by Defendants to Moshannon." *Id.* According to Plaintiffs, "some New Jersey courts automatically issue bench warrants for people detained by Defendants at Moshannon, and/or deem it futile to schedule court appearances while a Putative Class member is detained there." *Id.* ¶ 98.

Plaintiffs raise various forms of alleged harm as the result of Defendants' supposed policy and its alleged effect. They claim that the Individual Plaintiffs and putative class experience prolonged detention that interferes with their ability to

resolve their criminal and immigration cases. *See id.* ¶¶ 123-39. They also claim harm to the Organizational Plaintiff's operations as a legal services provider by causing additional resource expenditures and affecting its ability to secure its clients' release from immigration detention as well as immigration relief. *Id.* ¶¶ 130-149, 151-152.

Plaintiffs ask the Court, on behalf of themselves and the putative class, to declare Moshannon's alleged policy unlawful and to issue an injunction that would, *inter alia*, require Defendants to:

- "virtually produce via video conference individuals in its custody at Moshannon [upon their request] for all stages of cases ICE defines as criminal matters, including but not limited to court appearances involving arraignments, first appearances, ability-to-pay proceedings, evidentiary hearings, suppression and other substantive motions, court conferences, and trials," ECF No. 1 ¶ 5-b (Prayer for Relief);

- "purchase and maintain sufficient computer hardware and software equipment at Moshannon such that people in detention shall be able to participate in state court proceedings . . . in addition to the equipment purchased for EOIR proceedings," *id.* ¶ 5-c;

- "purchase and maintain equipment to allow telephonic access to state courts for the people they detain at Moshannon," *id.* ¶ 5-d; and

- "pay for and be subject to monitoring requirements at Moshannon for a minimum of five years," which would include a "court-appointed monitor and/or inspection and production of equipment for Plaintiffs' counsel," *id*. ¶ 5-e.

## ARGUMENT

### I.    The Court Should Transfer This Case to the Western District of Pennsylvania.

#### A. Legal standard for motion to transfer under 28 U.S.C. § 1404(a).

A district court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In assessing a motion under 28 U.S.C. § 1404(a), courts conduct a two-step analysis. *See Care One, LLC, et al. v. NLRB, et al.* ("*Care One*"), 680 F.Supp.3d 540, 544 (D.N.J. June 23, 2023) (Farbiarz, J.) (citing *Interlink Prods. Int'l, Inc. v. Crowfoot*, No. 20-7654, 2020 WL 6707946, at *6 (D.N.J. Nov. 16, 2020)). Courts first determine "whether the requested transferee venue is one where the action 'might have been brought.'" *Id.* When "asking where [a] case 'might have been brought,'" courts consider whether "personal jurisdiction and venue would be proper" in the transferee forum. *Beychok v. Baffert*, No. 21-14112, 2024 WL 685551, at *3 (D.N.J. Feb. 20, 2024) (Farbiarz, J.).

Second, courts decide "'whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a

different forum.'" *Care One*, 680 F.Supp.3d at 544. (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). As part of this analysis, the Third Circuit has identified twelve factors divided evenly into two groupings that courts should consider: six "private interest" factors and six "public interest" factors. *Jumara*, 55 F.3d at 879-80. The private interest factors are:

1. plaintiffs' forum preference as shown by the original choice;

2. defendants' preference;

3. whether the claim arose somewhere else;

4. the convenience of the parties in light of their relative physical and financial condition;

5. witnesses convenience, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

6. the location of books and records, to the extent that said files could not be produced in the alternative forum.

*Id.* at 879 (citing 15 WRIGHT, MILLER & COOPER §§ 3848, 3849, 3851, 3853, at 385, 408, 420-22). The public interest factors are:

1. enforceability of the judgment;

2. practical considerations that could make trial easy, expeditious, or inexpensive;

3. the relative administrative difficulty in the two fora resulting from court congestion;

4. local interest in deciding local controversies at home;

5. public policies of the fora; and

6.  familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citing 1A PT. 2 JAMES W. MOORE & BRETT A. RINGLE, FEDERAL PRACTICE ¶ 0.345[5], at 4367, 4373, 4374 (2d ed. 1995); 15 WRIGHT, MILLER & COOPER § 3854). These factors are not exclusive, and courts have broad discretion to determine whether each factor weighs in favor of transfer on an "individualized, case-by-case basis." *See id.* at 879, 883. The movant bears the burden of establishing the need for transfer. *Id.* at 879.

