# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEFINA DOE; ISABELA DOE; COMMOR JEROME WELCH; FELIPE NIOMAR MARTINEZ ORTIZ; and JOSE DOE, on behalf of themselves and all others similarly situated, and THE AMERICAN FRIENDS SERVICE COMMITTEE, IMMIGRANT RIGHTS PROJECT, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security, in his official capacity; PATRICK J. LECHLEITNER, Acting Director of ICE, in his official capacity; DANIEL A. BIBLE, Executive Associate Director of ICE's Enforcement and Removal Operations, in his official capacity; CAMMILLA WAMSLEY, Field Office Director for the ICE Philadelphia Field Office, in her official capacity; FRANCIS KEMP, Assistant Field Office Director for the ICE Philadelphia Field Office, in his official capacity, <br><br> Defendants. | Civil Action No. 3:24-cv-00259-SLH-PLD <br><br> Hon. Stephanie L. Haines, United States District Judge |

---

## REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

---

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................2

    I.     THIS COURT HAS SUBJECT MATTER JURISDICTION..................................2

         A.    The Individual Plaintiffs Have Standing to Pursue Their Claims. ..........................................................................................2

         B.    AFSC IRP Has Direct Organizational Standing and Third-Party Standing. ........................................................................5

         C.    There Are No Statutes That Strip This Court of Jurisdiction. ...................7

    II.    PLAINTIFFS MEET THE CRITERIA FOR EMERGENT RELIEF AND AN INJUNCTION SHOULD ISSUE. ..............................................9

         A.    Plaintiffs Have Established a Likelihood of Success on Their Claims. ........................................................................................11

              i.    Plaintiffs are likely to succeed on their constitutional law claims. ..........................................................................11

              ii.    Plaintiffs are likely to prevail on their APA claims. .....................13

         B.    Plaintiffs Will Suffer Irreparable Harms Without an Injunction. .................................................................................15

         C.    A Balance of the Equities and Public Interest Favor Granting Emergent Relief. ..................................................................18

         D.    Defendants Are Responsible For Remedying the Harms They Have Caused. .............................................................................19

CONCLUSION.....................................................................................................20

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*ACLU v. Ashcroft*,
   322 F.3d 240 (3d Cir. 2003) ................................................................................18

*Adams v. Freedom Forge Corp.*,
   204 F.3d 475 (3d Cir. 2000) ................................................................................10

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
   42 F.3d 1421 (3d Cir. 1994) ................................................................................18

*Aracely R. v. Nielsen*,
   319 F. Supp. 3d 110 (D.D.C. 2018) ....................................................................14

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................................13

*Bounds v. Smith*,
   430 U.S. 817 (1977) ......................................................................................11, 19

*Boynes v. Limetree Bay Ventures LLC*,
   110 F.4th 604 (3d Cir. 2024) .................................................................................9

*Bradley v. Pittsburgh Bd. of Educ.*,
   910 F.2d 1172 (3d Cir. 1990) ..............................................................................11

*Brown v. Grabowski*,
   922 F.2d 1097 (3d Cir. 1990) .........................................................................11, 12

*C.G. ex rel. P.G. v. Saucon Valley Sch. Dist.*,
   571 F. Supp. 3d 430 (E.D. Pa. 2021) ..................................................................10

*Chehazeh v. Att'y Gen. of U.S.*,
   666 F.3d 118 (3d Cir. 2012) ..................................................................................8

*Doe 1 v. Perkiomen Valley Sch. Dist.*,
   585 F. Supp. 3d 668 (E.D. Pa. 2022) ...............................................................9, 10

*E. Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021) .................................................................................5

*E.O.H.C. v. Sec'y U.S. DHS*,
   950 F.3d 177 (3d Cir. 2020) ..................................................................................9

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016) .................................................................................................15

*FDA v. Alliance for Hippocratic Med.*,
    602 U.S. 367 (2024) ...............................................................................................5, 6

*Finkelman v. NFL*,
    810 F.3d 187 (3d Cir. 2016) ......................................................................................4

*Galarza v. Szalczyk*,
    745 F.3d 634, 644 (3d Cir. 2014) ......................................................................19, 20

*Garcia v. Att'y Gen. U.S.*,
    553 F.3d 724 (3d Cir. 2009) ......................................................................................8

*German Santos v. Warden Pike Cnty. Corr. Facility*,
    965 F.3d 203 (3d Cir. 2020) ....................................................................................17

*Gordon v. Lappin*,
    224 F. App'x 192 (3d Cir. 2007) ...............................................................................2

*Grand Canyon Tr. v. Pub. Serv. Co. of N.M.*,
    283 F. Supp. 2d 1249 (D.N.M. 2003) ................................................................13, 14

*Greenfield v. Corzine*,
    No. 09-4983 (DMC), 2010 WL 1838397 (D.N.J. May 6, 2010) ...............................2

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ...............................................................................................5, 6

*Issa v. Sch. Dist. of Lancaster*,
    847 F.3d 121 (3d Cir. 2017) ......................................................................................9

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) .............................................................................................7, 8

*Jones v. Blanas*,
    393 F.3d 918 (9th Cir. 2004) ...................................................................................12

*King v. Governor of N.J.*,
    767 F.3d 216 (3d Cir. 2014) ......................................................................................7

*Leslie v. Att'y Gen. of the U.S.*,
    678 F.3d 265 (3d Cir. 2012) ....................................................................................17

*Lewis v. Casey*,
    518 U.S. 343 (1996) .............................................................................................2, 12

*Logic Tech. Dev. LLC v. FDA*,
    84 F.4th 537 (3d Cir. 2023) ...................................................................15

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...........................................................................2, 3

*N.L.R.B. v. 710 Long Ridge Rd. Operating Co. II, LLC*
    2014 WL 1155539 (D.N.J. Mar. 21, 2014)........................................11

*New York v. United States*,
    505 U.S. 144 (1992)............................................................................20

