IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEFINA DOE *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Civil Action No. 3:24-259 |
| | ) Judge Stephanie L. Haines |
| U.S. DEPARTMENT OF | ) |
| HOMELAND SECURITY, *et al.*, | ) |
| | ) |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiffs bring this civil rights action arguing that a policy and practice of Moshannon Valley Detention Center ("MVDC"), which disallows detainees access to New Jersey state court proceedings *via* video-conferencing technology or telephone, is unlawful and a violation of the detainees' constitutional rights. Pending before the Court is a Motion to Show Cause with Temporary Restraints (ECF No. 30) to obtain a preliminary injunction that would halt MVDC's practice of refusing detainees' remote hearings pertaining to New Jersey state criminal matters.

I.   **Factual and Procedural Background**[1]

This case is brought by The American Friends Service Committee, Immigrant Rights Program ("AFSC"), one of four state-funded providers in New Jersey that offers free and expert advice and representation to indigent New Jersey residents facing detention and removal proceedings. Additional plaintiffs are current or former MVDC detainees, Josefina Doe, Commor Jerome Welch, Jose Doe, Felipe Niomar Martinez Ortiz, and Isabela Doe (collectively with AFSC,

---

[1] There are few disputed facts in this case. Unless otherwise noted, the facts included in this section are taken from Plaintiffs' Complaint (ECF No. 1).

1

"Plaintiffs") who have or had pending criminal charges in New Jersey.[2] As of the writing of this memorandum opinion, the Court knows some detainee plaintiffs have been released from ICE custody, and that a preliminary injunction for a released named individual detainee plaintiff is moot. That said, based on the facts presented, the Court also knows there likely exists other aggrieved detainees, and the number of aggrieved detainees may fluctuate from time to time.[3] Thus, the Court finds it necessary to address the Motion for Preliminary Injunction, pending a future determination on certification of a class of plaintiffs.[4]

In general, the fact scenario complained of is that a criminally charged person is brought into the New Jersey criminal system, processed, and released on bond. Through the alleged criminal activity, and presumably the charged person's illegal status in the United States, U.S. Immigration and Customs Enforcement ("ICE") is notified and picks up the charged person and transports the charged person to MVDC (sometimes after a short stay at a temporary center). ECF Nos. 2-8 – 2-12. New Jersey no longer has custody over the charged person, and ICE has voluntarily assumed custody. Once in ICE custody, the detainee is stymied from attending New Jersey criminal proceedings.

Plaintiffs sue defendants U.S. Department of Homeland Security; U.S. Immigration and ICE;[5] and various officials of these organizations (collectively, "Defendants") for refusing remote

---

[2] There are five individually named detainee plaintiffs, and additional detainees who provided testimony, under seal, in support of Plaintiffs' motion for preliminary injunction (ECF No. 72). It is unknown to the Court if any of the named individual plaintiffs are represented by AFSC in any way. According to fn2 of Plaintiffs' Reply (ECF No. 66), plaintiffs Felipe, Commor, Josephina, and Isabela were released from ICE detention, while Jose remains in custody in active removal proceedings with unresolved criminal charges.
[3] "On average, at least 484 individuals met the class definition each year in 2022 and 2023. On average, at least 43 individuals join the class each month, with fewer exiting the class each month." ECF No. 1, ¶ 162.
[4] Plaintiffs, in their Complaint (ECF No. 1), also seek to certify a class of "all non-citizens detained by Defendants at the Moshannon Valley Processing Center who have unresolved criminal matters (inclusive of petty disorderly persons, disorderly persons, and indictable offenses) to be charged or [are] charged in superior or municipal court in New Jersey." ECF No. 1, ¶ 158. Plaintiffs state that the proposed class satisfies FRCP 23(a)(1) because the class is so numerous that joinder is impracticable. ECF No. 1, ¶ 162. The Court declines to address this issue now as it is premature.
[5] The GEO Group contracted with ICE to operate MVDC as an ICE Detention Center.

attendance at New Jersey criminal proceedings. Plaintiffs allege that Defendants have a "policy and practice" of refusing to permit non-citizens detained in MVDC access to New Jersey state court proceedings *via* video-conferencing technology or telephone. Instead of participation remotely, a detainee must be released on a *writ of habeas corpus ad prosequendum*, taken from MVDC to be transported to the hearing site, and after the criminal proceedings the detainee must be returned to MVDC. Plaintiffs assert that when requesting to attend a criminal proceeding remotely they were told by representatives of MVDC that MVDC will not accommodate criminal proceedings *via* zoom or other web-based communications because of lack of resources. ECF No. 1, ¶ 57, a-p. Plaintiffs assert the technology is available for criminal hearings to take place at MVDC; MDVC possesses 225 ICE Tablets, 220 telephones, and 30 virtual visitation booths. ECF No. 1, ¶ 59.

