**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEFINA DOE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3:24-cv-0259 |
| | ) | |
| v. | ) | Judge Stephanie L. Haines |
| | ) | Magistrate Judge Patricia L. Dodge |
| U.S. DEPARTMENT OF | ) | |
| HOMELAND SECURITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

## I.    RECOMMENDATION

It is respectfully recommended that Defendants' partial Motion to Dismiss (ECF No. 82) be granted in part and denied in part.

## II.    REPORT

### A.    Relevant Procedural History

The American Friends Service Committee, Immigrant Rights Program ("AFSC") is a state-funded organization that offers free legal advice and representation to indigent New Jersey residents facing deportation proceedings. Josafina Doe, Isabela Doe, Commor Jerome Welch, Felipe Niomar Martinez Ortiz, and Jose Doe ("Individual Plaintiffs") are noncitizen individuals who were previously taken into custody by U.S. Immigration and Customs Enforcement ("ICE") and detained at Moshannon Valley Processing Center ("MVPC"). At the time of their detention, each of the Individual Plaintiffs had a criminal charge pending against them in New Jersey Superior or Municipal courts.

AFSC and the Individual Plaintiffs, on behalf of themselves and all others similarly situated, (collectively "Plaintiffs") commenced this action by filing a complaint and motion for class certification in the U.S. District Court for the District of New Jersey. (ECF Nos. 1, 2.) The

Complaint names ICE, the U.S. Department of Homeland Security ("DHS"), and various officials of both agencies (collectively "Defendants") as defendants.[1]

Plaintiffs' claims stem from MVPC's alleged "policy or practice" of refusing to allow detainees to attend their own state court criminal proceedings via telephone or video-conferencing technology. In Count I, Plaintiffs and the putative class allege that Defendants' policy disallowing remote participation in state criminal proceedings violated the First, Fifth, and Sixth Amendment rights to court access. (ECF No. 1 ¶¶ 173-79.) Count II, brought only by AFSC, alleges the policy violates due process. (*Id.* ¶¶ 180-85.) Counts III and IV, each of which is brought by Plaintiffs and the putative class, seek relief under two separate provisions of the Administrative Procedure Act ("APA"). (*Id.* ¶¶ 186-99.)

Shortly after the Complaint was filed, Defendants moved to have the case transferred to the Western District of Pennsylvania. (ECF No. 28.) The New Jersey district court granted Defendants' motion and the case was transferred on October 30, 2024. (ECF No. 43.)

Plaintiffs sought a preliminary injunction to "enjoin[] Defendants from depriving all Putative Class members of their right to virtual appearance in criminal court proceedings." (ECF No. 30-1 at 18.) The motion was briefed and oral argument was held before the Honorable Stephanie L. Haines. (ECF Nos. 60, 66, 71, 73.) Judge Haines granted Plaintiffs' request on January 31, 2025, and ordered that MVPC immediately function in compliance with the tenets of the Constitution. (ECF Nos. 76, 77.)

Defendants moved for clarification as to the scope of the preliminary injunction order and its day-to-day application at MVPC. They also asked that the Court stay implementation of the

---

[1] The named defendants in this action are DHS; ICE; Kristi Noem, Secretary of the DHS; Todd M. Lyons, Acting Director of ICE; Marco Charles, Acting Executive Associate Director of ICE's Enforcement and Removal Operations; Brian McShane, Acting Field Office Director for the ICE Philadelphia Field Office; and Francis Kemp, Assistant Field Office Director for the ICE Philadelphia Field Office.

order until a class had been certified. (ECF No. 81.) By opinion dated March 28, 2025, Judge

Haines granted Defendants' motion for clarification, stating:

> After hearing argument on the preliminary injunction motion, the Court found for Plaintiffs and against Defendants, issued a judgment that MVDC's policies and practices are unlawful, and granted an injunction that demands the following:
>
> - Defendants honor *writs* that require in-person proceedings;
> - Defendants virtually produce individuals *via* video conference;
> - Defendants authorize and support GEO[2] in the purchase and maintenance of sufficient technology; and
> - Defendants be monitored to comply with Court's orders.

(ECF No. 102 at 4.) The opinion further clarified:

> The Court finds that the Preliminary Injunction Order (ECF No. 77) applies to the putative class. The case will NOT be stayed pending resolution of class certification. The Court declines to opine on technology or scheduling conflicts at MVDC.

(*Id.* at 7.)[3]

Defendants moved to partially dismiss the Complaint pursuant to Rules 12(b)(1) and

12(b)(6) on February 14, 2024. (ECF No. 82.) The motion has been fully briefed (ECF Nos. 84,

86, 95, 97) and oral argument was held before the undersigned on May 20, 2025. (ECF No. 110.)

