# EXHIBIT

# A

The Government's Opening Brief in *Dep't Homeland Sec. v. Josefina Doe*, No. 25-1628 (3d Cir.)

**No. 25-1628**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

JOSEFINA DOE, *et al.*,

*Appellees*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Appellants*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
No. 3:24-cv-259
HONORABLE STEPHANIE L. HAINES

---

## APPELLANTS' OPENING BRIEF

---

| | |
|---|---|
| BRETT A. SHUMATE | JULIAN M. KURZ |
| Assistant Attorney General | Trial Attorney |
| Civil Division | U.S. Department of Justice |
| | Office of Immigration Litigation |
| ELIANIS N. PEREZ | P.O. Box 868, Ben Franklin Station |
| Assistant Director | Washington, DC 20044 |
| | (202) 598-7283 |
| | julian.m.kurz@usdoj.gov |

*Counsel for Appellants*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION................................................................2

STATEMENT OF THE ISSUES ...................................................................2

STATEMENT OF RELATED CASES AND PROCEEDINGS ........................3

STATEMENT OF THE CASE.....................................................................4

STANDARD OF REVIEW........................................................................14

SUMMARY OF THE ARGUMENT............................................................14

ARGUMENT.........................................................................................16

    A.  The District Court Erroneously Concluded that Appellees Were Likely to Succeed on Their Access-to-Courts Claim. ........................................16

        1.  Appellees Lack Standing to Challenge ICE's Decision Not to Enable Them to Appear Virtually for Their New Jersey Court Proceedings. ...17

        2.  Appellees' Inability to Appear Virtually for Their New Jersey Court Proceedings Does Not Implicate the Right of Access to the Courts. ...20

        3.  Appellees Did Not Identify a Meritorious Underlying Legal Claim that They Were Unable to Pursue. .....................................................22

    B.  Defendants Do Not Have a Duty to Vindicate Appellees' Sixth Amendment Rights as to Their State-Court Proceedings. .....................23

    C.  The District Court Erroneously Held that 8 U.S.C. § 1252(b)(9) Did Not Bar It from Reviewing Count II. ......................................................25

    D.  AFSC Lacks Organizational Standing................................................30

CONCLUSION.......................................................................................33

# TABLE OF AUTHORITIES

## Cases

*Alarcon v. Att'y Gen.*,
No. 21-2195, 2022 WL 1598948 (3d Cir. May 20, 2022) .......................... 28

*Barker v. Wingo*,
407 U.S. 514 (1972) ....................................................................... 25

*Bowman v. Wilson*,
672 F.2d 1145–55 (3d Cir. 1982) ..................................... 1, 15, 18, 20, 33

*Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*,
331 U.S. 519 (1947)....................................................................... 27

*Calderon-Rosas v. Att'y Gen*,
957 F.3d 378 (3d Cir. 2020) ....................................................... 28, 29

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....................................................................... 31

*CoreCivic, Inc. v. Murphy*,
690 F. Supp. 3d 467 (D.N.J. 2023) ................................................. 6, 7

*Del. Strong Fams. v. Att'y Gen. of Del.*,
793 F.3d 304 (3d Cir. 2015) ............................................................ 14

*Dickey v. Florida*,
398 U.S. 30 (1970) ........................................................ 2, 16, 25, 33

*E.O.H.C. v. Sec. of Homeland Sec.*,
950 F.3d 177 (3d Cir. 2020) ............................................. 16, 27, 28, 29

*Fadiga v. Att'y Gen.*,
488 F.3d 142 (3d Cir. 2007) ............................................................ 28

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ......................................................... 16, 30, 31, 32

*Geda v. Dir. USCIS*,
126 F.4th 835 (3d Cir. 2025) ...................................................... 26, 27

*In re Liberatore*,
574 F.2d 78 (2d Cir. 1978) .............................................................. 18

ii

*Johnson v. Gill*,
   883 F.3d 756 (9th Cir. 2018) ............................................................ 19

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................... 21, 23

*May v. Sheahan*,
   226 F.3d 876 (7th Cir. 2000) ............................................................ 22

*Merkle v. Upper Dublin Sch. Dist.*,
   211 F.3d 782 (3d Cir. 2000) ......................................................... 22, 24

*Monroe v. Beard*,
   536 F.3d 198 (3d Cir. 2008) ........................................... 1, 15, 22, 23, 33

*Moody v. Stewart*,
   2018 WL 10615237 (S.D. Ala. Mar. 22, 2018) ........................................ 20

*Ponzi v. Fessenden*,
   258 U.S. 254–62 (1922) ......................................................... 1, 15, 17

*Pub. Int. Legal Found. v. Sec'y Commonwealth of Pennsylvania*,
   136 F.4th 456 (3d Cir. 2025) ......................................................... 31-32

*Puspita v. Att'y Gen.*,
   367 F. App'x 351 (3d Cir. 2010) ....................................................... 29

*Rivera v. Monko*,
   37 F.4th 909 (3d Cir. 2022) ............................................................ 23

*Rosa v. Garland*,
   114 F.4th 1 (1st Cir. 2024) ............................................................. 29

*Sukwanputra v. Gonzales*,
   434 F.3d 627 (3d Cir. 2006) ............................................................ 29

*Taylor v. Reno*,
   164 F.3d 440 (9th Cir. 1998) ........................................................... 19

*Taylor v. Taintor*,
   83 U.S. 366 (1873) .................................................................... 19

*United States v. Evans*,
   159 F.3d 908 (4th Cir. 1998) ........................................................... 18

iii

*United States v. Pashuta,*
2014 WL 2770048 (W.D. Pa. June 18, 2014) ...................................... 18, 20

*United States v. Toliver,*
330 F.3d 607 (3d Cir. 2003) ...................................................... 21-22, 25

*United States v. Warren,*
610 F.2d 680 (9th Cir. 1980) .............................................................. 18

*Weekes v. Fleming,*
301 F.3d 1175 (10th Cir. 2002) .................................................. 18, 19, 20

*Wilkinson v. Garland,*
601 U.S. 209 (2024) ......................................................................... 29

## Statutes

5 U.S.C. § 706 ............................................................................ 7, 8

8 U.S.C. § 1252 ............................................ 3, 9, 10, 11, 12, 16, 26-29, 33

28 U.S.C. § 1292 ............................................................................... 2

42 U.S.C. § 1983 ............................................................................ 21

iv

## **INTRODUCTION**

This case asks the Court to determine whether a federal detainee can force the federal government to enable him to participate via videoconference in a state-court proceeding. This Court and the Supreme Court have held that a detainee lacks standing to raise the issue of which sovereign exercises jurisdiction over him, and that a sovereign does not inflict a "concrete injury" when it chooses to prosecute a detainee rather than make him available to another sovereign. *Bowman v. Wilson*, 672 F.2d 1145, 1154–55 (3d Cir. 1982); *Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922). Yet the district court concluded that the federal government likely violated the Appellees (federal detainees)'s right of access to the courts when it declined to enable them to appear via videoconference for their New Jersey criminal court proceedings. That conclusion was erroneous.