**B.  The Western District of Pennsylvania is the proper forum for this case.**

For the convenience of the parties and in the interest of justice, the Court should transfer this action to the Western District of Pennsylvania. The Individual Plaintiffs and all putative class members are physically located at Moshannon, which is within the jurisdiction of the Western District of Pennsylvania. Their Complaint challenges an alleged policy at Moshannon, which is again, within the bounds of that jurisdiction. Crucially, the extensive remedy that the Plaintiffs seek entails specific action by Moshannon's management and staff to provide virtual conference rooms, telephones, and other electronic devices at the Moshannon facility that would take place in the Western District of Pennsylvania. Relatedly, Plaintiffs' relief request for five years of court-ordered monitoring would be implemented in that District.

7

Thus, Plaintiffs could and should have brought their lawsuit in the Western District of Pennsylvania, where Moshannon is located, as personal jurisdiction and venue are proper there. *See* 28 U.S.C. § 1391(e)(1) ("[V]enue is proper where a 'substantial part of the events . . . giving rise to the claim occurred'"). As detailed below, on balance, the private and public interest factors relevant to transferring venue weigh in favor of transfer, as this case "would more conveniently proceed and the interests of justice [would] be better served by transfer" to the Western District of Pennsylvania. *Jumara*, 55 F.3d at 879 (citation omitted).

### i. *Private Interest Factors*

The first private interest factor is Plaintiffs' forum choice. Although "[t]his choice should not be lightly disturbed," it is "not dispositive." *Care One*, 680 F.Supp.3d at 545 (citing *Jumara*, 55 F.3d at 879; *Tischio v. Bontex, Inc.*, 16 F.Supp.2d 511, 521 (D.N.J. June 29, 1998); *Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*, 736 F.Supp. 1294, 1306 (D.N.J. May 3, 1990)). Indeed, a plaintiff's forum "preference is accorded relatively less weight" if it has "'little connection with the *operative facts* of the lawsuit.'" *Id.* (quoting *U.S. Fire Ins. Co. v. World Trucking, Inc.*, No. 07-CV-1153, 2008 WL 413310, at *2 (D.N.J. Feb. 13, 2008)) (emphasis added). Such is the case here.

Plaintiffs' arguments as to why New Jersey is the proper venue to challenge an alleged policy effectuated at a detention facility in Pennsylvania are not

8

persuasive. ECF No. 1 ¶¶ 17c-17d. First, Plaintiffs argue that "[w]ith the exception of one, the Individual Plaintiffs in this matter reside" in New Jersey. *Id*. 17-b. But undisputedly, all Individual Plaintiffs are currently located at Moshannon in Pennsylvania, and likely will remain there unless and until an immigration judge grants them bond, at which point their claims would be moot. *See, e.g.*, *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (discussing immigration judges' authority to grant release on bond upon considering danger and flight risks); *see also* 8 C.F.R. §§ 1003.19(a), (d). Thus, where the Individual Plaintiffs resided before they were taken into custody and subjected to the alleged policy upon which this lawsuit is based is irrelevant to Plaintiffs' claims here.

Second, Plaintiffs argue that "[t]he State-court criminal proceedings at issue occur" in New Jersey. ECF No. 1 ¶ 17-c. This confuses the issue. Indeed, Plaintiffs do not seek to participate in their state criminal proceedings in person from New Jersey. By contrast, the entire crux of this lawsuit is that they seek to participate *virtually from Pennsylvania*, obviating the need for them to travel to New Jersey on a writ of in-person production (a procedure that DHS has and will continue to accommodate). *See Id.* ¶ 13 (seeking access to "technology" such as "Zoom, Microsoft Teams, WebEx, or, if appropriate, the telephone"). Thus, the location of the court that presides over those criminal proceedings has little relevance to this matter.