*P.L. v. ICE*,
    No. 1:19-CV-01336 (ALC), 2019 WL 2568648 (S.D.N.Y. June 21, 2019)............................9

*Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*,
    280 F.3d 278 (3d Cir. 2002)..................................................................7

*Pa. State Conf. of NAACP v. Schmidt*,
    703 F. Supp. 3d 632 (W.D. Pa. 2023)....................................................5

*Pitt News v. Fisher*,
    215 F.3d 354 (3d Cir. 2000).................................................................6

*Printz v. United States*,
    521 U.S. 898 (1997)............................................................................20

*Ragbir v. United States*,
    17-CV-1256-KM, 2018 WL 1446407 (D.N.J. Mar. 23, 2018)................................8

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)..........................................................................7, 8

*Saadulloev v. Garland*,
    No. 3:23-CV-00106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024) ........................8

*Shapovalov v. ICE*,
    No. 1:21-cv-0900, 2021 WL 3128747 (M.D. Pa. July 23, 2021) ...........................17

*Singleton v. Wulff*,
    428 U.S. 106 (1976)..............................................................................7

*Tazu v. Att'y Gen. U.S.*,
    975 F.3d 292 (3d Cir. 2020)...................................................................8

*United States v. Cronic*,
    466 U.S. 648 (1984)............................................................................13

*Zilich v. Lucht,*
 981 F.2d 694 (3d Cir. 1992)....................................................................2

**Statutes**

5 U.S.C. § 704 ...........................................................................................13

8 U.S.C. § 1226 ..........................................................................................17

8 U.S.C. § 1231 ..........................................................................................17

8 U.S.C. § 1252 ....................................................................................7, 8, 9

## **INTRODUCTION**

Plaintiffs seek a preliminary injunction ("PI") because Defendants deny the fundamental constitutional right of court access in criminal proceedings to the noncitizens they detain at Moshannon.[1] The only way for members of the Putative Class to have meaningful access to state-court criminal proceedings is with a virtual access option. Defendants' current policy and practice—permitting access only via in-person writs of production (the "Refusal Policy and Practice")—is not meaningful and, per Defendants' own submissions, works less than 1% of the time. Defendants further fail to explain why refusal of virtual access is anything other than arbitrary and capricious under the Administrative Procedure Act ("APA").

In support of their motion, Plaintiffs submitted a comprehensive record in the form of nineteen declarations from Individual Plaintiffs, impacted persons, legal service providers, and two experts. That factual record establishes the key facts underpinning this application: (1) Defendants enforce the Refusal Policy and Practice to deny Plaintiffs and the Putative Class the ability to virtually appear for their criminal proceedings in New Jersey; (2) this denial imposes a multitude of harms on the Putative Class; and (3) Defendants allow virtual access for other types of proceedings (*e.g.*, immigration and family court matters) but, inexplicably, refuse to allow the same access for criminal matters. Defendants' brief references supposed "resource constraints" in supplying such access, but both declarations they submitted are wholly silent on this point. Defendants had more than a month to prepare their opposition to this application, and that silence speaks volumes. Significantly, Defendants dispute none of Plaintiffs' facts in their opposition, and the undisputed factual record weighs significantly in Plaintiffs' favor.

---

[1] The abbreviations used in this brief are the same as those defined and utilized in Plaintiffs' opening brief, ECF No. 32.

## ARGUMENT

I.    THIS COURT HAS SUBJECT MATTER JURISDICTION.

### A.  The Individual Plaintiffs Have Standing to Pursue Their Claims.

The Individual Plaintiffs have Article III standing to assert their claims. They have all suffered an "injury in fact" sufficient to confer standing because they have each suffered an injury that is "concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical," and they have established that there is a "causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

For a plaintiff bringing a court access claim, "meaningful access to the courts is the touchstone" because the right requires government officials to provide people detained with the ability to preserve their constitutional rights, *Lewis v. Casey*, 518 U.S. 343, 351 (1996), and to "participat[e] in one's own defense against pending criminal charges." *Greenfield v. Corzine*, No. 09-4983 (DMC), 2010 WL 1838397, at *8 (D.N.J. May 6, 2010). To sufficiently assert an injury, the individual "must go one step further" and show that the challenged conditions "hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. The Individual Plaintiffs meet this requirement as they have all experienced an injury that the Third Circuit has found sufficient: an inability to attend a criminal court proceeding. *Gordon v. Lappin*, 224 F. App'x 192, 193 (3d Cir. 2007) (summary order) (finding plaintiff's allegation that he was "denied access to the courts when he missed a court date relating to his direct criminal appeal" sufficient); *see also Zilich v. Lucht*, 981 F.2d 694, 695–96 (3d Cir. 1992) (plaintiff stated court access claim by alleging deprivation of legal materials hindered defense in pending court proceedings); (*see, e.g.*, Commor Decl., ECF No. 31-3, ¶ 9; Felipe Decl., ECF No. 31-4, ¶ 11; Jose Decl., ECF No. 31-2, ¶¶ 6–7; Isabela Decl., ECF No. 31-1, ¶¶ 11, 13, 16–17; Josefina Decl., ECF No. 31, ¶ 30).