Plaintiffs add that it is not feasible to *writ* each detainee for criminal hearings. Depending on the location of the New Jersey state court, it can be 200 to 340 miles away from MVDC. ECF No. 1, ¶ 69. MVDC's policy inflicts a hardship of prolonged detention and deprives detainees of their legal rights. The inability of detainees to attend their criminal proceedings deprives them of their constitutional right to a defense attorney, and their ability to be heard in court. AFSC states that it has been harmed because it must divert its resources to criminal issues rather than fulfilling its mission as it relates to immigration law. AFSC states it has lost the confidence of the public and its clients.

Responding to Plaintiffs' allegations, Defendants state that MVDC is one of the largest detention facilities in the country with 419 high risk detainees, 545 medium-high risk detainees, 74 medium-low risk detainees, and 202 low-risk detainees and that it cannot accommodate remote criminal hearing requests in addition to its required business of immigration and family law. ECF

No. 60, p. 11. MVDC needs to prioritize executing immigration laws and use the virtual visitation booths for detainees to speak to asylum officers, immigration counsel, and defense counsel. ECF No. 73, p. 20-21, ¶¶ 23-25, 1-2. Defendants dispute Plaintiffs' understanding of MVDC's technology, and state that MVDC has 192 telephones, 192 tablets, ECF No. 60, p. 12, and 31 virtual attorney visitation booths. ECF No. 73, p. 20, ¶ 21. Defendants state that they are not depriving Plaintiffs of their rights or acting illegally because New Jersey has the responsibility of processing its own cases. It argues that New Jersey has refused detention centers in its state *and* will not retrieve its criminal defendants for hearings. ECF No. 60, pp. 9-10. In addition, Defendants state that it is not their "policy" to refuse detainees criminal remote hearings, but they evaluate the ability to accommodate such requests case-by-case. ECF No. 73, p. 22, ¶ 8-16; p. 23, ¶ 5-16.

Plaintiffs' prayer for relief includes the Court assume jurisdiction over the matter, certify the proposed class, grant judgment for Plaintiffs and against Defendants, issue a judgment that MVDC's policies and practices are unlawful, and grant an injunction that demands the following:

- Defendants honor *writs* that require in-person proceedings;
- Defendants virtually produce individuals *via* video conference;
- Defendants authorize and support GEO in the purchase and maintenance of sufficient technology; and
- Defendants be monitored to comply with Court's orders. ECF No. 1, p. 86-87.

**II.    Procedural History**

The Complaint (ECF No. 1) was filed on September 11, 2024, in the District of New Jersey. On that same day, Plaintiffs moved to Certify the Class (ECF No. 2). Defendants were served on September 25, 2024 (ECF No. 20). On October 11, 2024, Defendants moved to Transfer the Case

4

to the Western District of Pennsylvania (ECF No. 28). The Motion was briefed and there was a hearing on October 28, 2024 (ECF No. 41). On October 30, 2024, the case was transferred to the Western District of Pennsylvania (ECF No. 43).

Currently pending is Plaintiffs' Motion to Show Cause with Temporary Restraints (ECF No. 30), a Brief in Support (ECF No. 32) and several Declarations (ECF Nos. 31, 33, 38, 72). The Court entered a scheduling order for briefing the issues (ECF No. 56). A Brief in Opposition was filed by Defendants (ECF No. 60) and a Reply was filed by Plaintiffs (ECF No. 66). The Court heard argument on December 5, 2024, and the matter is ripe for the Court's disposition.