### B.    <u>Facts Alleged in the Complaint[4]</u>

According to the Complaint, MVPC is an ICE detention center located in Philipsburg,

Pennsylvania with the capacity to hold 1,878 detainees. (ECF No. 1 ¶¶ 38-39.) Because there is

only one operational immigration detention facility within the state of New Jersey, the majority of

noncitizens taken into ICE custody in New Jersey are housed at MVPC. (*Id.* ¶¶ 43-45.) ICE

---

[2]  According to the Complaint, the GEO Group is "a private for-profit prison corporation" that contracted with ICE to operate MVPC. (ECF No. 1 ¶¶ 40-42.)
[3]  Defendants appealed both the order granting the preliminary injunction and the clarification order. As of today's date, both appeals remain pending in the Third Circuit.
[4]  The Complaint, which goes on for some length, contains a number of facts and allegations. Only those factual allegations relevant to the disposition of Defendants' motion to dismiss are recounted here.

typically apprehends these individuals immediately after they have been arrested or involved in some other interaction with the New Jersey criminal justice system. (*Id.* ¶ 45.) The Complaint alleges that the percentage of individuals apprehended in New Jersey and transferred to MVPC with unresolved criminal matters is nearly double the national average. (*Id.* ¶ 47.)

Almost all of the individuals detained at MVPC are required to appear in immigration court for custody and removal proceedings. Because the immigration court is physically located in Elizabeth, New Jersey, these proceedings are conducted remotely. MVPC staff is responsible for arranging virtual production for each appearance. (*Id.* ¶ 63.) MVPC detainees are regularly given access to telephones, tablets, and Virtual Attorney Visitation ("VAV") Booths to facilitate their participation in immigration and certain family court proceedings. (*Id.* ¶¶ 59-62.) MVPC detainees are not permitted to use this same technology to participate remotely in New Jersey state court criminal proceedings, however. (*Id.* ¶¶ 3, 50.) Detainees are also prevented from using telephones or other technology to notify New Jersey courts or counsel that they will be unable to appear at previously scheduled proceedings or to facilitate a resolution of unresolved charges. (*Id.* ¶ 51.)

Each of the Individual Plaintiffs was charged with a criminal offense in New Jersey that triggered their apprehension and detention by ICE. All were taken to MVPC while their state criminal charges remained pending. The challenged policy was in effect at MVPC during the pendency of the Individual Plaintiffs' detention and they were therefore unable to appear or participate in their New Jersey criminal proceedings via telephone or video-conferencing technology. *See id.* ¶¶ 18-22. As summarized by the Complaint:

> Defendants' Refusal Policy and Practice has created a vicious, bureaucratic cycle. ICE detains the individual following a finding that it is appropriate to do so given open criminal charges pending in a State court; the individual cannot resolve those very criminal charges while in detention due to the Refusal Policy and Practice; and the individual cannot secure release from Moshannon given the continued pendency of those same unresolved charges.

(*Id.* ¶ 119.)

Rather than appear virtually in state court, MVPC detainees with pending New Jersey criminal charges must be issued a writ for in-person production by a state court judge. As alleged in the Complaint:

> If such a writ is issued, [New Jersey] must dispatch law-enforcement personnel to pick up from, and return the individual to, Moshannon (at least an eight-hour, round-trip drive), regardless of expense; and the [New Jersey] must detain, and pay for the detention of, the individual, even if a State-court judge had already found there is no basis for detention. In practice, of course, this rarely happens – it is not realistic, feasible, or possible that [New Jersey] and municipal entities will expend their limited resources in this fashion, and for all of the people with unresolved criminal charges transferred by Defendants to Moshannon.

(*Id.* ¶ 6.) There is no exception to the writ requirement for indigent individuals who have not yet been appointed counsel, thus requiring many detainees to attempt to navigate the writ process pro se. (*Id.* ¶ 57.)

According to the Complaint, the conditions[5] to obtain an in-person writ are "never met" with respect to appearances in Municipal Court (*Id.* ¶ 57), and are "seldom met" in Superior Court (*Id.* ¶ 53.) Most New Jersey criminal cases have at least some proceedings held in Municipal Court (*Id.* ¶ 75). All Municipal Court initial appearances are virtual and judges then have discretion as to whether subsequent matters will be conducted virtually or in person. (*Id.* ¶ 79.) As a result:

> Based on a survey of municipal court websites, at least 158 (or 37%) of the 418 municipal courts in New Jersey hold *only* virtual proceedings. An additional 83 (or 20% are primarily virtual. Only 14 (or 3%) of the municipal courts in New Jersey indicate that they are only in person.

(*Id.* ¶ 80.)

---

[5] The "conditions" are characterized by the Complaint as (1) a state court judge issuing the writ; and (2) the state "consenting to expend enormous resources to travel the long distance to retrieve, house, and then return them to ICE custody in Moshannon." (*Id.* ¶ 52.)