The district court also failed to recognize that the right of access to the courts is not implicated when a detainee seeks to defend himself against criminal charges, especially ones that are brought by a sovereign other than the one that is detaining him. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). The right of access applies only when a detainee challenges his criminal sentence or the conditions of his confinement. *Id.*

Additionally, the district court mistakenly concluded that the federal government has a duty to vindicate Appellees' Sixth Amendment rights as to their

1

state-court criminal proceedings. The prosecuting sovereign—New Jersey—must protect Appellees' Sixth Amendment rights. But the federal government has no duty to do so. *Dickey v. Florida*, 398 U.S. 30, 33–34, 37–38 (1970).

The district court fundamentally misunderstood the respective duties of New Jersey and the federal government. That misunderstanding led the district court to impose an onerous preliminary injunction. This Court should correct the district court's errors and terminate the injunction.

## STATEMENT OF JURISDICTION

The courts of appeals have jurisdiction over interlocutory orders "granting" or "modifying" injunctions. 28 U.S.C. § 1292(a)(1). Here, Appellants appealed an Order granting a preliminary injunction and an Order granting a Motion to Clarify the preliminary injunction. The Order granting a preliminary injunction falls within the scope of § 1292(a)(1) because it is an order "granting" an injunction. The Order granting the Motion to Clarify also falls within the scope of § 1292(a)(1) because it modifies the preliminary injunction by, among other things, applying it to the putative class members. A28.

## STATEMENT OF THE ISSUES

1.     Whether the district court erroneously concluded that Appellees were likely to succeed on their access-to-the-courts claim.[1]

---

[1]  Appellants raised this issue in their Opposition to Plaintiffs' Motion for a

2.      Whether the district court wrongly determined that Appellants have a duty to safeguard Appellees' Sixth Amendment rights.[2]

3.      Whether the district court erroneously held that 8 U.S.C. § 1252(b)(9) did not bar it from reviewing Count II.[3]

4.      Whether the district court mistakenly held that the American Friends Service Committee established organizational standing.[4]

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. Appellees' right-of-access-to-the-courts claim relates to the following New Jersey state-court cases: Felipe Niomar Martinez Ortiz, Case No. W-2024-521, in the Paramus Boro Municipal Court; Isabela Doe's pending case in the Clifton Municipal Court;[5] Jose Doe's pending case in the Hoboken City Municipal Court; Josefina Doe's pending case in the Perth Amboy Municipal Court; and Commor Jerome Welch, Case No.

---

Preliminary Injunction ("Opposition"), at pages 14–17 and 24–31. *Doe v. DHS*, 3:24-cv-259-SLH-PLD (W.D. Pa. Nov. 15, 2024), ECF No. 60. The district court ruled on this issue in its Memorandum Opinion regarding Plaintiffs' Motion for a Preliminary Injunction, at pages 9–18. A9–18.

[2] Appellants raised this issue in their Opposition, at pages 30–31. The district court addressed this issue in its Opinion, at pages 9–11 and 14–18. A9–11, 14–18.

[3] Appellants raised this issue in their Opposition, at pages 21–24. The district court addressed this issue in its Opinion, at pages 13–14. A13–14.

[4] Appellants raised this issue in their Opposition, at pages 18–20. The district court addressed this issue in its Opinion, at page 13. A13.

[5] To protect the Doe Appellees' identities, their case numbers are not included.

3

W-2023-10222, in the Newark Municipal Court. Appellants are not aware of any other related case or proceeding.

## STATEMENT OF THE CASE

### A. The Appellees

The five individual Appellees—Josefina Doe, Isabela Doe, Commor Jerome Welch, Felipe Niomar Martinez Ortiz, and Jose Doe—are noncitizens in removal proceedings. U.S. Immigration and Customs Enforcement ("ICE") charged each individual as removable either for unlawful entry or unlawful presence. Based on those charges, ICE detained each individual at the Moshannon Valley Processing Center ("MVPC") in Philipsburg, Pennsylvania. ICE has released each individual from custody for various reasons, except Jose Doe, whose three bond requests have been denied.

Additionally, each individual Appellee is or was a defendant in one or more New Jersey state criminal cases. The charges include aggravated assault and unlawful possession of a weapon (Jose Doe), shoplifting and obstructing the administration of law (Ortiz), aggravated assault with a weapon (Josefina and Isabela Doe), and unlawful possession of a weapon and terroristic threats (Welch).

The final Appellee is the American Friends Service Committee, Immigrant Rights Program ("AFSC"). The AFSC is a non-profit organization based in Philadelphia, Pennsylvania. The Immigrant Rights Program, based in Newark,

4

"represents immigrant populations throughout the state of New Jersey." https://afsc.org/programs/new-jersey-immigrant-rights.

**B.     The MVPC**

The MVPC houses immigrant detainees of varying risk classifications. However, a large majority of the detainees are classified as medium-high or high risk. The MVPC does not have an official or written policy regarding virtual appearances for detainees at state-court criminal proceedings. However, before the district court issued the preliminary injunction, the MVPC typically denied requests for virtual appearances, citing limited resources.

The facility has four virtual courtrooms, which are used solely for immigration court proceedings, and 31 privacy booths, where detainees may confer with their attorneys and appear virtually for asylum hearings. The facility also has 192 telephones and 200 tablets, as of September 23, 2025. Because these devices are located in common areas, the MVPC does not permit detainees to use them for criminal court appearances. However, the MVPC has and continues to honor writs for in-person production (writs of habeas corpus ad prosequendum), which enable detainees to appear in person at state-court criminal proceedings.

**C.     Relevant New Jersey Laws and Policies**

For years, New Jersey courts used habeas writs to request that ICE make detainees available for state authorities to transport them to criminal proceedings.