Third, Plaintiffs allege that "the harm that impacts federal immigration removal proceedings" also occurs in New Jersey. *Id.*¶¶ 17c-17d. But Plaintiffs do not bring any claims related to their federal, civil, immigration proceedings.[2] Quite the opposite, Plaintiffs acknowledge that Moshannon has "equipment purchased for EOIR [the Executive Office for Immigration Review] proceedings" and further cite their ability to participate in those proceedings virtually from Moshannon. *Id.* ¶ 63, 17-c. Plaintiffs try to use that fact as justification for their argument that remote appearances should also be permitted for their state criminal proceedings. *Id.* ¶ 17-c. Even then, Plaintiffs' requested relief—the ability to participate virtually—must be implemented at Moshannon, located in Pennsylvania. Thus, although Plaintiffs articulated "some connection" between this case and New Jersey, as most Individual Plaintiffs lived in New Jersey prior to their arrests and are subject to New Jersey state criminal proceedings, this "faint" connection does not outweigh the strong connection Plaintiffs' claims, the parties, and the requested relief have to Pennsylvania. *See Care One*, 680 F.Supp.3d at 546 (explaining that the fact that plaintiffs seeking to enjoin administrative trial occurring in Connecticut were "the

---

[2] Indeed, Plaintiffs cannot properly do so in this Court, as the Immigration and Nationality Act divests district courts of jurisdiction to review claims related to removal proceedings. *See* 8 U.S.C. § 1252(b)(9); 8 U.S.C. § 1252(a)(5) (providing that "a petition for review filed with an appropriate court of appeals in accordance with [8 U.S.C. § 1252] shall be the sole and exclusive means for judicial review of an order of removal.").

subject of the New Jersey bankruptcy proceeding provide[d] some connection to New Jersey," but "only a faint one").

Fourth, although Plaintiffs limit their proposed class to Moshannon detainees with New Jersey state criminal proceedings, as noted *supra*, the *operative* facts alleged in the Complaint—challenging Plaintiffs' inability to participate in virtual state criminal proceedings from Moshannon—arose exclusively in Pennsylvania. *See, e.g.*, ECF No. 1 ¶ 13. Further, this purported unlawful policy has allegedly been "pressed forward" at Moshannon in Pennsylvania, which is overseen by a Pennsylvania-based ICE field office. *See id.* ("Moreover, applications to enjoin a proceeding as unlawful typically go forward in the District where the allegedly unlawful proceeding is itself taking place."). Additionally, the relief Plaintiffs seek is not limited just to individuals with pending New Jersey criminal proceedings. *See* ECF No. 1, at 82 (requesting an order that Moshannon "virtually produce via video conference individuals in its custody . . . for all stages of cases ICE defines as criminal matters.").

Thus, Plaintiffs, at least in part, conveniently engineered the nexus to New Jersey by making the proposed class definition New Jersey-specific, even though neither the challenged policy nor the requested relief is specific to New Jersey. Indeed, notwithstanding the tangential connection between the alleged unlawful policy and its possible impact on state criminal proceedings in New Jersey, Plaintiffs

have shown "little connection" with their preferred forum. *Care One*, 680 F.Supp.3d at 545.

Fifth and finally, the Court should not give weight to Plaintiffs' argument that venue should remain in New Jersey because the Organizational Plaintiff AFSC IRP is headquartered in Newark and has multiple offices in this District. *See* ECF No. 1 ¶ 17-a. Initially, for reasons that will be fully explained in Defendants' forthcoming motion to dismiss, AFSC IRP lacks standing. AFSC IRP's claimed injury boils down to frustration that the purported policy has required it to "divert resources, including front-line supervisory staff time, to train for, supervise, and undertake a range of activities that it would not otherwise undertake, and that are not a typical part of immigration representation." ECF No. 1 ¶ 139. But an organization does not have standing on the grounds that it must "divert[] its resources in response to a defendant's actions." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024) (further explaining that endorsing this resource-based "theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies."). Nor does AFSC IRP have standing based on the alleged policy's interference with its ability to "effectuate its mission." *Id.* at 394 (stating that, according to plaintiffs, "FDA has 'impaired' their 'ability to provide services and

achieve their organizational missions.' *That argument does not work to demonstrate standing*.") (citation omitted) (emphasis added).

Further, even assuming AFSC IRP has standing, its claim, like the claim of the Individual Plaintiffs and the putative class, arises from an alleged policy at Moshannon and its purported impact on noncitizens housed at that facility. Its alleged injury is tied to its representation of clients at that Pennsylvania-based facility, not the fact that it is headquartered in Newark.