Moreover, if an inability to attend criminal court proceedings constitutes sufficient injury, certainly adverse consequences flowing from the inability to attend do so as well. Multiple bench warrants were issued against Jose (Jose Decl. ¶ 8, Ex. A) and Isabela (Defs.' Br., Ex. 7, ECF No. 60-7), and Commor still has a bench warrant for a missed court date issued during his detention at Moshannon (*id.* Ex. 10, ECF No. 60-10, at 2–5). Further, Felipe, Josefina, and Commor could not request appointment of public defense counsel because they could not access the courts. (Josefina Decl. ¶ 31; Felipe Decl. ¶¶ 13–15; Commor Decl. ¶¶ 13–15). Finally, Defendants' policy and practice impacted all of the Individual Plaintiffs' ability to seek timely release. (*Compare* Sweeney Decl., ECF No. 31-15, ¶¶ 16, 21 (identifying open criminal charges as negative factor considered by ICE agents and immigration judges in release or bond requests), *with* Josefina Decl. ¶ 32; Jose Decl. ¶¶ 9, 11; Commor Decl. ¶ 19; Felipe Decl. ¶¶ 16, 19; Isabela Decl. ¶ 22).[2]

Additionally, the Individual Plaintiffs establish a "causal connection" between their injuries and Defendants' conduct because the injuries are "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. It is Defendants who choose to apprehend people with unresolved charges, detain them hundreds of miles away, and then deny the easiest and most effective means of state court access. Defendants alone are responsible for Plaintiffs' injury.

---

[2] To the extent Defendants argue that "any allegation that Plaintiffs will be released upon resolution of their criminal cases is speculative" (Defs.' Br., ECF No. 60, at 38), the documents they submitted are contradictory. While Defendants highlight Felipe as proof that individuals can be released prior to resolution of criminal charges, both he (*id.* Ex. 15, ECF No. 60-15) and Commor (*id.* Ex. 12, ECF No. 60-12, at 2–4) were only released after there was a final disposition in their immigration cases. By contrast, Josefina and Isabela, who are still in removal proceedings, were released shortly after they were allowed to appear virtually and the criminal matters resolved. (*Id.* at 7; *id.* Ex. 6, ECF No. 60-6). Jose, who is in active removal proceedings with unresolved charges, remains in detention. (*Id.* at 10; *id.* Ex. 19, ECF No. 60-19, at 2).

Contrary to Defendants' arguments, moreover, the theoretical possibility of an in-person appearance does not excuse the injury arising from the lack of meaningful opportunities to appear in state-court criminal proceedings. This so-called possibility: (1) requires individuals to have legal representation (Defs.' Br., ECF No. 60, at 5 (noting that "[counsel] may obtain a writ from an appropriate state or local judge ordering the [noncitizen's] appearance")); (2) expects local entities to expend significant resources to effectuate those writs (*id.* ("[T]he requesting [law enforcement agency] must arrange for . . . transportation.")); and (3) at times requires the State to take custody of individuals contrary to New Jersey law (Wisotsky Decl., Ex. Z, ECF No. 31-18), or hold them on behalf of Defendants. By Defendants' own admission, they honored only *eight* writs for in-person production to New Jersey courts in 2023 and 2024 thus far (Defs.' Br., Ex. 4, ECF No. 60-4, at 3), providing state court access to less than 1% of the Putative Class.[3] Additionally, none of the writs cited were issued by Municipal Courts rather than Superior Courts. *Id.* Defendants cannot escape liability by pointing to a purported remedy that cannot, and clearly does not, work.

At the very minimum, there is no argument that Defendants' conduct does not at least *contribute* to the harm experienced by Plaintiffs and the Putative Class. An "indirect causal relationship will suffice" to satisfy the causation element of Article III standing, provided that "there is a 'fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant.'" *Finkelman v. NFL*, 810 F.3d 187, 193–94 (3d Cir. 2016). Putative Class members are injured because of Defendants' choices. Therefore, even if this Court considers the State only partially responsible for the injuries complained of, as Defendants have conceded, "there

---

[3] In the same time period, Defendants apprehended and detained at Moshannon 1,270 Putative Class members, inclusive of people with a pending criminal charge in New Jersey and people with a prior criminal conviction following apprehension at a jail in New Jersey. (*See* Peacock Supp. Decl., ECF No. 31-14, ¶¶ 19–22; *id.* Exs. D–E).

is room for concurrent causation in the analysis of standing." (Defs.' Br. at 17 (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014))).

For all these reasons, the Individual Plaintiffs have standing because they have suffered injuries in fact directly attributable to the conduct of Defendants.

### B.  AFSC IRP Has Direct Organizational Standing and Third-Party Standing.

Defendants' standing challenge to AFSC IRP relies on a misapprehension of the law and record evidence.[4] To begin, courts have long held that a "diver[sion of] resources to counteract the allegedly unlawful conduct" impacting an entity's core mission constitutes a sufficient injury for organizational standing. *Pa. State Conf. of NAACP v. Schmidt*, 703 F. Supp. 3d 632, 648–49 (W.D. Pa. 2023) (holding election board's decision injured plaintiff by forcing it "to divert resources away from its mission" of voter mobilization and "toward [voter] re-education"); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) (concluding injury requirement satisfied where immigration organizations had to divert "already limited resources" to help asylum seekers in light of challenged rule). Indeed, in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), the Supreme Court held that a housing counseling service suffered an injury-in-fact when it had to divert resources from counseling clients to combat the defendants' "racial steering" practices affecting those clients. Defendants' reliance on *FDA v. Alliance for Hippocratic Medicine* (*"AHM"*) to argue to the contrary entirely ignores that *AHM* explicitly left undisturbed the holding in *Havens*. 602 U.S. 367, 394–95 (2024); (Defs.' Br. at 18–19). In *AHM*, the Supreme Court distinguished between expending resources to support an organization's core purpose of *advocacy* on issues and "impair[ment]" of an organization's core business of providing *services*, with the latter constituting an injury, as in *Havens*. *Id.* at 394–95.

---

[4] Defendants do not dispute redressability. (*See* Defs.' Br. at 18–20).

AFSC IRP is a recipient of a State grant under the Detention and Deportation Defense Initiative, and receives money explicitly to provide legal *services* to noncitizen New Jersey residents who are the subject of immigration detention and removal proceedings. (Compl., ECF No. 1, ¶¶ 23–26). Defendants' Refusal Policy and Practice has forced AFSC IRP to reallocate its limited state-funded resources beyond the scope of its core services (providing immigration representation), to instead attend criminal court hearings and help to procure public defense counsel—thereby limiting the intake of new clients that the grant intends it to serve. (*See* Meixler Decl., ECF No. 31-12, ¶¶ 9–11, 19, 23; Abraham Decl., ECF No. 31-13, ¶¶ 7, 14–16; Herr Decl., ECF No. 31-11, ¶ 15). Under both *Havens* and *AHM*, such a diversion of resources from AFSC IRP's core purpose of providing services constitutes an injury.