### III.  Standard of Review

"[T]he grant of injunctive relief is an 'extraordinary remedy which should be granted only in limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). To prevail, the plaintiffs must establish that: (1) they are likely to succeed on the merits of their claims, (2) they are likely to suffer irreparable harm without relief, (3) the balance of harms favors them, and (4) relief is in the public interest. *See Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). "All four factors should favor relief before an injunction will issue." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992) (citation omitted). However, before reaching factors three (3) and four (4), the moving party must first satisfy its burden with respect to factors one (1) and two (2). If a plaintiff fails to satisfy this burden, this is the end of the inquiry, and a preliminary injunction will not issue. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).

The test requires that the movant show a reasonable probability of eventual success in the litigation, and that it is more likely than not that he will suffer irreparable injury in the absence of

immediate injunctive relief. *See id.* "Although the plaintiff need not prove their case with airtight certainty, the moving party nevertheless bears a heavy burden on a motion for a preliminary injunction of establishing a reasonable probability of success on the merits." *Williams v. Lee*, No. 1:19-cv-41, 2019 WL 2285776, *2 (W.D. Pa. May 29, 2019) (internal quotations and citations omitted). "This burden is 'particularly heavy' where[,]" as is the case here, "the requested injunction 'is directed not merely at preserving the status quo but...at providing mandatory relief.'" *Id.* (quoting *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980)). For the reasons below, the Court finds Plaintiffs have satisfied all four elements warranting injunctive relief. Plaintiffs demonstrated they are likely to succeed on the merits of their claims, that they will suffer immediate and irreparable harm, if a preliminary injunction is not granted Plaintiffs will suffer greater harm than Defendants will if the injunction is granted, and injunctive relief is in the public interest. Accordingly, the Court will grant Plaintiffs' request for a preliminary injunction.

IV.   **Analysis**

To begin with, Defendants argue that Plaintiffs improperly move for a preliminary injunction because a preliminary injunction seeks to preserve the status quo. ECF No. 60, p. 47. "A primary purpose of a preliminary injunction is maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). "A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Id. at 653 (quoting Punnett v. Carter,* 621 F.2d 578, 582 (3d Cir.1980). Here, Plaintiffs seek to change MVDC's policy and procedure handling requests for remote attendance at New Jersey state criminal proceedings. The Court will proceed using a high level of scrutiny to evaluate whether Plaintiffs have borne their burden of

proof that they are likely to succeed on the merits of their claims, and they are likely to suffer irreparable harm if the Court does not grant relief.

The crux of the issue is whether Defendants' "Refusal Practice and Policy" thwarts noncitizen New Jerseyans detained at MVDC from exercising their Federal and State constitutional and statutory rights in violation of the First ("Petition Clause"), Fifth ("Due Process"), Sixth ("Speedy Trial"), and Fourteenth ("Due Process") Amendments. The Court reiterates Plaintiffs' facts and arguments verbatim below to capture a complete description of the resultant effects on detainees when they are denied remote attendance to criminal hearings.

> When Defendants deny people in detention access to the criminal legal system, among other harms, they: a. cause criminal charges to remain unresolved, which can lead to arrest warrants for failure to appear in criminal court; b. cause people who are indigent to miss the initial court appearance in which public defense counsel is appointed; c. prevent people from challenging evidence brought against them and establishing their innocence; d. prevent people from exercising their Confrontation Clause Rights and hearing testimony regarding the alleged actions they took; e. prevent people from allocuting or entering plea agreements generally; f. prevent people they are subjecting to immigration detention from accepting plea agreements that would not harm their immigration case; and g. prevent people from participating in sentencing proceedings in their own case.

> The Refusal Policy and Practice impacts the ability of those individuals to attend court appearances and pursue robust defenses of their criminal cases, contrary to their own legal interests, the efficiency interests of the courts, and, in many instances, in violation of the Constitution: a. When an individual is prevented from speaking out in their own defense or from submitting a petition to a court, they are unable to exercise their rights as provided by the First Amendment. b. When an individual is prevented from participating in a criminal case against them, they are unable to confront their accuser, as provided by the Confrontation Clause of the Sixth Amendment. c. When an individual is prevented from participating in a criminal case against them, and that case is paused, they are unable to vindicate their rights to a speedy trial, as provided under the Sixth Amendment. d. When an individual is prevented from participating in a criminal case against them, they are deprived of their constitutional rights to testify on their own behalf, should they wish to do so, as provided by the Sixth and Fourteenth Amendments. e. When an indigent individual is prevented from participating in a criminal case against them and thus cannot access public defense counsel, they are deprived of their right to counsel under the Fifth and Sixth Amendments. f. When an individual is prevented from attending a plea hearing or sentencing they are deprived of their right of