Aside from the alleged harm to detained individuals, the Complaint alleges that MVPC's policy harms AFSC directly by routinely forcing it to divert its resources to resolving matters outside the scope of its representation of clients in immigration court. (*Id.* ¶ 139.) For example, AFSC attorneys "are frequently forced to insert themselves into the State-court criminal proceedings in their clients' stead to negotiate standard procedural requirements, like appointment of public defense counsel, and to appear as friends of the court and explain the impact of [MVPC's policy]." (*Id.* ¶ 146.) Situations such as this prevent AFSC from accomplishing its organizational mission of serving indigent noncitizens in immigration detention and removal proceedings. (*Id.* ¶¶ 150-57.)

### C.    <u>Legal Standard</u>

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge is made without "disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Mortensen v. First Fed. Sav. & Laon Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A factual challenge attacks the "factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (citing *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

A complaint may be dismissed in whole or in part for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

6

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To decide a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11. "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

In assessing the sufficiency of a complaint, a court must therefore: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away any conclusory allegations that are not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 US at 679.

    **D.**    **<u>Discussion</u>**

        1.  <u>Claims asserted by Individual Plaintiffs</u>

Defendants assert that since the filing of this Complaint, four of the five Individual Plaintiffs were virtually produced for proceedings in New Jersey criminal courts. These four Plaintiffs have since been released from MVPC and are no longer in ICE custody. Defendants

argue that the individual claims asserted by the now-released Plaintiffs must be dismissed as moot because there is no longer a live controversy and it would be impossible for the Court to grant any effectual relief. (ECF No. 82 at 12-14.)

Plaintiffs concede that four of the Individual Plaintiffs have been released but dispute the mooting of their claims. They argue that a putative class representative's claim does not become moot simply because, at some point after the initial filing, the challenged practice no longer implicates that individual due to a change in circumstances. Instead, they argue that "special mootness rules" apply. (ECF No. 95 at 16-20.)

"Generally speaking, a case will become moot 'when . . . the parties lack a legally cognizable interest in the outcome.'" *Richardson v. Dir. Fed. Bur. of Prisons*, 829 F.3d 273, 278 (3d Cir. 2016) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (alteration in original). Mootness is generally more flexible than the other Article III justiciability requirements, particularly in the context of class action litigation. *Id.* "A plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class." *Rosetti v. Shalala*, 12 F.3d 1216, 1226 (3d Cir. 1993) (quoting *Geraghty*, 445 U.S. at 404). The Third Circuit has found "that '[i]n the class action context, special mootness rules apply' for determining at what point in time a named plaintiff must still have a personal stake in the litigation to continue seeking to represent a putative class action." *Richardson*, 829 F.3d at 278-79 (quoting *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003)). "[C]lass claims can breathe life into an otherwise moot case for they 'allow a plaintiff to continue seeking class certification in certain circumstances even though his individual claim for relief has become moot.'" *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297, 305 (3d Cir. 2016) (quoting *Richardson*, 829 F.3d at 279).

In the instant case, Defendants ask the Court to dismiss as moot the *individual* claims of the four Plaintiffs who have been released from MVPC. Plaintiffs respond that because the four released Plaintiffs had a personal stake in the outcome of the litigation at the outset, they can therefore serve as putative class representatives. While the Court agrees with Plaintiffs, this speaks only to the now-released Plaintiffs' continued ability to assert claims on behalf of the putative class. *See Gayle*, 838 F.3d at 305 ("[S]o long as a plaintiff files a motion to certify a class when he still has a live claim, the mooting of that claim while the motion is pending precludes the court from reaching the merits but does not preclude it from deciding the certification motion.").

The released Plaintiffs' individual claims, however, are indeed moot. The four released Plaintiffs are no longer detained at MVPC and are not subject to the challenged policy. The Court is therefore unable to grant these Plaintiffs any effectual relief on their individual claims. As a result, it is recommended that their individual claims be dismissed.

2.   Failure to state a claim – Count I

The constitutional right to challenge a conviction and conditions of confinement is well-established. "To state a claim for denial of access to the courts, an inmate must allege both that he was denied 'the tools needed in order to challenge the conditions of his confinement' and that an actual injury resulted." *Rivera v. Monko*, 37 F.4th 909, 915 (3d Cir. 2022) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (cleaned up). To plead "actual injury" in this context, the plaintiff "must show that his or her exercise of the right . . . of accessing the courts to secure judicial relief, has been infringed in some consequential way." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006).