However, in recent years, New Jersey has adopted policies that limit cooperation with immigration authorities. A 2021 New Jersey law effectively outlaws immigration detention in the state.[6] A federal court enjoined the law as to a low-risk, contract facility in Elizabeth, New Jersey, but ICE closed all other detention centers. *CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467 (D.N.J. 2023), *aff'd*, 144 F.4th 315 (3d Cir. 2025). The closures have forced ICE to detain many of the aliens whom it arrests in New Jersey at out-of-state facilities, such as the MVPC. Furthermore, in 2018, the New Jersey Attorney General issued the "Immigrant Trust Directive," which limits state and local law enforcement cooperation with immigration officials.[7] The state also prohibited judges from imposing cash bail for most offenses. *See* Compl. ¶ 81, ECF No. 1.[8] Appellees have asserted that the Directive and the no-cash-bail statute make it "legally impossible" for New Jersey authorities to pick up and detain aliens for criminal court appearances. *Id.* ¶ 71.

## D. District Court Proceedings

### 1. Plaintiffs' Allegations and Claims

In September 2024, Appellees filed this action in the District Court for the

---

[6] Assemb. B. A5207, 219th Leg., Sess. 2020-2021 (N.J. 2021).

[7] Directive No. 2018-6 v2.0, https://www.nj.gov/lps/dcj/agguide/directives/ag-directive-2018-6_v2.pdf.

[8] All ECF citations refer to the district court's docket: *Doe v. DHS*, No. 3:24-cv-259 (W.D. Pa.).

District of New Jersey. They alleged that ICE had instituted a "policy and practice of denying [MVPC detainees] access to video-conferencing technology like Zoom, or, when appropriate, the telephone, to appear and participate in their pending criminal proceedings in New Jersey." Compl. ¶ 3. Appellees asserted four claims.

First, they claimed that by preventing MVPC detainees from appearing virtually for their New Jersey criminal proceedings, ICE violated their right to access the courts. *Id.* at 74. Appellees grounded the claim in the First Amendment's Petition Clause, the Fifth Amendment's Due Process Clause, and the Sixth Amendment. *Id.* ¶¶ 176-78. Elaborating on the Sixth Amendment component, Appellees alleged that ICE violated their rights under the Confrontation Clause, "their rights to a speedy trial," "their rights to testify on their own behalf," and "their rights to appointed counsel." *Id.* ¶ 178.

Second, AFSC claimed that ICE violated its right to due process in immigration proceedings. *Id.* ¶¶ 180-85 (alleging that ICE's policy limits AFSC's ability to "fully and expeditiously represent [its] clients and ensure their due process rights in immigration court."). AFSC also claimed that ICE's alleged policy deprives AFSC's lawyers "of a full record upon which they can argue that their clients are eligible for and are entitled to the immigration relief they seek." *Id.* ¶ 183.

Third, Appellees claimed that ICE's alleged policy violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), because it is an

unconstitutional agency action. *Id.* ¶ 184. Appellees asserted that ICE abused its discretion and acted arbitrarily and capriciously, in violation of the APA, by permitting MVPC detainees to appear virtually for immigration-court and family-court proceedings but not allowing them to do so for state criminal proceedings, and by permitting detainees at other facilities to appear virtually for criminal proceedings but not providing such access to MVPC detainees. *Id.* ¶ 192. Lastly, in Count Four, Appellees claimed that ICE's alleged policy violates the APA, 5 U.S.C. § 706(2)(B), because it is "contrary to" the constitutional rights that Appellees identified in Count One. *Id.* ¶¶ 194-99.

### 2. Motion for Class Certification and Motion to Transfer

Along with their Complaint, Appellees filed a motion for class certification. ECF No. 2-1. The proposed class consists of "All noncitizens detained by Defendants at [MVPC] who have unresolved criminal matters (inclusive of petty disorderly persons, disorderly persons, and indictable offenses) to be charged or charged in a superior or municipal court in New Jersey." *Id.* at 15.

In October 2024, Appellants moved to transfer the case from the District of New Jersey to the Western District of Pennsylvania, the district in which the MVPC is located. The court granted the motion and transferred the case in October 2024.

### 3. Preliminary Injunction Motion and Opposition

On October 16, 2024, Appellees filed a Motion for a Temporary Restraining

Order and Preliminary Injunction. ECF Nos. 29–33. They asked the district court to enjoin "Defendants from refusing to provide virtual access to Superior Court and/or Municipal Court criminal proceedings in New Jersey via video-conferencing technology, for all members of the Putative Class in its custody at [the MVPC] for all stages of cases defined as criminal matters . . . on the request of an individual in detention . . . or on the request of their counsel, without the need for a separately issued writ of production." ECF No. 30 at 3.

Appellants opposed the motion on numerous grounds, including that 8 U.S.C. § 1252(b)(9) deprived the district court of jurisdiction, that ICE did not violate Appellees' constitutional rights, that Appellees were not likely to succeed on their claims, and that New Jersey, not ICE, was responsible for Appellees' alleged injuries. ECF No. 60 at 13–42.

### 4. District Court's Order and Opinion

On January 31, 2025, the district court granted Appellees' request for a preliminary injunction. Before analyzing the preliminary injunction factors, the court stated that the "crux" of the case was whether ICE's alleged policy "thwarts noncitizen New Jerseyans detained at MVDC [*sic*] from exercising their Federal and State constitutional and statutory rights in violation of the First ('Petition Clause'), Fifth ('Due Process'), Sixth ('Speedy Trial'), and Fourteenth ('Due Process')

9

Amendments."[9] A7. Addressing Appellees' access-to-the-courts claim, the court "assum[ed] consensus that denial to access to court violates one's rights." A8. On this basis, the court "dispense[d] with an analysis of constitutional law." *Id.* The court described Defendants' arguments as follows:

> The Parties do not disagree that a deprivation of access to criminal court proceedings causes a waterfall of further disallowed deprivations. Nor is there a dispute that such deprivations are illegal under the United States Constitution. Instead, Defendants' argument is that there is no deprivation of constitutional rights because detainees *can attend court or obtain their entitled rights* by means other than remote hearings through MVDC.

*Id.*

The court next discussed why Appellees were likely to succeed on their claims. The court's analysis of this issue overlapped with its standing analysis. Analyzing the two issues, the court "[found] a causal connection between ICE/MVDC's action in detaining the charged individual and assuming custody, MVDC's refusing remote court attendance, and the resultant deprivations attributable to MVDC's denial of access to attend hearings remotely at the detention center." A11. The court reasoned that when New Jersey released Appellees on bail, it relinquished "primary jurisdiction" over them. *Id.* And because New Jersey "relinquishe[d] custody of the detainee, it [was] no longer New Jersey's

---

[9] Throughout the Opinion, the court mistakenly called the facility the "Moshannon Valley Detention Center" or "MVDC." The correct name is Moshannon Valley Processing Center.