The second factor—Defendants' venue preference—also favors transfer. As indicated above, in this case concerning an alleged unlawful policy implemented at Pennsylvania-based Moshannon by the Pennsylvania-based ICE Field Office, there are "natural and strong connections" between the claimed controversy and Pennsylvania. *Care One*, 680 F.Supp.3d at 546. The tenuous ties to New Jersey do not render this District the proper venue.

Similarly, as explained above, the third private factor is strongly supported by the facts that Plaintiffs' claim arose in Pennsylvania; involves Plaintiffs and Defendants located in Pennsylvania; challenges an alleged policy at a facility in Pennsylvania; involves alleged harm arising in Pennsylvania; and seeks relief in the form of increased virtual technology access at the facility in Pennsylvania. *See Karimi v. Deutsche Bank Aktiengesellschaft*, No. 20-8978, 2022 WL 1001566, at *5

13

(D.N.J. Mar. 31, 2022) ("The inquiry hinges on 'which forum contains the center of gravity of the dispute, its events, and transactions.'") (citation omitted).

The fourth, fifth, and sixth private interest factors "all relate to the convenience of the parties." *Care One*, 680 F.Supp.3d at 547. While these factors appear largely neutral, each favors transfer, as moving this case to the Western District of Pennsylvania would enhance convenience for the parties; indeed, although New Jersey and Pennsylvania are close in proximity, all but one of the Plaintiffs—the Organizational Plaintiff, AFSC IRP—and all putative class members are located within the Western District of Pennsylvania. *See* ECF No. 1 ¶¶ 23-24. Likewise, while any documents or witnesses relevant to this case could be made available in either District, the vast majority of pertinent papers would be physically located in Pennsylvania, as would most witnesses—including Defendants' witnesses and Individual Plaintiffs or putative class members called to testify. *Collins v. Mary Kay, Inc.*, No. 15-CV-7129, 2016 WL 3546581, at *3 (D.N.J. June 29, 2016) (holding that practical considerations favor transferee forum because all the defendant's witnesses were located in there). These factors therefore tip toward transfer.

On balance, the private interest factors weigh significantly in favor of transfer to Pennsylvania. Although this case has some loose connections to New Jersey,

weighing the private interest factors shows that the Western District of Pennsylvania is the correct, convenient, and just jurisdiction for this case.

## ii. Public Interest Factors

The public interest factors further bolster the propriety of and justice in transferring this case to Pennsylvania. Crucially, the fourth factor, which pertains to the local interest in deciding local controversies at home, overwhelmingly favors transfer to Pennsylvania, where Moshannon is located and where Plaintiffs' requested relief would be implemented. Surely, Pennsylvanians have an interest in the operations of private detention facilities located within their state, as well as local judicial intervention and any resultant relief impacting those facilities, particularly in putative and actual class actions. *See Silvis v. Ambit Energy, LP*, 90 F.Supp.3d 393, 399 (E.D. Pa. Mar. 13, 2015) ("[C]ourts have given preference to fora that have deeper ties to the allegations"). Indeed, "local judges and juries are preferred arbiters of events in their jurisdiction and community." *LG Electronics v. First Intern Computer, Inc.*, 138 F.Supp.2d 574, 592 (D.N.J. Apr. 11, 2001). This localized controversy arising from an alleged policy implemented in Pennsylvania should be resolved in Pennsylvania because Pennsylvania "has a greater interest in adjudicating this dispute." *Janosko v. United of Omaha Life Ins. Co.*, No. 16-CV-1137, 2016 WL 4009818, at *4 (D.N.J. July 25, 2016); *see also Gray v. Apple Inc., et al.*, No. 13-CV-7798, 2016 WL 4149977, at *6 (D.N.J. Aug. 3, 2016) (transferring

case to California because, *inter alia*, "California ha[d] a substantial interest in adjudicating this local event, involving a business and the conduct of a police department."); *Wm. H. McGee & Co. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 287 (D.N.J. 1997) (finding that Louisiana, "where at least some of the alleged acts occurred," had a "strong public interest in adjudicating this dispute"; that it did "not appear that any conduct significant to the litigation occurred in New Jersey," and that "jurors should not be burdened with adjudicating a matter concerning conduct which occurred outside the state of New Jersey") (citations omitted).