Defendants' further reliance on *AHM* to contend a lack of causation similarly falls flat. (Defs.' Br. at 19). In *AHM*, the individual doctors' alleged injury—diversion of resources to treat patients with complications from using the drug at issue—was speculative because they failed to provide any evidence "tending to suggest" an increase in patients or an impact on care for other patients. 602 U.S. at 390–91. Conversely here, Defendants themselves acknowledge that their policy requires AFSC IRP to spend more time representing clients subjected to the Refusal Policy and Practice. (*See* Defs.' Br. at 19 & n.13). As a result, Defendants' policy has directly caused AFSC IRP to reallocate resources away from providing legal services to other clients. (*See* Meixler Decl. ¶¶ 9–11, 19, 23; Abraham Decl. ¶¶ 7, 14–16; Herr Decl. ¶ 15).

Having established an injury, AFSC IRP also satisfies the closeness and obstacle requirements for third-party standing to bring this suit. *See Pitt News v. Fisher*, 215 F.3d 354, 362 (3d Cir. 2000) (using identical injury analyses for organizational and third-party standing). As to closeness, Defendants do not contest, nor can they, that an attorney-client relationship is

sufficiently close for third-party standing; rather, Defendants merely contend that AFSC IRP does not have that relationship. (Defs.' Br. at 21). "Closeness," however, only requires a relationship between the organization and the advocated-for third-party—not between the organization and another party to the suit. *See Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288 n.10 (3d Cir. 2002) (recognizing attorneys suing on behalf of clients as an archetype of third-party standing). In any event, AFSC IRP represents Individual Plaintiff Isabela (*see* Abraham Decl. ¶ 23), as well as many Putative Class members (*see id.* ¶¶ 2–3; Meixler Decl. ¶¶ 2–3; Herr Decl. ¶¶ 4–5). As to the obstacle requirement, contrary to Defendants' contention, "[t]he fact that a few [individuals] have been able to overcome certain obstacles does not necessarily preclude a determination that these obstacles are a 'hindrance' sufficient to justify third-party standing." *King v. Governor of N.J.*, 767 F.3d 216, 244 n.28 (3d Cir. 2014). Here, "imminent mootness" poses an obstacle because AFSC IRP's clients can be transferred to another facility or ordered removed. *Cf. Singleton v. Wulff*, 428 U.S. 106, 117 (1976) (concluding that imminent mootness of pregnant women's abortion rights claims satisfied obstacle requirement). Moreover, AFSC IRP's clients suffer "a considerable deterrent to litigation" and impracticability given the fear of retaliation and the inability to access courts. *Pa. Psychiatric Soc'y*, 280 F.3d at 290.

### C.  There Are No Statutes That Strip This Court of Jurisdiction.

Contrary to Defendants' contentions, 8 U.S.C. §§ 1252(g) and 1252(b)(9) do not strip this Court of jurisdiction. As to § 1252(g), the Supreme Court and the Third Circuit have squarely rejected Defendants' broad interpretation of the provision's scope. The Supreme Court has made clear that § 1252(g) "applies only to three discrete actions"—that is, the "'decision or action' to '[1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). It does not "sweep in any claim that can technically be said to 'arise from' the three listed actions." *Jennings v. Rodriguez*, 138 S. Ct.

830, 841 (2018); *accord Garcia v. Att'y Gen. U.S.*, 553 F.3d 724, 729 (3d Cir. 2009) (explaining § 1252(g) is "to be read narrowly and precisely"); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020). Indeed, § 1252(g) does not bar other actions even where they implicate the deportation process, *e.g.*, opening an investigation, rescheduling a deportation hearing, or reconsidering removal orders. *See Reno*, 525 U.S. at 482; *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 134 (3d Cir. 2012) (holding § 1252(g) did not strip court's jurisdiction to review habeas petition challenging BIA's decision to reopen proceedings); *Ragbir v. United States*, 17-CV-1256-KM, 2018 WL 1446407, *4–7 (D.N.J. Mar. 23, 2018) (holding § 1252(g) does not bar court from reviewing validity of criminal conviction that predicated removal order).

Here, Plaintiffs do not challenge any of the actions identified by *Reno*, but rather Defendants' Policy and Practice of preventing them from attending *criminal* proceedings virtually, in violation of their constitutional rights—a challenge that falls squarely beyond the discrete actions listed in § 1252(g). Defendants' reliance on *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024), is inapposite. There, the arguments pertained directly to the decision to commence proceedings: *i.e.*, the decision of where and when to arrest Mr. Saadulloev. *Id.* at *3–4.

Section 1252(b)(9) similarly does not strip this Court of subject matter jurisdiction, which Defendants raise only as to Count Two, the due process challenge brought on behalf of AFSC IRP. (Defs.' Br. at 23). Count Two, which stems from Defendants' act of precluding Plaintiffs from attending state criminal proceedings virtually, does not "arise from" the actual process of removal. 8 U.S.C. § 1252(b)(9). The Supreme Court has rejected an expansive and "uncritical literalism" interpretation of "arising from." *Jennings*, 138 S. Ct. at 840. This narrow reading comports with the "strong presumption in favor of judicial review of administrative action" and "the general rule

that 'the narrower construction of a jurisdiction-stripping provision is favored.'" *E.O.H.C. v. Sec'y U.S. DHS*, 950 F.3d 177, 184 (3d Cir. 2020). In *E.O.H.C.*, upon which Defendants rely (Defs.' Br. at 23), asylum seekers argued, *inter alia*, that their temporary removal to Mexico pending completion of removal proceedings violated their Fifth Amendment due process right to counsel in immigration proceedings. 950 F.3d at 181, 187. The Third Circuit concluded that § 1252(b)(9) did not bar these claims, even though they implicated removal proceedings, because they did not challenge efforts to remove and "the constitutional harm from those matters could not be remedied after a final order of removal." *Id.* at 187. Similarly, Count Two's Fifth Amendment Due Process claim does not challenge Defendants' efforts to remove people, and the harm is unlikely to be remedied after a final order of removal is enforced.[5]