allocution. g. When an individual is prevented from attending the significant stages of criminal court proceedings they are deprived of their right to the privilege of presence and the ability to participate in the charges against them, as provided by the Due Process Clauses. h. Even in instances where an individual is facing charges that risk jail time of one year or less under N.J.S.A. 2C:43-8 (describing risk of imprisonment for disorderly persons offenses and petty disorderly persons offenses), federal and state constitutional due process rights attach. The refusal to provide access to court for people facing disorderly persons and petty disorderly persons charges in New Jersey is a denial of that individual's federal and state constitutional due process rights, in addition to the rights enumerated above.

ECF No. 1, pp. 42-44. The Parties do not disagree that a deprivation of access to criminal court proceedings causes a waterfall of further disallowed deprivations. Nor is there a dispute that such deprivations are illegal under the United States Constitution. Instead, Defendants' argument is that there is no deprivation of constitutional rights because detainees *can attend court or obtain their entitled rights* by means other than remote hearings through MVDC.[6] Defendants state that detainees' rights are not violated because they have access to the courts either through a *writ* to attend hearings in person or to attend remotely as determined by MVDC on a case-by-case basis. The Court proceeds assuming consensus that denial to access to court violates one's rights and therefore will dispense with an analysis of constitutional law.

The Court summarizes the declaration of Josefina Doe ("JD") (ECF No. 2-8) for a factual scenario representative of the individual plaintiffs. JD was born in the Dominican Republic and came to the United States on October 20, 2022. ECF No. 2-8, ¶ 4. She applied for asylum on July 19, 2024, because the father of her three children in the Dominican Republic was abusive. ECF No. 2-8, ¶ 5. JD lived in New Jersey with her new partner and his family before her detention.

---

[6] For example, Defense states that missing a hearing does not affect retaining constitutionally appointed counsel because counsel can be retained online. This assumes detainees have access to a computer (which defense has claimed technology at MVDC is used to capacity), knows this option is available, and has no language barrier. Defense also contends that all individual Plaintiffs named in this case obtained counsel. ECF No. 60, p. 37. Even if the Court found online access sufficient means to satisfy the detainees constitutional right to counsel, this is just one of many rights subverted when a detainee is denied an appearance in court. In addition, any delay in obtaining counsel could have had detrimental effects.

ECF No. 2-8, ¶ 6. Her partner in New Jersey also became abusive. ECF No. 2-8. ¶¶ 7-9. On May 5, 2023, JD was arrested after a domestic dispute when her partner's family members called the police. ECF No. 2-8, ¶ 11. JD does not speak English and when the police arrived, they only listened to those present who spoke English. ECF No. 2-8, ¶ 11. JD was in New Jersey state custody for about 2 days before she was granted release. She was told she had a criminal hearing on July 18, 2024, and that she would need to call the court periodically until then. ECF No. 2-8, ¶ 12. After her release she was held at the county jail until ICE picked her up later that night. ECF No. 2-8, ¶ 11.

ICE apprehended JD for remaining in the United States beyond her authorized date. ECF No. 60, p. 13. JD was held briefly at Elizabeth Contract Detention Facility in New Jersey before being transferred to MVDC. ECF No. 2-8, ¶ 14. JD asked about participating in her criminal proceedings and was told several times by different people that MVDC does not allow access to state court proceedings. ECF No. 2-8, ¶¶ 17-21. Plaintiffs state that a request for virtual production for a state criminal hearing is met with a response that MVDC cannot expend the resources on criminal matters and that the detainee must be taken from ICE custody by *writ*. Transportation must be handled by local (New Jersey) law enforcement. ECF No. 1, ¶ 57, a-p.