Defendants argue that Count I fails to state a claim because there is no right to virtual production under the First, Fifth, or Sixth Amendments. Instead, the only requirement is that

9

Plaintiffs have the ability to access the courts. Because MVPC has an in-person writ system that would allow Plaintiffs to appear at New Jersey criminal proceedings in person, Defendants argue that they have satisfied their constitutional obligations.

Similarly, Defendants contend that MVPC's in-person writ system also satisfies Plaintiffs' constitutional right to access the courts with respect to state courts operating on a fully or primarily virtual basis. According to Defendants, if New Jersey wants its criminal charges to proceed and be adjudicated, the state must accommodate MVPC's policy by conducting in-person proceedings in all criminal matters. Defendants maintain that the responsibility of arranging and transporting MVPC detainees to and from all such criminal proceedings falls solely to New Jersey.

At the motion to dismiss stage, the Court must accept all well-pleaded factual allegations as true and resolve all reasonable inferences in Plaintiffs' favor. Notwithstanding Defendants' arguments, the Complaint alleges that MVPC's in-person writ system does not work and is almost impossible to navigate if an individual is proceeding pro se. Among other things, the Complaint alleges that MVPC's policy denies Plaintiffs and the putative class the ability to attend initial appearances in which public defense counsel is appointed; challenge evidence against them; confront their accusers; hear testimony regarding their alleged conduct; allocate or enter plea agreements that may impact their immigration case; and participate in sentencing proceedings. This denial, in turn, prolongs detention and often negatively impacts immigration proceedings. *See* ECF No. 1 ¶¶ 68, 173-79.

These allegations are sufficient at this early stage of the litigation to plausibly state a claim for denial of access to the courts. The Complaint properly alleges that in-person writs are functionally unavailable in many instances and that denial of virtual access deprives Plaintiffs of their rights under the First, Fifth, and Sixth Amendments in a meaningful and consequential way.

10

It is therefore recommended that Defendants' motion be denied as to Count I.

### 3. Claims asserted by AFSC

Defendants argue that AFSC fails to state a claim in Counts I, II, and IV because the injuries alleged are attributable only to AFSC's clients rather than to AFSC itself. They contend that AFSC failed to identify any constitutionally protected organizational liberty or property interest and show that such interest was impacted by their clients' inability to access proceedings remotely. (ECF No. 82 at 31-34.)

Despite Defendants' argument to the contrary, however, the Complaint clearly alleges that AFSC expended significant resources and suffered reputational harm as a result of MVPC's policy barring AFSC clients from appearing remotely in New Jersey courts. In ruling on the preliminary injunction, Judge Haines also reached a similar conclusion:

> Likewise, the Court finds AFSC has also been harmed by MVDC's actions. AFSC states that it has had to stretch its resources beyond its mission of immigration representation. It has had to expend time training staff in criminal matters that it would not usually handle. In turn, it has been unable to represent its clients as it would otherwise, and it has lost the confidence of the public and its clients.

(ECF No. 76 at 13.) Defendants' argument is similarly unpersuasive here, as AFSC has allege an injury separate from that of its clients.

Defendants also reassert their argument that Count II is barred by 8 U.S.C. § 1252. (ECF No. 82 at 34-37.) Judge Haines previously rejected this argument outright:

> The Court finds this argument unpersuasive. Section 1252 applies to judicial review of order of *removal.* The allegations here are separate and apart from removal proceedings. Plaintiffs argue a deprivation of constitutional rights as it pertains to criminal proceedings. In fact, in support of their case, Defendants argue that criminal hearings are wholly separate from immigration matters and that is why the hearings are not the responsibility of MVDC. The argument here is that detainees are being denied constitutional rights when denied access to the New Jersey criminal proceedings. Section 1252 has no influence in this case.

(ECF No. 76 at 14.) The Court recognizes that a decision on a preliminary injunction is certainly not dispositive with respect to Defendants' motion to dismiss. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("As a general rule, decisions on preliminary objections do not constitute law of the case and the parties are free to litigate the merits during later phases.") Because the factual landscape is identical to when this issue was first presented to Judge Haines, however, the Court finds her opinion instructive and similarly concludes that § 1252 does not apply.

Therefore, because AFSC has properly alleged an injury separate from that of its clients, and because § 1252 has no influence in this case, it is recommended that Defendants' motion be denied as to the claims asserted by AFSC in Counts I, II, and IV.

## III.    CONCLUSION

For these reasons, it is respectfully recommended that Defendants' partial Motion to Dismiss (ECF No. 82) be GRANTED such that the individual claims asserted by the Individual Plaintiffs who have since been released from MVPC are dismissed. It is further recommended that Defendants' partial Motion to Dismiss be otherwise DENIED.

## IV.    NOTICE

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated: August 18, 2025                     /s/ Patricia L. Dodge
                                           PATRICIA L. DODGE
                                           UNITED STATES MAGISTRATE JUDGE


12