10

responsibility to produce the charged individual to any court hearing." A12. Moreover, because ICE assumed custody of Appellees and other MVPC detainees, "it [was] tasked with ensuring detainees' constitutional rights are supported." *Id.* And "ICE cannot rely on New Jersey to transport the detainee . . . when New Jersey is not legally responsible to do so." *Id.*

On these grounds, the court rejected Appellants' argument that because ICE honors state-court writs of habeas corpus ad prosequendum, Appellees could not demonstrate an injury in fact. *Id.* The court concluded that as a result of ICE's unwillingness to facilitate virtual state-court appearances, Appellees had suffered "specific deprivations" that were not "hypothetical" — "arrest warrants for failure to appear in criminal court; missing the initial court appearance in which public defense counsel is appointed; preventing people from challenging evidence brought against them and establishing their innocence; preventing people from exercising their Confrontation Clause Rights and hearing testimony about the alleged actions they took; preventing people from allocuting or entering plea agreements; and, an overall prolonged detention." A12–13.

The court also held that AFSC established organization standing. The court explained that AFSC's "function and mission" were "upended because it [was] compensating for procedural missteps when detainees miss criminal hearings." A13. The "MVDC's actions" also caused AFSC to "stretch its resources beyond its

11

mission of immigration representation," "expend time training staff in criminal matters that it would not usually handle," and lose the ability "to represent clients as it would otherwise." *Id.*

The court next considered Appellants' argument that 8 U.S.C. § 1252 deprived the court of jurisdiction. The court reasoned that "[s]ection 1252 applies to judicial review of order[s] of *removal*." A14. And because "[t]he allegations here are separate and apart from removal proceedings[,] . . . [s]ection 1252 has no influence in this case." *Id.* The court thus concluded that neither § 1252(g) nor § 1252(b)(9) barred it from reviewing AFSC's due process claim (Count II).

The court then addressed the other preliminary injunction factors, concluding that Appellees had shown irreparable harm, that the balance of harms favored them, and that preliminary relief was in the public interest. A18-20. Because all factors favored Appellees, the court issued a preliminary injunction, ordering that MVPC "shall immediately function in compliance with the tenants [*sic*] of the United States Constitution and the civil rights attributable thereunder as indicated in the Memorandum Opinion." A21.

### 5. Motion to Clarify and Clarification Order

On February 14, 2025, Appellants filed a Motion to Clarify the Preliminary Injunction Order, asking the Court to clarify (1) whether the injunction extended to the putative class members, (2) whether telephonic appearances (as opposed to

12

videoconference appearances) were sufficient to comply with the injunction, and (3) whether the injunction permitted MVPC to ask detainees or New Jersey courts to reschedule hearings when telephones and videoconferencing technology were unavailable at MVPC. ECF No. 81.

On March 28, 2025, the court granted the Motion to Clarify. A30. The court confirmed that the preliminary injunction "applies to the putative class." A28. As to the other questions, the court stated: "[The Court] will not seek to dictate the day-to-day function of MVDC, which is better left to those who oversee its function. The Court's job is to ensure that MVDC operates in a way that comports with the law, however that is best achieved. Thus, the Court cannot and will not speak to the issues of technology and scheduling conflicts at MVDC." A26. Despite this supposed declination, on the prior page of the clarification Opinion, the court incorrectly stated that the PI Order "demands" that "Defendants virtually produce individuals *via* video conference," "authorize and support GEO in the purchase and maintenance of sufficient technology,"[10] and "be monitored to comply with Court's orders." A25. The PI Order did not include these requirements.

### E.    Appeals

On March 31, 2025, Appellants filed a Notice of Appeal as to the PI Order

---

[10] GEO Group owns and operates the Moshannon Valley Processing Center. GEO is not a party in this case.

13

and accompanying Opinion. A31. On May 27, 2025, Appellants filed a Notice of Appeal as to the clarification Order and accompanying Opinion. A32. The Court docketed this appeal as an amended notice of appeal from the PI Order, effectively consolidating the two appeals.

## STANDARD OF REVIEW

When reviewing a district court order granting a preliminary injunction, the Court employs a tripartite standard of review: "findings of fact are reviewed for clear error, legal conclusions are reviewed de novo, and the decision to grant or deny an injunction is reviewed for abuse of discretion." *Del. Strong Fams. v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015). "The decision to issue a preliminary injunction is governed by a four-factor test." *Id.* "The plaintiff must show: 1) likelihood of success on the merits; 2) that he is likely to suffer irreparable harm; 3) that denying relief would injure the plaintiff more than an injunction would harm the defendant; and 4) that granting relief would serve the public interest." *Id.*

## SUMMARY OF THE ARGUMENT

Three errors led the district court to conclude that Appellees were likely to succeed on their access-to-courts claim. First, the court wrongly held that Appellees had standing to challenge ICE's decision not to enable them to appear via videoconference for their New Jersey court proceedings. This holding was incorrect because "[t]he exercise of jurisdiction over a prisoner who has violated the law of

14

more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner." *Bowman v. Wilson*, 672 F.2d 1145, 1154 (3d Cir. 1982); *accord Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922). A detainee "has no standing to raise the issue." *Bowman*, 672 F.2d at 1154.

Second, the district court erroneously assumed that Appellees' inability to appear via videoconference for their state-court proceedings implicates their right of access to the courts. The right of access applies when a detainee challenges his sentence or the conditions of his confinement. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). But the right is not implicated when a detainee seeks to defend himself against criminal charges, especially ones that are brought by a sovereign other than the one that is detaining him. *See id.*

Third, the district court failed to recognize that Appellees did not identify a claim that they were unable to pursue in their state-court proceedings. A detainee who alleges a violation of his right of access to the courts must describe "a 'nonfrivolous' or 'arguable' underlying claim." *Id.* at 205–06 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002)). In this case, Appellees did not even attempt to identify an underlying claim.

The district court also erroneously determined that ICE has a duty to safeguard Appellees' Sixth Amendment rights as to their New Jersey criminal proceedings. A

prosecuting sovereign must protect a criminal defendant's Sixth Amendment rights. But another sovereign that happens to be detaining the defendant has no duty to do so. *Dickey v. Florida*, 398 U.S. 30, 33–34, 37–38 (1970).