Moreover, the extensive and continuous relief that Plaintiffs have requested underscores Pennsylvanian's local interest in this case. The injunction that Plaintiffs seek would apply not only to Defendants, but also "their subordinates, agents, employees, contractees, and all others acting in concert with them." ECF No. 1 ¶ 5 (Prayer for Relief). It would likewise subject Defendants, their agents, contractees, *et al*., to court-ordered "monitoring requirements" for a "minimum of five years." *Id.* ¶ 5-e. Further, Plaintiffs ask that the Court order Defendants to expend significant resources including "purchas[ing] and maintain[ing] sufficient computer hardware and software equipment" as well as telephonic equipment, at Moshannon, and paying for said five-or-more years of monitoring. *Id.* ¶¶ 5-c, 5-d, 5-e. Undoubtedly, Pennsylvanians in the Western District have a strong interest in this dispute

involving an entity near their homes and at which the relief Plaintiffs seek would considerably impact operations.

Similarly, the second public interest factor, concerning "practical considerations that could make the trial easy, expeditious, or inexpensive," weighs in favor of transfer. *Jumara*, 55 F.3d at 879. This factor is principally focused on "judicial economy and the overarching interests of justice"—and "can be especially critical." *Care One*, 680 F.Supp.3d at 547-48 (collecting cases). Notably, federal courts in Pennsylvania—particularly within its Western District—are already generally familiar with Moshannon, which was formerly a federal prison called Moshannon Valley Correctional Center. *See Guzman v. Moshannon Valley Processing Center*, No. 24-1054, 2024 WL 1251170, at *1 (D.N.J Mar. 22, 2024) (noting that Moshannon Valley Processing Center was formerly the "Moshannon Valley Correctional Center") (citation omitted); *see also Jerez v. Warden of Moshannon Valley Processing Center*, No. 23-136, 2023 WL 8771700 (W.D. Pa. Nov. 1, 2023) (challenging detention at Moshannon); *Nweme v. Oddo*, No. 3:23-cv-247, 2023 WL 6795280 (W.D. Pa. Oct. 13, 2023) (same). Importantly, many courts in the Western District of Pennsylvania have already considered cases regarding constitutional claims concerning conditions of confinement at Moshannon—or, more specifically, allegations about the action or inaction of the defendants in those cases. *See, e.g.*, *Bearam v. Wigen*, No. 3:CV-12-2289, 2013 WL 1750964, at *1

(M.D. Pa. Mar. 20, 2013) (recommending transfer to Western District of Pennsylvania in case raising Constitutional claims based on conditions of confinement related to medical care), *report and recommendation adopted*, No. 3:CV-12-2289, 2013 WL 1750999, at *1 (M.D. Pa. Apr. 23, 2013); *Barron v. United States*, No. CIV. 1:CV-09-0816, 2009 WL 1675738, at *1 (M.D. Pa. June 15, 2009) (adopting magistrate judge's R&R to transfer civil rights action concerning confinement conditions at the Moshannon Valley Correctional Institution to the Western District of Pennsylvania); *see also Espinoza v. Lindsay*, 500 Fed.Appx. 123, 124-25 (3d Cir. Oct. 4, 2012) (unpublished) (affirming decision by district judge in Western District of Pennsylvania dismissing case alleging Constitutional violation arising from denial of request to participate in drug treatment program at Moshannon Valley Correctional Center). Further, as noted above, Plaintiffs seek five years of court-ordered monitoring; as a practical matter, a local district court would be best positioned to order and oversee any post-judgment monitoring. Relatedly, as discussed next, courts in the Western District of Pennsylvania are less congested than those in the District of New Jersey.

Indeed, the third factor relates to "the relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Based on publicly available data published by the federal judiciary, there is greater congestion in the District of New Jersey—which has 8,331 pending cases and a ten-month median

completion time—than in the Western District of Pennsylvania—which has only 1,987 pending cases and a median completion time of less than seven months.[3] Thus, the Western District of Pennsylvania seems more likely to have the ability to expeditiously resolve this case, as both parties desire, and with less displacement of other pending cases on the existing docket.