## II.    PLAINTIFFS MEET THE CRITERIA FOR EMERGENT RELIEF AND AN INJUNCTION SHOULD ISSUE.

Emergent relief can and should be awarded to the Putative Class. This Court has authority to enter a PI for the benefit of a putative class. In fact, contrary to Defendants' assertions, the Third Circuit has "never held that a court must certify a class before granting a [PI]," *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 611 (3d Cir. 2024), and, accordingly, courts regularly grant injunctive relief to putative classes, *see, e.g.*, *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 129–30 (3d Cir. 2017) (affirming PI for putative class and urging defendants to "fairly apply its preliminary-injunction order to school-age refugees similarly situated to the plaintiffs" (internal quotations omitted)); *Doe 1 v. Perkiomen Valley Sch. Dist.*, 585 F. Supp. 3d 668, 673 n.1 (E.D.

---

[5] Defendants' reliance on *P.L. v. ICE*, No. 1:19-CV-01336 (ALC), 2019 WL 2568648, at *3 (S.D.N.Y. June 21, 2019), is misplaced. (Defs.' Br. at 24). There, the Court found that § 1252(b)(9) barred jurisdiction because plaintiffs challenged the manner of production for *removal* proceedings. *2*019 WL 2568648, at *3. Here, Plaintiffs challenge the lack of production to *criminal court* proceedings, a separate process.

Pa. 2022) (granting PI enjoining termination of a policy for the benefit of a putative class, notwithstanding that class "certification [is] not at issue in this stage").

Indeed, the Third Circuit has emphasized that the relevant inquiries for class certification and a PI are distinct. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 490–91 (3d Cir. 2000). While "a class action determination focuses on similarities between the legal claims of the parties," a showing of irreparable harm to support a PI instead depends on "the particular resources available to each member of the class to weather hardships pending a trial." *Id.* In practice, therefore, injunctive relief on behalf of a putative class is appropriate where the named plaintiffs provide testimony or other evidence that "lay[s] an adequate foundation from which one could draw inferences that the testifying plaintiffs are similarly situated—in terms of irreparable harm—to all the other plaintiffs." *Id.* at 487, 490. Plaintiffs surpass this requirement. Their declarations establish irreparable harm across the Putative Class because Defendants' Refusal Policy and Practice applies with equal force to all people detained at Moshannon from New Jersey, unconstitutionally obstructing their access to the courts and causing attendant harms.

Moreover, Defendants suggest that Plaintiffs face a heightened burden because they ask the Court to enter a mandatory injunction to stop Defendants from violating constitutional rights. (*See* Defs.' Br. at 12–13). Not so. The showing required for either a status quo or mandatory injunction varies in direct relation to harm that the injunction will avoid; "[f]or both types of injunctions, 'the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while supporting some preliminary relief.'" *C.G. ex rel. P.G. v. Saucon Valley Sch. Dist.*, 571 F. Supp. 3d 430, 439 (E.D. Pa. 2021). Plaintiffs need only demonstrate a likelihood of success sufficient to balance the severity of harm that the requested preliminary injunction would prevent. Here, the harm absent relief is severe. Putative class members cannot access criminal

court to challenge or resolve charges, they face the risks of bench warrants and defaults being entered against them, and they are subject to unnecessarily prolonged detention.

Regardless of which standard the Court applies, the extensive record submitted by Plaintiffs is more than sufficient to meet their burden. Defendants have not refuted Plaintiffs' claims; despite submitting two declarations from relatively high-ranking officials within ICE, they have not offered any explanation linking this policy with their claimed equitable concerns. There is, therefore, no evidence before the Court sufficient to deny the PI for reasons of burden or Defendants' lack of resources. *See Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990); *N.L.R.B. v. 710 Long Ridge Rd. Operating Co. II, LLC*, No. 14-1542 (CCC), 2014 WL 1155539, at *3 (D.N.J. Mar. 21, 2014) ("When faced with credible evidence contrasted only by unsupported argument, this Court has little choice but to favor the evidence presented.").

### A. Plaintiffs Have Established a Likelihood of Success on Their Claims.

#### i.    Plaintiffs are likely to succeed on their constitutional law claims.

Defendants infringe on Plaintiffs' fundamental right to court access. Contrary to Defendants' assertions, Plaintiffs do not demand a specific method of access, but seek meaningful access. *See Bounds v. Smith*, 430 U.S. 817, 824 (1977). As previously described, Plaintiffs have provided ample evidence of how access to court only by in-person writ is not feasible and therefore not meaningful, particularly because the policy works for less than 1% of the Putative Class.

In response to Plaintiffs' detailed description and ample record evidence of the infeasibility of requiring writs for in-person appearance (*see* Pls.' Br., ECF No. 32, at 3–18), Defendants provide evidence of a policy that allows for *prosecutors* to compel the production of people detained by Defendants (Defs.' Br. at 25 (relying on prosecutor toolkit describing prosecutors' ability to obtain writ)). However, in no way does providing *prosecutors* with discretion fulfill the constitutional right to court access, which flows directly to the *individual*. *See Brown v.*

-11-

*Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990) ("We note preliminarily that an individual's constitutional right of access to the courts is well settled."). Moreover, as evidenced by the record, leaving a criminal defendant's right to court access to the discretion of the prosecutor, does not ensure access. (*See, e.g.*, Abraham Decl. ¶ 19 ("I worked diligently . . . to negotiate with the Prosecutor on securing a writ for my client . . . . The Prosecutor was unwilling to cooperate.")).