**A. Plaintiffs are likely to succeed on the merits of their claims.**

A showing of the likelihood of success on the merits is a "gateway factor", which the plaintiff must establish with the required specificity. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). The Court understands that in at least nine of the eleven detainee declarations, and in all five of the individual plaintiff declarations,[7] the individual

---

[7] In two scenarios, it was unclear whether the individual had been released. "ICE apprehended me in the Mercer County Jail following an arrest for simple assault…" and "ICE apprehended me on August 12, 2024, at the Somerville Court House following an arrest on August 9, 2024, for simple assault and interference with a borough official in

9

was released from state custody before ICE picked them up. Given that the state court released the individual, it relinquished its control over the subject and ICE voluntarily assumed control when apprehending the individual. "Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: (1) release on bail; (2) dismissal of charges; (3) parole; or (4) expiration of sentence." *Wilson v. Spaulding*, No. 1:15-CV-00126, 2015 WL 8781510, at *4 (M.D. Pa. Dec. 15, 2015) (citing *Davis v. Sniezek*, 403 F. App'x 738, 740 (3d Cir. 2010) (internal citations omitted)). Once the New Jersey court released the individual on bail it relinquished jurisdiction. In the ordinary course of business, New Jersey would not be required to pick up a released charged individual and transport the individual to a hearing. ICE, on the other hand, voluntarily took custody of the charged individual, thereby assuming responsibility. Had ICE not assumed custody it would be on the individual's own recognizance to attend his/her hearings. "Federal immigration law empowers the Secretary of Homeland Security to arrest and hold a deportable alien pending a removal decision, and generally gives the Secretary the discretion either to detain the alien or to release him on bond or parole." *Nielsen v. Preap*, 586 U.S. 392, 392 (2019) (citing 8 U.S.C. § 1226(a)).[8]

---

Bound Brook." In any event, the detention by ICE whether the detainee was released by New Jersey, or not, makes ICE at least partly responsible for acting within the constitutional rights of the detainee.

[8] **(c) Detention of criminal aliens**
**(1) Custody**
The Attorney General shall take into custody any alien who--
**(A)** is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
**(B)** is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
**(C)** is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
**(D)** is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense. 8 U.S.C.A. § 1226 (West)

The Court finds a causal connection between ICE/MVDC's action in detaining the charged individual and assuming custody, MVDC's refusing remote court attendance, and the resultant deprivations attributable to MVDC's denial of access to attend hearings remotely at the detention center. "Primary custody remains vested in the sovereign that first arrests the individual until it 'relinquishes its priority by, *e.g.,* bail release, dismissal of the state charges, parole release, or expiration of the sentence.'" *Harris v. Bureau of Prisons (BOP) Fed.,* 787 F. Supp. 2d 350, 355 (W.D. Pa. 2011) (quoting *Chambers v. Holland,* 920 F. Supp. 618, 622 (M.D. Pa. 1996) (citations omitted)). "Primary jurisdiction can be relinquished by operation of law or by the mutual agreement of the two custodial jurisdictions. Thus, the sovereign with primary jurisdiction may elect under the doctrine of comity to relinquish it to another sovereign, if the sovereign accepts." *Harris,* 787 F. Supp. at 357. The Court finds that when ICE assumes legal authority over an individual, it includes responsibility for the individual's rights and protections. Indeed, the institution with legal and physical custody of an individual is best situated to ensure the individual's civil rights remain intact.

1. **Plaintiffs lack standing**

Defendants assert that Plaintiffs lack standing because they have not established injury in fact. ECF No. 60, p. 21. As to individual plaintiffs, Defendants state there is no injury in fact from the refusal of video hearing attendance because detainees *can* attend New Jersey criminal hearings in person if the state will *writ* them out for in-person hearings and transport them. ECF No. 60, p. 21. In other words, there is an option for attendance at criminal proceedings, therefore, no deprivation of rights has occurred. Plaintiffs retort that this is not a feasible option because some state courts only allow for remote hearings. Plaintiffs also contend that the logistics and

expense of the *writ* process and transport to and from the detention center is untenable. ECF No. 1, ¶ 69.

The state of New Jersey is not a party to this case and the Court cannot be certain of its position on mandatory remote hearings or its willingness to *writ* a detainee out for transport to a hearing. The Court understands, however, that detainees may have criminal proceedings in several different New Jersey courts with different procedures and policies. Regardless of the procedure and policy of any particular New Jersey Court, as stated above, when New Jersey relinquishes custody of the detainee, it is no longer New Jersey's responsibility to produce the charged individual to any court hearing. ICE assumed sole custody for the detainee and as such it is tasked with ensuring detainees' constitutional rights are supported. ICE cannot rely on New Jersey to transport the detainee, as an alternative option to satisfy a detainee's civil rights, when New Jersey is not legally responsible to do so. Thus, the Court finds it an unacceptable argument that Plaintiffs sustain no injury.