The district court also erred in holding that 8 U.S.C. § 1252(b)(9) did not bar it from reviewing AFSC's due process claim. AFSC claimed that ICE violated its right to due process by limiting its ability to "represent [its] clients and ensure their due process rights in immigration court," and by depriving AFSC's lawyers "of a full record upon which they can argue that their clients are eligible for and are entitled to the immigration relief they seek." ECF No. 1 ¶¶ 182–83. But courts of appeals regularly review claims of this sort via petitions for review of a final order of removal. Because AFSC's claim can be raised via a petition for review, the district court lacked jurisdiction to consider it. *E.O.H.C. v. Sec. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020).

Lastly, the district court erred in holding that AFSC established organizational standing. AFSC advanced two theories: that ICE's policy of not permitting MVPC detainees to appear virtually for their state-court proceedings impaired AFSC's mission of immigration representation, and that the policy forced AFSC to divert its resources. Both theories are foreclosed by *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024), which held that organizations cannot establish standing merely because government action frustrates their mission or compels them to spend money

16

opposing a policy. AFSC's mission-impairment theory is indistinguishable from the plaintiff medical associations' failed theory in *FDA*, and its resource-diversion theory suffers from the same attenuated causation that the Court rejected there. As the Supreme Court warned, if such theories were sufficient, firefighters could sue to challenge relaxed building codes, teachers could sue to contest policies that lead to crowded classrooms, and police officers could sue to oppose laws that increase crime. Because AFSC's alleged injuries are self-imposed and speculative, not concrete harms traceable to ICE, AFSC lacks Article III standing.

## ARGUMENT

### A. The District Court Erroneously Concluded that Appellees Were Likely to Succeed on Their Access-to-Courts Claim.

In concluding that Appellees were likely to succeed on their access-to-courts claim, the district court misunderstood the scope of the right and ignored or misapplied relevant precedent. First, Appellees lack standing to challenge ICE's decision not to make them available for their New Jersey court proceedings because the priority of prosecution is a matter of comity between the federal government and the state. *Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922). Second, when a custodian inhibits a detainee's ability to defend himself against criminal charges, especially ones that are not brought by the detaining sovereign, the right of access to the courts is not implicated. Third, Appellees failed to identify a meritorious claim that they were unable to pursue in their underlying criminal proceedings.

17

**1. Appellees Lack Standing to Challenge ICE's Decision Not to Enable Them to Appear Virtually for Their New Jersey Court Proceedings.**

"The exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner." *Bowman v. Wilson*, 672 F.2d 1145, 1154 (3d Cir. 1982) (quoting *Derengowski v. U.S. Marshal*, 377 F.2d 223, 224 (8th Cir.), *cert. denied*, 389 U.S. 884 (1967)). A detainee "has no standing to raise the issue." *Id.* Indeed, since the Supreme Court decided *Ponzi*, "the case law is uniform that a Defendant simply has no standing to call into question the conduct of the Executive Branch in its cooperation with a state sovereign in managing the Defendant's pretrial attendance at state or federal proceedings." *United States v. Pashuta*, 2014 WL 2770048, at *2 (W.D. Pa. June 18, 2014).

Like this Court, other courts of appeals have recognized that "[d]etermination of priority of custody and service of sentence between state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns." *United States v. Warren*, 610 F.2d 680, 684–85 (9th Cir. 1980); *e.g.*, *Weekes v. Fleming*, 301 F.3d 1175, 1180 (10th Cir. 2002); *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998); *In re Liberatore*, 574 F.2d 78, 89 (2d Cir. 1978). This rule "does not destroy the jurisdiction of the other sovereign over the defendant; it simply requires it to postpone its exercise of jurisdiction until the first sovereign is through

18

with him or until the first sovereign agrees to temporarily or permanently relinquish custody." *Weekes*, 301 F.3d at 1180. The rule of comity "applies alike in both civil and criminal cases." *Taylor v. Taintor*, 83 U.S. 366, 370 (1873).

In general, "the first sovereign to arrest a defendant obtains primary jurisdiction over him as against other sovereigns." *Johnson v. Gill*, 883 F.3d 756, 761 (9th Cir. 2018) (citing *Ponzi*, 258 U.S. at 260). However, "[a] sovereign's priority terminates when the sentence expires, charges are dismissed, or the prisoner is allowed to go free." *Id.* at 765. For example, if a sovereign releases a defendant on bail, on probation, or on his own recognizance, it "relinquishe[s] primary jurisdiction." *Taylor v. Reno*, 164 F.3d 440, 445 (9th Cir. 1998). If another sovereign then arrests the defendant, it assumes primary jurisdiction. *Id.*

Here, when New Jersey released Appellees on bail or on their own recognizance, it relinquished primary jurisdiction over them. When ICE then arrested Appellees on removal charges, it assumed primary jurisdiction. Because ICE now exercises primary jurisdiction over Appellees, New Jersey must wait to prosecute them until ICE "is through with [them] or until [ICE] agrees to temporarily or permanently relinquish custody." *Weekes*, 301 F.3d at 1180.

If New Jersey prosecutes Appellees while they are in ICE custody, New Jersey—not ICE—risks violating their Sixth Amendment and due process rights. *See infra*, Argument Section B. In such a scenario, New Jersey would bear

19

responsibility for any harm that resulted from Appellees' inability to participate in the state-court proceedings. *See id.* These points dictate the conclusion that Appellees lack standing to demand that their New Jersey criminal proceedings continue while they are in ICE's custody or to demand that ICE make them available for their New Jersey proceedings.

The rule that a detainee lacks standing to challenge which sovereign exercises jurisdiction over him rests on two principles: a detainee has "no recognized legal interest" in the sovereign that exercises primary jurisdiction over him making him available to another sovereign, *Moody v. Stewart*, 2018 WL 10615237, at *10–11 (S.D. Ala. Mar. 22, 2018), *aff'd sub nom. Moody v. Holman*, 887 F.3d 1281 (11th Cir. 2018); and a sovereign does not inflict a "concrete injury" on a detainee when it chooses to prosecute him rather than make him available to another sovereign, *Bowman*, 672 F.2d at 1154–55. This case implicates both principles. Because Appellees have no recognized legal interest in ICE making them available to New Jersey, and because ICE does not inflict a concrete injury on Appellees when it declines to enable them to attend their state-court proceedings via videoconference, Appellees "simply [have] no standing to call into question the conduct of the Executive Branch in its cooperation with [New Jersey] in managing [Appellees'] pretrial attendance at state . . . proceedings." *Pashuta*, 2014 WL 2770048, at *2.