Finally, the first public interest factor favors transfer, while the fifth and sixth factors are irrelevant. The first factor, *i.e.*, whether any judgment the Court may enter is more readily enforceable in Pennsylvania rather than New Jersey, bends towards transfer; although Defendants would comply with a court order from either District, the above-detailed extensive and enduring injunctive relief that Plaintiffs seek would be more readily enforceable in Pennsylvania—where Moshannon is located. The fifth and sixth factors, *i.e.*, whether the public policies of the relevant fora and the familiarity of the trial judge with the applicable state law in diversity cases, are not relevant here.

Thus, overall, the private and public interest factors overwhelmingly weigh in favor of transfer to Pennsylvania. Simply put, nearly all parties are located in Pennsylvania, the operative facts underlying the claims against Defendants' alleged policy occurred in the Western District of Pennsylvania, and Plaintiffs' requested

---

[3] *See* Table C-5—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2023) https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2023/03/31 (last accessed Sept. 24, 2024).

relief would be implemented in the Western District of Pennsylvania. The tenuous link between this case and New Jersey does not justify keeping this action in this Court rather than the Western District of Pennsylvania, where it belongs.

## II. The Court Should Stay All Deadlines Pending Its Ruling on Defendants' Motion to Transfer.

### A. Legal standard for motion to stay.

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)); *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). When evaluating a motion to stay, courts generally weigh several factors, including whether:

1) a stay would unduly prejudice or present a clear tactical disadvantage to the nonmovant;

2) denial of the stay would create a clear case of hardship or inequity for the movant;

3) a stay would simplify the issues and the trial of the case; and

4) discovery is complete and/or a trial date has been set.

*Actelion Pharmaceuticals Ltd. v. Apotex Inc.*, No. 12-5743, 2013 WL 5524078, at *3 (D.N.J. Sept. 6, 2013) (citations omitted); *see also Gentry v. Chubb*, No. 21-13744, 2021 WL 11959607, at *1 (D.N.J. Dec. 22, 2021).

**B. A stay is appropriate given the early stage of the instant litigation.**

Defendants respectfully request that the Court stay all deadlines pending its ruling on the foregoing motion to transfer. This "case remains in its initial stages," as Plaintiffs filed their Complaint on September 11, 2024, the Court has not ruled on any dispositive motions, and no trial date has been set. *Actelion*, 2013 WL 5524078, at *6; *see also Allied Old English, Inc. v. Uwajimaya, Inc.*, No. 11-CV-1239, 2012 WL 3564172, at *7 (D.N.J. Aug. 16, 2012). Defendants have filed the instant motion shortly after Plaintiffs filed their Complaint, and "[s]uch temporal proximity supports the issuance of a stay because no party has engaged in significant production or protracted motion practice." *Actelion*, 2013 WL 5524078, at *6. Additionally, to the extent that this Court agrees that the Western District of Pennsylvania is the appropriate venue to hear this matter, it would promote efficiency and justice to allow the district court in that venue to hear and decide any motions. This is particularly true where the current pending motion—to certify a class—will have a large impact on how this case proceeds. Further, a stay would not unduly prejudice, present a clear tactical disadvantage, or create a clear case of hardship or inequity to Plaintiffs. To be sure, any delay caused by a stay would resultantly be counterbalanced by the relative simplification of litigating this case by transferring it to the Western District of Pennsylvania. *See id.* at 5.

Therefore, Defendants ask that the Court stay all deadlines pending its decision on Defendants' motion to transfer.

## CONCLUSION

Defendants respectfully request that the Court stay all deadlines while it considers the motion to transfer this action to the Western District of Pennsylvania. Defendants further request that the Court grant the motion to transfer in the interest of justice, convenience, and other the relevant factors discussed herein.

Dated: October 11, 2024                    Respectfully submitted,

BRIAN M. BOYNTON                          */s/ Daniel Schutrum-Boward*
Principal Deputy Assistant Attorney       Trial Attorney
General                                   (MD Bar No. 1812120107)
WILLIAM C. PEACHEY                         Department of Justice, Civil Divisio
Director, District Court Section          Office of Immigration Litigation,
Office of Immigration Litigation          District Court Section
LAUREN E. FASCETT                         P.O. Box 868, Ben Franklin Station
Senior Litigation Counsel                 Washington, D.C. 20044
JORDAN HUMMEL                             Tel 202-919-1670
KEVIN HIRST                               Fax: (202) 305-7000
HANA SHATILA                              Daniel.R.Schutrum-Boward@usdoj
Trial Attorneys

                                          *Counsel for Defendants*