Additionally, contrary to Defendants' arguments that Putative Class members' claims in criminal court have not been frustrated by an inability to appear, *every* time a person is unable to attend court in a criminal matter, they are being "[d]eprive[d] . . . of an arguable . . . claim[,] inflict[ing] actual injury." *Lewis*, 518 U.S. at 353 n.3. As previously described, missing a court date is sufficient to demonstrate injury, and can have significant consequences. (*E.g.*, Abraham Decl. ¶ 21 (asylum-seeker's pre-trial intervention program was terminated because Defendants failed to produce him for court)). To the extent that Defendants cite cases claiming that each plaintiff must cite to a claim they were unable to assert because of the denial to court access, they cite *only* to cases decided in the *civil* context (*see* Defs.' Br. at 26–27), and neither acknowledge nor contend with the total inability of criminal defendants to assert defenses if unable to attend court. *See Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining injury as an "inability to . . . defend against a charge"). Surely, the constitutional right to court access for criminal defendants does not hinge on a preliminary determination of the viability of their defenses.

The proceedings at issue in this case are criminal matters, and as such Sixth Amendment and corollary rights attach. Plaintiffs are likely to succeed in these claims because they seek to stop Defendants from interfering with their ability to realize these rights in criminal proceedings. When noncitizens are unable to appear in criminal proceedings, their cases are not simply stayed without repercussions, as Defendants suggest, but rather stalled in such a way that results in serious harms.

For instance, there is a right to counsel when the defendant "is . . . at a critical stage of his trial." *See United States v. Cronic*, 466 U.S. 648, 659 (1984). All class members are at a critical stage of their case when their ability to seek release from detention and relief from removal depends significantly on the resolution of such case. If class members are unable to appear, they face bench warrants and prolonged detention in addition to decreased likelihood that an immigration judge will grant discretionary relief such as asylum rather than issue a removal order. (*See* Meixler Decl. ¶ 16 (describing her client's "months of isolation while recovering from a traumatic brain injury" resulting from an assault at Moshannon, and "intermittent suicidality" due to the Refusal Policy and Practice); Abraham Decl. ¶ 20 (noting that her client was denied bond because of pending charges he could not contest despite many attempts to obtain a writ, and that the client was ultimately deported)). While Defendants assert that certain class members have been able to obtain public defenders, as they admit, it is usually only with the intervention of immigration counsel. (Defs.' Br. at 30). The right to counsel would be rendered hollow if one is required to first seek out other counsel in order to obtain defense counsel. (*See* Isaac Decl., ECF No. 31-9, ¶ 4 ("I had a public defender only because lawyers at the Legal Services of New Jersey ('LSNJ') helped me get assigned one."); A. Morales Decl., ECF No. 31-8, ¶ 10 ("Only through the help of an attorney was I recently able to get a public defender assigned to represent me.")).

### ii.    Plaintiffs are likely to prevail on their APA claims.

Contrary to Defendants' arguments, Plaintiffs sufficiently prove "final agency action" within the meaning of 5 U.S.C. § 704 because Defendants' Refusal Policy and Practice marks "the consummation of the agency's decision[-]making process" and is an "action . . . by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Federal courts across the country routinely look to an agency's conduct to infer the existence of a final policy. *See, e.g.*, *Grand Canyon Tr. v. Pub. Serv.*

*Co. of N.M.*, 283 F. Supp. 2d 1249, 1252 (D.N.M. 2003) (holding that an agency cannot be allowed "to shield its decisions from judicial review simply by refusing to put those decisions in writing"); *Aracely R. v. Nielsen*, 319 F. Supp. 3d 110, 138–39 (D.D.C. 2018) (finding DHS's unwritten policy reviewable, rejecting the argument that the "[p]laintiffs' failure to identify a 'regulation, letter, memorandum, or other form of written material that comprises [ICE's policy] . . . is fatal to [their] claims"). In this case, the Court need only look to Defendants' words. For over two years, Defendants have used the substantially same language to restate the Refusal Policy and Practice in written communications with Plaintiffs, members of the New Jersey Judiciary, other advocates, and impacted individuals. (*See* Wisotsky Decl. Exs. A–U, ECF Nos. 31-17 to 31-18).[6] Defendants' assertion that they allow virtual production on a "case by case basis" (Defs.' Br. at 32–36), is incorrect and belied by the record. Defendants *misquote* a defense attorney's statement before the Superior Court of New Jersey, Ocean County, where that attorney stated that Defendants were receptive, not to virtual production in criminal cases, but rather to requests by attorneys to "have a meeting set up" where "[the detained individual] calls" (Wisotsky Decl., Ex. Y, ECF No. 31-18, at 8–9). Defendants additionally cite two exhibits pertaining to Witness Marcelino Flores, who ICE allowed to appear once by telephone only in response to threatened litigation by LSNJ, and following protracted negotiations with the U.S. Attorney's Office (*Id*. Ex. CC, ECF No. 31-19 at 1–7; Marcelino Decl., ECF No. 31-5, ¶ 20). These examples do not demonstrate that ICE routinely considers requests for virtual production on a "case by case basis," and Plaintiffs' record establishes the exact opposite.

---

[6] The Court may also look to Defense Counsel's statement at oral argument when he acknowledged that "in a lot of cases, yes, [ICE is] denying virtual appearances for people for their state criminal proceedings." (Oct. 28, 2024 Oral Argument on Mot. to Transfer Venue Tr., ECF No. 44, at 13:21 (Civil Action No. 2:24-cv-09105 D.N.J.)).