"An injury in fact is: 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Pennsylvania Prot. & Advoc., Inc. v. Houston,* 136 F. Supp. 2d 353, 360 (E.D. Pa. 2001) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (citations omitted)). The facts presented by Plaintiffs of the resultant deprivations that occur when a detainee cannot attend a hearing, such as arrest warrants for failure to appear in criminal court; missing the initial court appearance in which public defense counsel is appointed; preventing people from challenging evidence brought against them and establishing their innocence; preventing people from exercising their Confrontation Clause Rights and hearing testimony about the alleged actions they took; preventing people from allocuting or entering plea agreements; and an overall prolonged detention, the Court finds to be convincing

evidence of injury to individual detainees. The Court understands the individual plaintiffs to have suffered these specific deprivations and the harms are not conjecture or hypothetical.

Likewise, the Court finds AFSC has also been harmed by MVDC's actions. AFSC states that it has had to stretch its resources beyond its mission of immigration representation. It has had to expend time training staff in criminal matters that it would not usually handle. In turn, it has been unable to represent its clients as it would otherwise, and it has lost the confidence of the public and its clients. ECF No. 1, pp. 67-74.

Speculation that AFSC's reputation has been damaged is not sufficient to prove irreparable harm. "[S]howing some potential harm to reputation is usually insufficient to support a conclusion that irreparable harm exists." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 654 (3d Cir. 1994). However, the Court finds injury where the function and mission of AFSC is upended because it is compensating for procedural missteps when detainees miss criminal hearings. *See Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 601 (3d Cir. 1979) ("We agree with the district court that Fitzgerald has established the possibility of irreparable injury "to his business and reputation" from an alleged violation of a Commission Rule implying dishonest racing to warrant a preliminary injunction. The record reveals that Fitzgerald's income was in large part directly related to his ability to race at the Meadows. The eviction had the effect of denying him the right to pursue his license to drive and train horses."). The Court finds that AFSC has standing to bring the case because its ability to serve its mission has been harmed by Defendants actions.

### 2. Court lacks standing

Defendants state that the Court lacks jurisdiction under 8 U.S.C. §§ 1252(g) and (b)(9). Those provisions provide:

**(g) Exclusive jurisdiction**

> .... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.
>
> **(9) Consolidation of questions for judicial review**
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C.A. § 1252 (West). The Court finds this argument unpersuasive. Section 1252 applies to judicial review of order of *removal*. The allegations here are separate and apart from removal proceedings. Plaintiffs argue a deprivation of constitutional rights as it pertains to criminal proceedings. In fact, in support of their case, Defendants argue that criminal hearings are wholly separate from immigration matters and that is why the hearings are not the responsibility of MVDC. The argument here is that detainees are being denied constitutional rights when denied access to the New Jersey criminal proceedings. Section 1252 has no influence in this case.[9]

### 3. Not MVDC Policy but Case by Case Review

As stated above, Defendants claim that there is no such "Refusal Practice and Policy" at MVDC. The current procedure is that if an ICE detainee is needed as a defendant in an upcoming criminal procedure, counsel may obtain a *writ* from an appropriate state or local judge that orders

---

[9] The Court notes that it does have jurisdiction, pursuant to 8 U.S.C. § 1252(a)(2)(D), to review the BIA's final order for constitutional claims and questions of law. *See Sukwanputra v. Gonzales,* 434 F.3d 627, 634 (3d Cir.2006) ("By virtue of § 1252(a)(2)(D), constitutional claims or questions of law raised in a petition for review elude the jurisdiction-stripping provisions of the INA."). Even if this case were to require a BIA review, which it does not, it would still be eligible for judicial review of constitutional claims after a BIA determination.