In claiming that ICE violated their right to access their New Jersey court

20

proceedings, Appellees attempt to circumvent the rule of comity. ICE has not harmed Appellees in a cognizable way; and if New Jersey chooses to prosecute Appellees despite ICE's decision not to make them available for virtual court appearances, then New Jersey, not the federal government, will be the only sovereign that might inflict a cognizable harm on Appellees. Because ICE has not harmed Appellees in a cognizable manner, the district court erred in holding that Appellees were likely to establish standing as to their access-to-the-courts claim.

### 2. Appellees' Inability to Appear Virtually for Their New Jersey Court Proceedings Does Not Implicate the Right of Access to the Courts.

Even if Appellees had standing, they would be unlikely to succeed on their access-to-the-courts claim because it fails on the merits. The right of access is a right of "presentation of claims to the courts." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). The right entitles detainees to "attack their sentences, directly or collaterally," "challenge the conditions of their confinement," or bring "actions under 42 U.S.C. § 1983 to vindicate basic constitutional rights." *Id.* at 354–55. But the right is not implicated when a detainee seeks to defend himself against criminal charges, especially ones that are brought by a sovereign other than the one that detains him.

If a prosecuting sovereign does not allow a defendant to appear for trial or otherwise prevents him from participating in the proceeding, the sovereign might violate the defendant's Sixth Amendment rights, due process rights, and rights under the rules of criminal procedure. *See United States v. Toliver*, 330 F.3d 607, 611 (3d

Cir. 2003) (recognizing "[a] defendant's constitutional right to be present at every stage of his or her criminal proceeding"); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000) (recognizing other Sixth Amendment rights). But "prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). The right of access thus is not implicated in the defensive context.

In the district court, Appellees identified only one case in which a court applied the right of access in the context of a detainee who asserted a right to defend himself against criminal charges: *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). *May* is an outlier and is inconsistent with this Court's precedent. *See Monroe*, 536 F.3d at 205. Notably, the cases on which the *May* court relied did not recognize a right of access in the defensive context. Moreover, *May* differs from this case in that the appellant sought to defend himself against the charges of the sovereign that was detaining him, whereas in this case Appellees claim a right to defend themselves against another sovereign's charges. *May* incorrectly held that the right can apply in the defensive context, but even if that holding were correct, the right would not extend to a case like this one, where Appellees claim a right to access the courts of a sovereign other than the one that maintains custody over them.

22

Appellees have asserted a right to access the courts in a context in which it does not apply. They may have a viable claim that, by continuing to prosecute them while they are unavailable to participate in the proceedings, New Jersey has violated their Sixth Amendment rights, due process rights, and rights under New Jersey Rule of Court 3:16. But because Appellees do not seek to access the courts for the purpose of challenging a criminal sentence or the conditions of their confinement, they do not have a viable access-to-courts claim. The district court thus erred in holding that Appellees were likely to succeed on this claim.

### 3. Appellees Did Not Identify a Meritorious Underlying Legal Claim that They Were Unable to Pursue.

The district court also erred in failing to consider whether Appellees identified a meritorious claim that they were unable to pursue. A plaintiff who alleges a violation of his right of access to the courts "must show actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Rivera v. Monko*, 37 F.4th 909, 915 (3d Cir. 2022). To do so, a plaintiff "must satisfy certain pleading requirements," one of which is that he describe "a 'nonfrivolous' or 'arguable' underlying claim . . . well enough to show that it is 'more than mere hope.'" *Monroe*, 536 F.3d at 205–06 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002)).

Here, Appellees did not even attempt to identify a meritorious claim that ICE impeded them from pursuing in their underlying criminal proceedings. In their reply brief, they effectively admitted that they had not identified such a claim, arguing

instead that "missing a court date is sufficient to demonstrate injury" and that their alleged right to access the New Jersey courts "does not hinge on a preliminary determination of the viability of their defenses." ECF No. 66 at 12. These arguments reinforce the point that Appellees have asserted a right of access to the courts in a context in which the right does not apply. But the fact that Appellees assert the right in such a context does not excuse them from the requirement that they identify a nonfrivolous underlying claim. Because Appellees failed to do so, the district court should have concluded that they were unlikely to succeed on their claim.

\*　　\*　　\*

The district court erroneously concluded that Appellees had standing to assert their assert their access-to-the-courts claim. The court also failed to recognize that the right of access is not implicated in the defensive context. And the court erroneously did not consider whether Appellees identified a meritorious underlying claim. For these reasons, this Court should reject the district court's conclusion that Appellees were likely to succeed on their access-to-the-courts claim.

**B.** **Defendants Do Not Have a Duty to Vindicate Appellees' Sixth Amendment Rights as to Their State-Court Proceedings.**

The Sixth Amendment "affords individuals rights to a speedy trial, to an impartial jury, to know the nature and cause of a criminal accusation, to be confronted with the witnesses against them, and to effective assistance of counsel." *Merkle*, 211 F.3d at 792. The Sixth Amendment and the Due Process Clause also

24

guarantee a defendant the "right to be present at every stage of his or her criminal proceeding." *Toliver*, 330 F.3d at 611. The prosecuting sovereign has a duty to vindicate these rights. But the defendant and other sovereigns have no such duty.

The Supreme Court has said that "[a] defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." *Barker v. Wingo*, 407 U.S. 514, 527 (1972). And in *Dickey v. Florida*, the Court held that Florida violated a defendant's Sixth Amendment rights by prosecuting him while he was in federal custody and waiting seven years to take temporary custody of him via a writ of habeas corpus ad prosequendum. 398 U.S. 30 (1970). The trial court had misguidedly concluded that "even if the denial of an immediate trial was violative of Dickey's Sixth Amendment rights, it was a deprivation caused wholly by the federal officials having custody of his person, and any relief had to flow from those authorities." *Id.* at 33. But the Florida Supreme Court and the U.S. Supreme Court rejected that conclusion, holding that the state was responsible for vindicating the defendant's right to a speedy trial. *Id.* at 33–34, 37–38. *Dickey* and *Barker* make clear that the prosecuting sovereign, not another sovereign that happens to be detaining the defendant, must vindicate the defendant's Sixth Amendment rights.