Moreover, the Refusal Policy and Practice violates the APA's prohibition against agency action that is arbitrary, capricious, or an abuse of discretion because Defendants have not "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Logic Tech. Dev. LLC v. FDA*, 84 F.4th 537, 549 (3d Cir. 2023). While repeatedly invoking a lack of resources,[7] Defendants have not provided any evidence or explanation of this insufficiency to date, despite submitting testimony from ICE officials. (*See* Decl. of Assistant Field Office Dir. Francis Kemp, ECF No. 60-2; Decl. of Assistant Field Office Dir. Marlene Belluardo, ECF No. 60-20). To the extent Defendants provided an explanation as to why virtual production is available at one other facility, they fail to address how it is feasible at *multiple* other facilities but not at Moshannon. Finally, Defendants have neither provided any proof that they weighed the constitutional rights of the Putative Class and legal service providers like the Organizational Plaintiff when enacting this policy, nor have they explained why they did not consider these concerns when modifying multiple contracts with The GEO Group and adopting detention standards. In short, Defendants have failed to provide the "minimal level of analysis" necessary to survive arbitrary and capricious review. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

### B.  Plaintiffs Will Suffer Irreparable Harms Without an Injunction.

For all the reasons contained within Plaintiffs' opening brief (Pls.' Br., at 35–37), and herein, members of the Putative Class will suffer concrete irreparable harms should injunctive relief not issue. Those harms range from an inability to attend court proceedings; to due process

---

[7] (*See, e.g.*, Defs.' Br. at 32 (stating only that "the availability of virtual production consistently depends on factors such as the availability of resources"); *id.* at 33 ("When Defendants have not provided virtual production for state criminal proceedings, they have done so based on resource constraints."); *id.* at 36 (stating that "resources do not allow virtual production for each of the approximately 1,200 detainees for *all* appearances . . ." without further explanation); *id.* at 41 ("[R]esources are limited and not all preferences may be accommodated")).

and Sixth Amendment violations in criminal cases, including an inability to access public defense counsel or confront witnesses; and to needlessly prolonged detention by Defendants. Contrary to Defendants' assertions (Defs.' Br. at 38–40), these harms are not speculative, but, consistent with the nineteen declarations submitted in support of this motion, have been experienced by Individual Plaintiffs, members of the Putative Class, and clients of AFSC IRP. These are also harms that cannot be remedied at a later date. Indeed, no Plaintiff involved in this litigation is seeking damages. Plaintiffs are only seeking a change in policy and practice consistent with the Constitution—and this Court cannot, unfortunately, retroactively appoint a public defender (Josefina Decl. ¶ 31; Felipe Decl. ¶¶ 13–15; Commor Decl. ¶ 17), give an individual freedom back following detention (Josefina Decl. ¶ 32; Jose Decl. ¶¶ 9, 11; Commor Decl. ¶ 19; Felipe Decl. ¶¶ 16, 19; Isabela Decl. ¶ 22), remedy when a defendant has to make the terrible choice whether to permit the case against them to move forward in their absence and waive their constitutional rights (Andres Decl., ECF No. 31-7, ¶ 19; Commor Decl. ¶ 15; Marcelino Decl. ¶ 22); or insist on their presence to hear testimony or testify on their own behalf (G. Decl., ECF No. 31-10, ¶¶ 8, 10–11; Jose Decl. ¶ 11; Commor Decl. ¶ 23; Josefina Decl. ¶¶ 40–41), even if it means they will be detained longer or might not even have the opportunity to do so (Jose Decl. ¶ 6).

In arguing that Plaintiffs' cited harms are speculative and not irreparable (Defs.' Br. at 38–40), Defendants frequently misstate or mischaracterize Plaintiffs' assertions. To the extent that Defendants argue that Plaintiffs ignore the fact that Putative Class members are lawfully detained, it is not true. There is a difference, however, between the lawfulness of an individual's initial detention and actions taken by government authorities that impact that individual's ability to seek release. Moreover, contrary to Defendants' argument that "Congress has expressly prohibited release for [certain] individuals," (Defs.' Br. at 38), most class members are not subject to

mandatory detention under 8 U.S.C. § 1226(c), which requires an admission to, or a conviction for, certain inadmissible or removable offenses or terrorist activity. The daily census of class members with *only* unresolved cases (i.e., with no prior criminal convictions) exceeds 200. (*See* Peacock Supp. Decl., ECF No. 31-14, ¶ 19, Ex. D). Additionally, even class members with a final removal order are not necessarily subject to continued detention pursuant to 8 U.S.C. § 1231. If a class member has a pending petition for review and has been granted a stay of removal by the circuit court, then the member is detained pursuant to 8 U.S.C. § 1226. *Leslie v. Att'y Gen. of the U.S.*, 678 F.3d 265, 270 (3d Cir. 2012); *see also Shapovalov v. ICE*, No. 1:21-cv-0900, 2021 WL 3128747, at *2–3, *3 n.4 (M.D. Pa. July 23, 2021). Additionally, neither 8 U.S.C. § 1226(c) nor 8 U.S.C. § 1231 allows for *indefinite* detention. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020) (holding that when detention without a bond hearing under § 1226(c) becomes unreasonable, "the Due Process Clause demands a hearing"); 8 U.S.C. § 1231(a)(3), (6) (providing that after the 90-day post-removal order period expires, custody becomes discretionary). The ability to resolve criminal charges thus impacts the liberty interests of all Putative Class members.

Defendants' comments that Plaintiffs have not provided evidence that impacted individuals have been improperly deported completely ignores the primary harms of this case—the injuries incurred when people are denied access to criminal courts when facing charges. Additionally, to the extent Defendants state that "Plaintiffs explicitly disclaimed any cause of action based on their clients' rights in immigration proceedings," and yet Plaintiffs "allege that 'clients of AFSC [IRP] will suffer harm in their immigration proceedings,'" (Defs.' Br. at 39), Plaintiffs have limited the relevance of those harms to Count II, brought on behalf of AFSC IRP.