14

the non-citizen's appearance on a specific date. ECF No. 60, p. 12. Once the *writ* is obtained and ICE approves it, counsel should contact the field office in writing and request the facilitation of the transfer to state/local custody. *Id.* The requesting law enforcement agency must arrange for the transportation. *Id.* The in-person *writ* process has been available since April 2011. *Id.* In 2023 and 2024, New Jersey has successfully used this process to transport eight individuals from MVDC to their criminal proceedings. *Id.*

It is also the Court's understanding that MVDC has allowed for remote criminal hearings at times. Individual plaintiffs, Josafina and Isabela, were granted virtual hearings to resolve the underlying state criminal action. ECF No. 73, pp. 21-22, ¶¶ 24-25, 1-3. Defendants stated:

> We were able to provide that access to them – we agreed with Plaintiffs that we would do this for the named Plaintiffs, but that we could not do – promise to do it for the putative class because that would bring us back to the same problem of Moshannon does not have the resources to accommodate hundreds of different individuals with multiple criminal proceedings, possibly multiple cases in different courts and different jurisdictions…. Both Felipe and Commor were granted virtual production [as well].

ECF No. 73, p. 22, ¶¶ 4-16, p. 23 ¶¶ 3-4. During the hearing the Court asked, "Doesn't that seem odd to you, though, that the named Plaintiffs were granted access as named Plaintiffs, but others are not?" ECF No. 73, p. 73, ¶¶ 10-12. Defendants responded, "Not necessarily. I think it's done on a case-by-case basis." ECF No. 73, ¶¶ 15-16. Defendants' position is that MVDC schedules according to the resources available, including staffing, at MVDC. Based on the record, the Court only has evidence that individual plaintiffs have been granted remote access. There is no testimony of other detainees' requests being considered and the reasoning for denial. Defense testimony stated, "…. Plaintiffs have only asked for one putative class member to be produced virtually that they referenced before. In that case, we did say we aren't going to start agreeing to putative class members because that does seem like we are opening the floodgates to a very large number to

virtual production that resources can't handle." ECF No. 73, p. 23, ¶¶ 16-21. Defendants' contention that they will consider remote access case-by-case and then deny consideration for fear of opening the flood gates is double-talk. It can't be said that MVDC will review each request case-by-case and then say it can't possibly accommodate requests on a case-by-case basis. Though MVDC defends it is not its policy to deny virtual requests, its actions defy its defense. Plaintiffs provided multiple pages of fact-scenario where Defendants provided the same refusal language repeatedly. ECF No. 1, pp. 34-39, a-p.

Plaintiffs state that MVDC's "policy" of refusing remote criminal hearings is arbitrary and capricious. ECF No. 1, p. 6. The burden of proving that an agency action is arbitrary or capricious falls upon the party challenging the action. *See McKinley v. United States,* 828 F. Supp. 888, 892 (D.N.M.1993). Plaintiffs assert that MVDC has the technology to handle remote hearings, as it does for immigration and family matters, and so there is no reason it should not handle criminal hearings remotely. Defendants retort that MVDC's directive is to handle immigration matters and the resources of its large facility, both staffing and technology, cannot handle the criminal matters of 1200 detainees.

Courts may set aside agency action found to be arbitrary or capricious. *See Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009). "An agency action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Geneva Coll. v. Sebelius,* *929 F. Supp. 2d 402, 445 (W.D. Pa. 2013), on reconsideration in part* (May 8, 2013) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 44 (1983)). A

court's review of agency action is "narrow;" it may " 'not substitute its judgment for that of the agency,' " and it "should 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.' " *Fed. Commc'ns,* 556 U.S. at 513–14 (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 286 (1974)). The Court of Appeals for the Third Circuit has noted that "[f]ailure of the agency to address an important aspect of the issue under consideration may be fatal to its conclusion." *Shane Meat Co., Inc. v. United States Dep't of Def.,* 800 F.2d 334, 336 (3d Cir.1986).

This Court determined that ICE assumed custody of a released criminally charged individual and so ICE must also assume responsibility for a criminally charged detainee's constitutional rights. ICE cannot voluntarily take control over an individual and then say it cannot abide by the laws of the United States as they apply to that individual. The Court understands that Defendants have a duty to process detainees' immigration matters, but there is no acceptable reasoning that this is to be done at the sacrifice of constitutional rights. Nor have Defendants presented any testimony that convinces this Court that detainees are being provided an ascertainable opportunity to attend criminal hearings. While the Court sympathizes with the Defendants' asserted lack of resources, it cannot be persuaded that a resources issue cannot be overcome in the interest of important constitutional rights of an individual.