Here, according to Appellees, New Jersey has prosecuted them while they are in ICE custody. Because New Jersey is the prosecuting sovereign, it must safeguard

Appellees' Sixth Amendment rights. New Jersey may be violating Appellees' rights by continuing to prosecute them when they are unavailable to participate in the proceedings. If such a violation has occurred, New Jersey is legally responsible for the violation. Appellees cannot use ICE as a scapegoat merely because they happen to be in immigration detention. The district court thus erred in concluding that ICE has a duty to safeguard Appellees' Sixth Amendment rights as to their state-court proceedings, and in ordering ICE to provide Appellees with virtual access to those proceedings.

**C.    The District Court Erroneously Held that 8 U.S.C. § 1252(b)(9) Did Not Bar It from Reviewing Count II.**

In holding that 8 U.S.C. § 1252(b)(9) does not bar review of Count II, the district court operated on the mistaken premise that the provision applies only to "judicial review of order[s] of *removal*." A14.  The court presumably drew this premise from the fact that § 1252 is entitled "Judicial review of orders of removal." The court explained that because "[t]he allegations here are separate and apart from removal proceedings," "Section 1252 has no influence on this case." *Id.*

But this Court has recognized that § 1252 applies beyond cases in which aliens seek judicial review of their removal orders or removal proceedings. *Geda v. Dir. USCIS*, 126 F.4th 835, 845 (3d Cir. 2025). As the Court explained, "[r]elying on titles can be precarious." *Id.* "A title is, almost necessarily, an abridgment, and so matters in the text . . . are frequently unreflected in the headings." *Id.* "That is why

26

'[f]or interpretive purposes, [titles] are of use only when they shed light on some ambiguous word or phrase.'" *Id.* (quoting *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 529 (1947)). Titles are "tools available for resolution of doubt," but "cannot undo or limit that which the text makes plain." *Brotherhood of R.R. Trainmen*, 331 U.S. at 529.

In § 1252's case, "the plain text refutes the title." *Geda*, 126 F.4th at 845. Section 1252(a)(2)(B) states that courts lack jurisdiction "regardless of whether the judgment, decision, or action is made in removal proceedings." And § 1252(b)(9), the provision at issue here, provides that district courts lack jurisdiction to review all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States." Per the text, § 1252(b)(9) strips jurisdiction not only over questions arising from removal proceedings but also over questions arising from "action[s] taken" to facilitate removal, such as the action of detaining an alien. The effect of the text is clear: § 1252 "applies to challenges arising outside the context of removal proceedings." *Geda*, 126 F.4th at 845-46.

This Court also has specifically addressed the scope of § 1252(b)(9). In *E.O.H.C. v. Sec. DHS*, the Court held that § 1252(b)(9) applies when an alien seeks relief that the courts of appeals can "meaningfully provide alongside review of a final order of removal." 950 F.3d 177, 186 (3d Cir. 2020). If applying § 1252(b)(9) would mean that the federal courts could "never" review a claim, "then § 1252(b)(9)

27

poses no jurisdictional bar." *Id.* On the other hand, when an alien can present a claim in the immigration courts and then via a petition for review ("PFR") of his final order of removal, § 1252(b)(9) bars district-court review. *Id.* at 186–88.

Here, in Count II, AFSC claims that ICE violated its right to due process by limiting its ability to "fully and expeditiously represent [its] clients and ensure their due process rights in immigration court," and by depriving AFSC's lawyers "of a full record upon which they can argue that their clients are eligible for and are entitled to the immigration relief they seek." Compl. ¶¶ 182–83. Section 1252(b)(9) applies to Count II because, in PFR proceedings, courts of appeals routinely review claims that the immigration courts prevented aliens from developing an adequate record or that the immigration courts otherwise failed to give aliens adequate process. For example, in *Alarcon v. Att'y Gen.*, this Court reviewed a claim that an immigration judge violated an alien's due process rights by failing to provide him with an opportunity to present corroborative evidence. No. 21-2195, 2022 WL 1598948, at *5 (3d Cir. May 20, 2022). Similarly, in *Fadiga v. Att'y Gen.*, the Court considered a claim that an alien was "prevented from making his case to the BIA or the IJ." 488 F.3d 142, 155 (3d Cir. 2007). And in *Calderon-Rosas v. Att'y Gen.*, the Court reviewed a claim that an alien did not receive due process because his removal proceedings were fundamentally unfair and because he received ineffective assistance of counsel. 957 F.3d 378, 386 (3d Cir. 2020). The *Calderon-Rosas* Court

28

also rejected the government's argument that courts of appeals lack jurisdiction over such claims. *Id.* Cases of this sort are common.[11] *E.g.*, *Puspita v. Att'y Gen.*, 367 F. App'x 351, 354 (3d Cir. 2010) (reviewing claim that "IJ's factfinding was insufficient" and that IJ did not permit alien to present rebuttal evidence).

These examples leave no doubt that, if AFSC's clients receive removal orders and then file PFRs in which they assert individual claims that mirror Count II, the courts of appeals will review those claims. Count II thus can be meaningfully presented via the PFR process. Because Count II can be meaningfully presented via the PFR process, it is the only permissible avenue for judicial review. *E.O.H.C.*, 950 F.3d at 186. The district court erroneously concluded that § 1252(b)(9) did not bar it from reviewing Count II.[12]

---

[11] Courts of appeals also consider claims that the immigration courts improperly denied claims for relief from removal, including in cases in which the alien had pending criminal charges. *E.g.*, *Rosa v. Garland*, 114 F.4th 1, 4 (1st Cir. 2024) (granting PFR and holding that the BIA erred when it affirmed the denial of an adjustment-of-status application based solely on its finding that a police report and pending criminal charge outweighed factors that supported the application).

[12] In rejecting Appellants' § 1252(b)(9) argument, the district court asserted that it "ha[d] jurisdiction, pursuant to 8 U.S.C. § 1252(a)(2)(D), to review the BIA's order for constitutional claims and questions of law." A14 n.9. But § 1252(a)(2)(D) preserves judicial review only of "constitutional claims or questions of law raised upon a petition for review filed with an *appropriate court of appeals*." *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024) (emphasis added); *accord Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006). The district accordingly erred in holding that § 1252(a)(2)(D) gave it jurisdiction to review constitutional claims and questions of law.