**C.  A Balance of the Equities and Public Interest Favor Granting Emergent Relief.**

When the moving party can show that the first two prongs of the preliminary injunction standard are met, "it almost always will be the case that the public interest will favor" the issuance of an injunction. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). Defendants improperly suggest that the relevant public interest at issue is the enforcement of United States immigration laws. (*See* Defs.' Br. at 41). But Plaintiffs' PI motion does not seek to obstruct the federal immigration process—it seeks to protect Plaintiffs' constitutional rights to defend themselves in criminal matters. As the Third Circuit has underscored, "the Government does not have an interest in the enforcement of an unconstitutional" policy or practice, and "the public interest [is] not served by [its] enforcement." *ACLU v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003).

While "economic factors may . . . be considered, for example, in choosing the methods used to provide meaningful access" to the courts. (Defs.' Br. at 42 (quoting *Bounds*, 430 U.S. at 824–25)), and Defendants' brief references supposed "resource constraints," they have failed to provide this Court with any evidence of any resource burden (much less an undue burden) involved in providing virtual access. (*Id.* at 2, 20). Moreover, on its face, Defendants' concern for their own "limited" resources is logically at odds with their argument that it is New Jersey's responsibility to expend state resources and use their policing force to transport people "across state lines" to ensure their constitutional rights after *Defendants* take them into *federal* custody.[8] Under its own standards and protocols, whenever an individual departs or reenters a facility, Defendants must spend staff time and resources on a litany of steps involving internal transportation, searches, and

---

[8] Under Defendants' logic, New Jersey must expend resources to retrieve people in federal custody whether Defendants hold them in facilities in Pennsylvania, Louisiana, Alaska, or Hawaii.

coordination with external parties. There is nothing before the Court to suggest that continuously producing detained individuals in-person is *less* burdensome on Defendants' resources than is Plaintiffs' requested relief of allowing for virtual appearances in state court criminal proceedings—a process that Defendants already effectuate for immigration and certain family court proceedings. The relief sought here is narrowly tailored to safeguard Plaintiffs' constitutional rights; Defendants are simply asked to apply the same technological capabilities they provide for other proceedings and in other facilities.

Finally, Defendants argue that facilitating Plaintiffs' remote production "will likely displace other detainees (including Putative Class members) from speaking to their immigration or defense counsel or an asylum officer." (Defs.' Br. at 41). But Defendants provide no evidentiary support for this zero-sum reasoning, including in the two declarations they have placed before the Court. The public interest is best served by enabling the Putative Class members to exercise their constitutional rights to access the courts and this prong accordingly weighs in Plaintiffs' favor.

### D. Defendants Are Responsible For Remedying the Harms They Have Caused.

Despite invoking the Supreme Court's holding in *Bounds* that economic factors may be considered "in choosing the methods used to provide meaningful [court] access," (Defs.' Br. at 42 (citing 430 U.S. at 825)), Defendants argue that, because New Jersey could potentially expend resources to remedy the constitutional violations that Defendants have created, they are therefore not required to take any action. Effectively, Defendants argue without any supporting authority that because *someone else* may be able to remedy *their* due process violations, they have no responsibility to do so themselves. And even though Defendants state that "the federal Defendants and New Jersey are separate sovereigns that cannot dictate how the other chooses to expend its resources" (*id.* at 23), their position impermissibly seeks to dictate the resources that a state entity must expend, contrary to the anti-commandeering principles in the Tenth Amendment. The Third

Circuit, in *Galarza v. Szalczyk*, specifically addressed circumstances in which immigration officials ordered state and local officials to assist them in detention by "foot[ing] the bill," and held that "the command to detain federal prisoners at state expense is exactly the type of command that has historically disrupted our system of federalism." 745 F.3d 634, 644 (3d Cir. 2014); *see also New York v. United States*, 505 U.S. 144, 168 (1992) (discussing accountability within the two systems); *Printz v. United States*, 521 U.S. 898, 935 (1997) ("The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal . . . program."). By maintaining that a State should foot the bill to enforce rights otherwise violated by federal entities, Defendants are impermissibly seeking to do exactly what the Constitution forbids.

## **CONCLUSION**

Plaintiffs, including members of the Putative Class, suffer daily violations of their constitutional rights with significant impact on their rights to appear and defend themselves in court, and on their liberty interests. Because of the emergent nature of this matter, including the irreparable harms to the Putative Class, Plaintiffs respectfully request that the Court issue emergent relief while this matter remains pending and require Defendants to ensure virtual access to state-court criminal proceedings for Putative Class members.

Dated:  November 26, 2024

**LEGAL SERVICES OF NEW JERSEY**

*s/ Shira Wisotsky*
Shira Wisotsky, Esq.
Raquiba Huq, Esq.*
Zoe Burke, Esq.*
Emily Thorton, Esq.*

**LOWENSTEIN SANDLER LLP**
Gavin J. Rooney, Esq.*

Alexander Shalom, Esq.*
Natalie J. Kraner, Esq.*
Naomi D. Barrowclough, Esq.*
Anish Patel, Esq.*
Ruth Zimmerman, Esq.*

**CRIMMIGRATION CLINIC
HARVARD IMMIGRATION &
REFUGEE CLINICAL PROGRAM**
Tiffany J. Lieu, Esq.*
Philip L. Torrey, Esq.*

*Pro Bono Counsel for Plaintiffs*

*\*application for admission forthcoming*

<u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that on the 26th day of November 2024, I electronically filed the foregoing Plaintiffs' Reply to the Motion for Temporary Restraints with the Clerk of Courts using the CM/ECF system which will send notification of such filing to all counsel of record. This document was filed electronically and is available for viewing and downloading from the ECF system.

        By:      <u>*s/ Shira Wisotsky*</u>
                Shira Wisotsky, Esq.
                Legal Services of New Jersey
                100 Metroplex Drive
                Suite 402
                P.O. Box 1357
                Edison, New Jersey 08817
                908-882-2665
                swisotsky@lsnj.org

                *Pro Bono Counsel for Plaintiffs*