### 4. Autonomy of Prisons from Federal Interference

Defendants have argued that a court should not dictate procedure for a detention center and that decisions on the function of the detention center is best left to those that run the institution. "[A] request for injunctive relief [in the prison context] must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper,* 60 F.3d 518, 520 (8th Cir. 1995) (quoting

*Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). However, the latitude given to prisons is overruled if there is a constitutional violation occurring because of the operation of the institution as there is here. "Courts nevertheless must not shrink from their obligation to 'enforce the constitutional rights of all 'persons,' including prisoners.'" *Brown v. Plata*, 563 U.S. 493, 511 (2011) (quoting *Cruz v. Beto,* 405 U.S. 319, 321 (1972) (*per curiam*)). "Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown*, 563 U.S. at 511. The logic here is transferable from prison to detention center. Furthermore, this Court does not seek to dictate specifics as to the daily functions of MVDC. The Court only requires that MVDC function in a way that comports with the laws.

### B. Plaintiffs have shown they will suffer immediate and irreparable harm if an injunction does not issue.

Irreparable harm is harm that "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Airfreight Co. v. C.F. Airfreight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction. *See id.* (referencing *In re Arthur Treacher's Franchisee Litig.,* 689 F.2d 1137 (3d Cir. 1982)). The Court finds Plaintiffs have proved they will suffer irreparable harm if an injunction does not issue. As mentioned above, Plaintiffs stated:

> When Defendants deny people in detention access to the criminal legal system, among other harms, they: a. cause criminal charges to remain unresolved, which can lead to arrest warrants for failure to appear in criminal court; b. cause people who are indigent to miss the initial court appearance in which public defense counsel is appointed; c. prevent people from challenging evidence brought against them and establishing their innocence; d. prevent people from exercising their Confrontation Clause Rights and hearing testimony regarding the alleged actions they took; e. prevent people from allocuting or entering plea agreements generally; f. prevent people they are subjecting to immigration detention from accepting plea agreements that would not harm their immigration case; and g. prevent people from participating in sentencing proceedings in their own case.

18

ECF No. 1, pp. 42-44. Defendants claim these harms are not irreparable because these items can be addressed once the hearing is held. ECF No. 60, p. 42. Merely the possibility of harm is not sufficient. *Id.* Defendants fail to recognize that the consequences of the initial deprivation of rights causes a delay of time that is not speculative nor is it reparable. Any missed hearing prolongs the criminal process and criminal defendants are entitled to speedy adjudication under the Sixth Amendment. "The violation of a fundamental constitutional right constitutes irreparable injury. '[I]t is always in the public interest to prevent the violation of a party's constitutional rights.'" *Buck v. Stankovic*, 485 F. Supp. 2d 576, 586–87 (M.D. Pa. 2007). Of course, each case, each hearing, each situation is different, and the Court will not venture to speculate the harms that will occur when a hearing is missed. But the Court can be certain that a missed hearing causes a delay that will result in consequential harms that will take precious time to remedy. The time lost is irreparable and the consequential harms may be as well.

### C. The Balance of Harm favors Plaintiff

The multiple harms identified by Plaintiffs because of the lack of access to the New Jersey criminal system are many as compared to the lack of resources that MVDC faces in accommodating the remote attendance requests. MVDC's harm can be remedied by addressing the shortage of resources at the facility or by making a reasoned decision whether picking up a released individual is reasonable faced with the services they must provide for that individual. The balance of harm weighs in favor of preliminary injunction for the Plaintiffs.

### D. Relief is in the public interest

A preliminary injunction is in the interest of the public. The detainees as well as the public at large benefits from the speedy administration of the law and adjudication of judicial hearings. Even Defendants would benefit from efficient processing of criminal proceedings. While the

Court understands that resources must be expended to allow MVDC to accommodate its large population, the Court reasons that a resolution where detainees could attend remote criminal hearings routinely would serve judicial economy and the economies that are intertwined with judicial economy such as the removal process.

### V. Conclusion

The Court finds Plaintiffs have satisfied all four elements warranting injunctive relief. Plaintiffs have established they are likely to succeed on the merits of their claims, that they suffer immediate and irreparable harm when unable to attend criminal hearings remotely, that the harms inflicted on the Plaintiffs outweigh any harm to Defendants in abiding by the preliminary injunction, and that injunctive relief is in the public interest. Accordingly, the Court will GRANT Plaintiffs' request for a preliminary injunction. An appropriate order will follow.

Date: January 31, 2025

_____
Stephanie L. Haines
United States District Judge