## D.  AFSC Lacks Organizational Standing.

The district court erred in holding that AFSC established organizational standing. To have standing, an organization, like an individual, must demonstrate injury in fact, causation, and redressability. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). Injury must be concrete and particularized, not speculative. *Id.* at 381. In this case AFSC asserted two standing theories, both of which are inconsistent with *FDA*.

### 1.  AFSC's Mission-Impairment Theory Fails.

AFSC first alleged that ICE's unwillingness to permit MVPC detainees to appear via videoconference in New Jersey criminal courts "upended" its mission of immigration representation and diminished its ability to serve clients. *See* A13. But *FDA* squarely forecloses this mission-based theory. In *FDA*, plaintiff medical associations argued that the FDA's mifepristone regulations impaired their ability to fulfill their mission of protecting patients. 602 U.S. at 394. The Court rejected this theory, holding that, "[l]ike an individual, an organization may not establish standing simply based on the 'intensity of [its] interest' or because of strong opposition to the government's conduct." *FDA*, 602 U.S. at 394 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 486 (1982)).

AFSC's allegations here are no different. The fact that AFSC disagrees with

30

ICE's policy and believes that the policy frustrates its preferred methods of client representation does not establish a cognizable injury in fact. If such mission-based theories were sufficient, "all the organizations in America would have standing to challenge almost every federal policy that they dislike." *Id.* at 395. Such an "expansive" theory of standing would violate Article III. *Id.*

### 2. AFSC's Resource-Diversion Theory also Fails.

AFSC also argued that ICE's policy forced it to divert resources—such as by training staff in criminal law and compensating for detainees who missed hearings—that it otherwise would have expended on immigration matters. But *FDA* specifically rejected this type of "monetary and related injuries" theory. *Id.* at 390–93. The Court held that the causal link between the FDA's deregulatory actions and the plaintiff doctors' alleged costs was "too speculative or otherwise too attenuated to establish standing." *Id.* at 390.

The same attenuation exists here. AFSC's alleged injuries depend on the independent choices of New Jersey courts and prosecutors in handling criminal cases. And standing cannot rest on "speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 (2013). AFSC's expenditures are voluntary reallocations, not concrete harms that ICE has directly inflicted. As the Supreme Court put it, an organization "cannot spend its way into standing," in the way that AFSC seeks to do here. 602 U.S. at 394; *accord Pub. Int.*

31

*Legal Found. v. Sec'y Commonwealth of Pennsylvania*, 136 F.4th 456, 469 (3d Cir. 2025) (rejecting theory that public interest organization established standing by expending "considerable time and financial resources" to vindicate its rights and hold Pennsylvania accountable under the National Voter Registration Act).

The *FDA* Court's hypotheticals drive the point home. If AFSC's resource-diversion theory were enough, then firefighters could sue to object to relaxed building codes because they might face more fires; teachers in border states could sue to challenge lax immigration policies that led to crowded classrooms; and police officers could sue to challenge laws that allegedly increased crime. *FDA*, 602 U.S. at 392. The Court rejected such limitless theories as "flatly inconsistent with Article III." *Id.*

AFSC's resource-diversion theory is just as limitless as the doctors' theory in *FDA*. Like the Supreme Court declined to invent a new doctrine of "doctor standing," this Court should decline to create a doctrine of "lawyer standing" based on self-imposed costs.

\* \* \*

In sum, neither AFSC's mission-impairment theory nor its resource-diversion theory satisfy the requirements of injury in fact or causation. The district court's holding that AFSC established organizational standing is inconsistent with *FDA* and should be reversed.

32

## <u>CONCLUSION</u>

The district court wrongly held that Appellees were likely to succeed on their access-to-the-courts claim. Appellees lack standing to assert the claim because ICE's choice not to enable them to appear virtually for their New Jersey proceedings is a matter of comity between the federal government and the state. *Bowman*, 672 F.2d at 1154. The right also does not apply in the defensive context. *Monroe*, 536 F.3d at 205. And Appellees failed to satisfy the requirement that they identify a meritorious underlying claim that they were unable to pursue. *Id.* at 205–06.

The district court also erred in concluding that ICE has a duty to safeguard Appellees' Sixth Amendment rights as to their state-court proceedings. Only the prosecuting sovereign, not another sovereign that happens to be detaining the defendant, has a duty to safeguard a criminal defendant's Sixth Amendment rights. *Dickey*, 398 U.S. at 33–34, 37–38. The district court also wrongly determined that 8 U.S.C. § 1252(b)(9) did not bar it from reviewing AFSC's due process claim. And AFSC lacked standing to assert any of its claims. Appellants respectfully request that the Court reverse the district court's judgment.

Date: November 24, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

/s/ *Julian M. Kurz*
JULIAN M. KURZ
Trial Attorney
U.S. Department of Justice

ELIANIS N. PEREZ
Assistant Director

Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 598-7283
julian.m.kurz@usdoj.gov

*Counsel for Appellants*

# <u>CERTIFICATE OF BAR MEMBERSHIP</u>

Pursuant to Local Appellate Rule 46.1(e), I, Julian Kurz, hereby certify that I am counsel of record, am an attorney for the federal government, and am thus exempt from the requirement of being a member of the bar of the United States Court of Appeals for the Third Circuit.

*/s/ Julian M. Kurz*
JULIAN M. KURZ
Trial Attorney
U.S. Department of Justice

# CERTIFICATE OF WORD COUNT

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,895 words, excluding the parts of the brief that Fed. R. App. P. 32(f) exempts.

2.      This brief complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it uses 14-point Times New Roman font.

*/s/ Julian M. Kurz*
JULIAN M. KURZ
Trial Attorney
U.S. Department of Justice

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

I, Julian Kurz, hereby certify that the text of this electronic brief is identical to the text of the paper copies that will be dispatched by mail to the Clerk of the Court of the United States Court of Appeals for the Third Circuit.

/s/ Julian M. Kurz
JULIAN M. KURZ
Trial Attorney
U.S. Department of Justice

## <u>CERTIFICATE OF PERFORMANCE OF VIRUS CHECK</u>

I, Julian Kurz, hereby certify that on November 24, 2025, I caused a virus check to be performed on this brief using Microsoft Defender Antivirus software. No virus was detected.

*/s/ Julian M. Kurz*      
JULIAN M. KURZ
Trial Attorney
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I, Julian Kurz, hereby certify that on November 24, 2025, I filed the foregoing brief with the Third Circuit's electronic court filing system, which electronically served this brief on all counsel of record.

/s/ Julian M. Kurz
JULIAN M. KURZ
Trial Attorney
U.S. Department of Justice